UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KELLI GRAY; EVA LAUBER; DANE
SCOTT; SCOTT BOOLEN; JOEL
FINCH; and all others
similarly situated,

               Plaintiffs,

        v.

SUTTELL & ASSOCIATES P.S.;
MIDLAND FUNDING, LLC; MARK T.
CASE and JANE DOE CASE; KAREN
HAMMER and JOHN DOE HAMMER;
ENCORE CAPITAL GROUP, INC.;
MIDLAND CREDIT MANAGEMENT,
INC.; SUTTELL & HAMMER, P.S.;
MALISA GURULE and JOHN DOE
GURULE; ISAAC HAMMER; and
WILLIAM G. SUTTELL and JANE
DOE SUTTELL,

               Defendants.

NO. CV-09-251-EFS

**ORDER GRANTING AND DENYING IN
PART PLAINTIFF'S MOTIONS TO
COMPEL AND SETTING STATUS
CONFERENCE**

    A hearing occurred in the above-captioned matter on November 17, 2010, in Spokane, Washington. Plaintiff Kelli Gray was represented by Michael D. Kinkley, Scott M. Kinkley, and Kirk D. Miller. Carl E. Hueber appeared on behalf of Defendants Suttell & Associates ("Suttell"), Mark T. Case, and Karen Hammer; John D. Munding appeared on behalf of Defendant Midland Funding, LLC. Before the Court were several discovery motions filed by Plaintiff. After reviewing the submitted material, relevant authority, and hearing oral argument, the Court took all motions

ORDER * 1

under advisement until after it had ruled on the then-pending Motion to Consolidate (ECF No. 143).  On December 29, 2010, the Court granted Plaintiff's motion to consolidate cases,[1] and directed the parties to meet and confer and file a notice with the Court identifying how the consolidation affects the pending motions to compel. (ECF No. 182.) Plaintiff filed such statements (ECF Nos. 192 & 193), which the Court reviewed.  For the reasons set forth below, the Court grants and denies in part the motions to compel.

## I.  BACKGROUND

Plaintiff Kelli Gray ordered an item from Spiegel Brands, Inc. ("Spiegel") mail-order catalogue and did not pay.  On December 4, 2007, Defendant Midland Funding, LLC ("Midland"), a debt-buying business, purchased Plaintiff's defaulted Spiegel account.  Midland assigned the account to its servicer, Midland Credit Management Inc. ("MCMI"), which determined whether certain accounts are "eligible" or "not eligible" for collection, then turned the account over to a collection agency to collect the debt.[2]  Defendants Mark T. Case and Karen Hammer, attorneys for Suttell, filed a lawsuit against Plaintiff on behalf of Midland in

_____

[1] As a result, this case was consolidated with *Lauber et. al v. Encore Capitol Group, Inc., et. al*, Case No. CV-10-5132-EFS, with all future documents filed under Case No. CV-09-251-EFS.

[2] Encore Capital Group, Inc. purchases and manages charged-off consumer portfolios.  (ECF No. 128-1 at 7.)  Midland, MCMI, and Encore all have the same address, employees, corporate governance, and software.

ORDER * 2

Spokane County Superior Court under the name *Midland Funding LLC v. Gray*, Case No. 08-2-04860 ("state court lawsuit"), to collect the debt.

Plaintiff filed this federal action on August 12, 2009, alleging that Defendants filed the state court lawsuit to collect a debt that was barred by the statute of limitations and then moved for unreasonable attorney's fees. Plaintiff seeks damages on behalf of herself and others similarly situated under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA), Washington Consumer Protection Act, RCW 19.86, et seq. (WCPA), and Washington Collection Agency Act, RCW 19.16 (WCAA).

On August 10, 2010, Plaintiff filed the four motions under consideration: 1) Motion to Compel Discovery Responses to Plaintiff's Second Set of Interrogatories (ECF No. 71); 2) Motion to Compel Production of Documents and Responses to Interrogatories from Defendants Mark T. Case and Karen Hammer (ECF No. 75); 3) Motion to Compel Production of Documents and Responses to Interrogatories from Defendants Suttell & Associates (ECF No. 79); and 4) Motion to Compel Discovery Responses to Plaintiff's First Set of Interrogatories and Requests for Production Regarding Net Worth to the Suttell Defendants (ECF No. 83).

## II.  DISCUSSION

### A.  Discovery Standard

A district court has wide discretion in controlling discovery. *Little v. City of Seattle,* 863 F.2d 681, 685 (9th Cir. 1988). Moreover, pre-trial discovery is ordinarily "accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). A party may object to a request for production; however, the grounds for objection must be stated with specificity. Fed. R. Civ. P. 34(b)(2). Absent a

ORDER * 3

valid objection, the production of evidence can be compelled regarding any matter "relevant to the subject matter involved in the action" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  This broad discovery right is based on the general principle that litigants have a right to "every man's evidence," and that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth."  *Shoen v. Shoen,* 5 F.3d 1289, 1292 (9th Cir. 1993).

**B.   Plaintiff's Motion to Compel Responses to Second Set of Interrogatories and Requests for Production from Defendant Midland**

On June 15, 2010, Midland was served with Plaintiff's Second Set of Requests for Production and Interrogatories.  On July 16, 2010, Midland objected to each of them.  Midland also produced 382 pages of documents, 306 of which were printed from the Washington Courts' website showing search results from any cases filed by "Midland Funding, LLC."  Plaintiff claims that the objections are without merit, and that the website documents are inaccurate and useless.

1.   Interrogatories 3, 5, 6, and 7

Plaintiff asks the Court to compel Midland to answer Interrogatories 3, 5, 6,[3] and 7, which ask Midland to list certain individuals against whom Midland has filed a lawsuit in Washington from August 2005 to present.  Interrogatory 3 asks for all the individuals who were assessed a $650.00 attorney fee for entry of default judgment; Interrogatory 5 asks for the approximate number of debt-collection actions in which

---

[3] Upon review of the record, the Court is unable to locate Interrogatory 6.

ORDER * 4

Midland requested or was awarded an attorney fee exceeding $200; Interrogatory 7 seeks a list of all cases in which the debt originated from Spiegel.

Plaintiff claims she needs this information to provide adequate class notice and insists that Midland maintains a database which tracks all the lawsuits it has filed. Midland objects to this request as unduly burdensome, beyond the scope of discovery rules, and not relevant to class certification. It also claims it does not maintain the list Plaintiff seeks; rather, MCMI and Suttell would have maintained it.[4]

The Court finds that a complete list of all cases filed by Midland in Washington since August 2005 is relevant to define the class and identify potential class members. *See, e.g., Pittman v. Anaconda Wire & Cable Co.,* 408 F. Supp. 286, 296 (E.D.N.C. 1974) (recognizing that interrogatories that have "a direct bearing on whether the class action may be maintained" should be answered). And a systems-based approach to finding parties who were potentially injured by Midland would serve for a more expeditious litigation.[5] Midland shall not, however, be compelled to produce discovery it does not have. Fed. R. Civ. P. 34(a)(1) (stating that a party responding to discovery requests need only answer if the requested information is in the party's possession, custody, or control).

---

[4] MCMI is now a party to the consolidated action.

[5] Requiring Plaintiff to search online would be extremely burdensome: A statewide query for lawsuits filed by "Midland" during the putative class period produced approximately 9,000 cases, 8,000 of which were "Midland Funding, LLC." Approximately 265 were regarding Spiegel accounts in the relevant class period.

ORDER * 5

Plaintiff advises the Court that it has obtained a list of all cases filed by "Midland" in Washington from the Washington Administrative Office of the Courts.   This database cannot, however, identify *all* lawsuits filed by Midland with FCNB-Spiegel as the original creditor (as opposed to a list of only those cases ending in a judgment, which Suttell already provided).

Accordingly, the Court **overrules** Midland's objections and **grants** Plaintiff's request; Midland shall produce a complete list of all cases filed by Midland with FCNB-Spiegel as the original creditor in Washington since August 2005, including the defendant's address and phone number, jurisdiction, case name and number, disposition, amount of any judgment obtained and paid, the Midland account or file number, identity of original creditor, date of last payment and last charge on account, and the date of default.   If Midland is unable to perform such a search due to technological impossibility, Plaintiff's own expert may access the database to determine whether such a query exists.   *See Johnson v. Midland Funding, LLC*, 1:05-cv-1094-SO (N.D. Ohio) (allowing the plaintiff's computer expert to investigate Midland Funding's computer system to demonstrate the wide range of queries that could be done).   If the sought-after documents are in MCMI's custody and control, then MCMI, as a party to this consolidated action, must produce them.

2.   Interrogatories 9 and 10

Plaintiff asks the Court to compel Midland to answer Interrogatories 9 and 10, which ask Midland to identify all procedures Midland applied to determine the statute of limitations in the state court action and other cases not involving Plaintiff.   Defendant objects, asserting that the information MCMI uses to filter "eligible" and "not eligible"

ORDER * 6

accounts before forwarding them to Suttell is confidential, proprietary information, but agrees to provide it upon entry of a protective order. Midland also asserts that it is protected by the attorney-client privilege and work-product doctrine.

As an initial matter, the Court finds that these requests are relevant to Midland's "bona fide error" affirmative defense.[6]  *See* 15 U.S.C. § 1692k(c) (requiring a defendant to prove the FDCPA violation occurred "notwithstanding the maintenance of procedures reasonably adopted to avoid any such error").  And the Court's September 8, 2010 Protective Order (ECF No. 106) will adequately protect the confidential and proprietary nature of those documents.

Other than the bare assertion that the attorney-client privilege and work-product doctrine apply, Midland has provided no authority or argument demonstrating that is so.  The attorney-client privilege does not apply because Midland and MCMI's procedures for determining eligibility before handing over to Suttell do not involve any confidential communications between those entities and an attorney. *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (protecting a client's confidential communications "[w]hen legal advice of any kind is sought from a professional legal advisor in his or her capacity as such, [and] the communications relat[e] to that purpose").

Nor does the work product doctrine apply: there is no evidence that Midland and MCMI's internal procedures for determining eligibility before handing the files over to Suttell reveals an attorney's strategy,

---

[6]  Although Plaintiff represents that Midland intends to withdraw this affirmative defense, Midland has not yet done so.

ORDER * 7

intended lines of proof, evaluation of strength and weaknesses, and inferences drawn from interviews. Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947). And even if it did, it is likely that the work-product protection would be pierced because Plaintiff can show substantial need for the information and cannot otherwise obtain it. *See In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 906 (9th Cir. 2004) (quoting Rule 26(b)(3)). Work product is discoverable if it is "at issue in the case and the need for material is compelling," *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992); this is the case here. Furthermore, a party seeking protection must submit a privilege log which would allow the opposing party to adequately assess the privilege or protection's applicability. Fed. R. Civ. Pro. 26(b)(5). None was submitted in this case.

Accordingly, the Court **overrules** Midland's objections and **grants** Plaintiff's request; Midland shall identify all procedures Midland applied to determine the statute of limitations in the state court action and other cases not involving Plaintiff.

3.   <u>Requests for Production ("RP") 26 and 27</u>

Plaintiff asks the Court to compel Midland to answer RP 26 & 27, which ask Midland to produce all agreements allowing Suttell to collect debts on behalf of Midland. Midland objects, claiming that the request is covered by the attorney-client privilege and work-product doctrine, seeks confidential information, and is overly broad and irrelevant until a class has been certified. Midland also claims that Plaintiff misstates the roles of Midland and Suttell: neither party is a "debt collector."

The Court finds that, even assuming Midland is not a "debt collector," agreements establishing the relationship between Suttell and

ORDER * 8

Midland are relevant to the material issues in this case.  The Court entered a Protective Order (ECF No. 106) on September 8, 2010, which will adequately protect the confidential and proprietary nature of those documents.  The attorney-client privilege does not apply because there is no evidence that Midland's agreements with Suttell to collect debts on behalf of Midland contain confidential communications made while seeking legal advice.  *See Martin*, 278 F.3d at 999-1000.  Nor is there any indication that those documents reveal Suttell's strategy for litigation.  *See Hickman*, 329 U.S. at 510-511.  And no privilege log was provided.

At the November 17, 2010 hearing, the Court required Midland to produce the December 15, 2006 Servicing Agreement between Midland and MCMI.  Suttell subsequently produced an agreement between MCMI and Suttell.  No agreement was produced establishing the relationship between Midland and Suttell; Midland claims that no such agreement exists.  Even still, Plaintiff seeks verification that there are no other documents 1) upon which Suttell or Midland will rely to claim Suttell has a right to represent Midland; or 2) regarding entities other than Suttell, Midland, and MCMI sharing in the collected debts.

For the reasons set forth above and articulated on the record, the Court **overrules** Midland's objections and **grants** Plaintiff's request; Midland shall fully answer RP 26 and 27 and produce all agreements allowing Suttell to collect debts on behalf of Midland.  If the sought-after documents have already been provided, then Midland shall supplement its RPs with an answer to that effect.  According to the parties' preliminary agreement, Midland shall identify the origin of the purchase and sale/assignments of debt (Midland Supplemental Production 0-79) and

ORDER * 9

"Spiegel statements" that have not yet been produced **NO LATER THAN February 18, 2011.**

    4.   <u>RPs 28, 29 and 40</u>

    Plaintiff asks the Court to compel Midland to produce a list of all lawsuits Midland filed in Washington from 2005 to present to collect debts and to provide any documents that Midland will rely upon to argue that class action is inappropriate. Midland objects as unduly burdensome, beyond the scope of discovery rules, and not relevant until a class is certified.

    For the reasons set forth above in reference to Interrogatories 9 and 10 and articulated on the record, the Court **overrules in part** Midland's objections and **grants in part** Plaintiff's request; Midland shall produce the documents as set forth above in relation to Interrogatories 9 and 10.

    5.   <u>Interrogatories 1-2 and RPs 1-25</u>

    In her reply brief, Plaintiff argues for the first time that Midland refused to answer any questions regarding net worth. Plaintiff understood that Midland would agree to stipulate that its net worth was in excess of fifty million dollars ($50,000,000.00). Plaintiff agreed to accept this stipulation instead of answers to Interrogatories 1-2 and Requests for Production 1-25. As of the hearing date, Midland had not answered the questions or entered into the stipulation.

    The Court finds this information is relevant to the issue of statutory damages. 15 U.S.C. § 1692ka(2)(B) (allowing class statutory damages of up to 1% of a defendant's net worth). Yet Plaintiff now advises that this stipulation was accomplished because of the

consolidation of this case to include Encore and Midland Credit. Accordingly, the Court **denies as moot** Plaintiff's request.

      6.   <u>Interrogatory 4</u>

Plaintiff asks the Court to compel Midland to answer Interrogatory 4, which asks Midland to identify any Midland Funding bank account in which any part of Suttell attorney fees were deposited. Midland objects, citing privilege, proprietary, and relevancy concerns. It also argues that, given that it has no bank accounts of its own, MCMI is the proper party for inquiry.

MCMI is not a defendant in this consolidated action. And the December 15, 2006 Servicing Agreement between Midland and MCMI has been produced. MCMI, as a "collection agency" licensed in Washington, collecting for its "client," Midland, is required by Washington law to maintain and make available the bank records requested by Plaintiffs. *See* ECF No. 191-1, RCW 19.16.120.

For the reasons set forth above and articulated on the record, the Court **overrules** Midland's objections and **grants** Plaintiff's request; Midland and/or MCMI shall identify any Midland Funding and/or MCMI bank account in which any part of Suttell attorney fees were deposited.

**C.  Plaintiff's Motion to Compel Production of Documents and Responses to Interrogatories from Defendants Mark T. Case and Karen Hammer**

      1.   <u>Interrogatories 5 and 6</u>

Plaintiff asks the Court to compel Mr. Case and Ms. Hammer to answer Interrogatories 5 and 6, which ask each of them to list and provide information regarding every case on which they worked during the days they prepared the state court lawsuit, and on November 5, 2008, October 27, 2008, and September 5, 2008. Mr. Case and Ms. Hammer objected to

ORDER * 11

these interrogatories as "overly broad, vague, unduly burdensome, and intended to cause embarrassment" and that "[t]he requested information can just as easily be obtained by plaintiff from court files . . . ."

The Court finds that this request is relevant to the question of whether Suttell's attorney's fees were reasonable. *See Mahler v. Szucs*, 135 Wn.2d 398 (1998) (determining reasonableness of attorney's fees by the lodestar method–the reasonable hourly rate multiplied by the reasonable number of hours based on contemporaneous time records). Assuming Suttell uses an electronic timekeeping system, providing Mr. Case and Ms. Hammer's timesheets for their work on the days they worked on Plaintiff's case are easily produced. Accordingly, the Court **overrules** Mr. Case and Ms. Hammer's objections and **grants** Plaintiff's request; Mr. Case and Ms. Hammer shall list and provide information regarding every case on which they worked during the days they prepared the state court lawsuit, and on November 5, 2008, October 27, 2008, and September 5, 2008.

    2.  <u>RPs 20, 21, and 23</u>

    Plaintiff asks the Court to compel Mr. Case and Ms. Hammer to answer RP 20, 21, and 23, which seek documentation pertaining to how Mr. Case and Ms. Hammer determined the amount of time spent working on the state court lawsuit and their general timekeeping practices. Mr. Case and Ms. Hammer object, claiming that the documents have either already been produced, or are overly broad, vague, and unduly burdensome.

    For the reasons set forth above and articulated on the record, the Court **overrules** Mr. Case and Ms. Hammer's objections and **grants** Plaintiff's request; Mr. Case and Ms. Hammer shall produce documentation pertaining to how Mr. Case and Ms. Hammer determined the amount of time

ORDER * 12

spent working on the state court lawsuit and their general timekeeping practices.

**D.   Plaintiff's Motion to Compel Responses to Second Set of Interrogatories and Requests for Production from Suttell**

On June 1 and 16, 2010, Suttell was served with Plaintiff's Second Set of Requests for Production and Second Interrogatories.  On July 1 and 12, 2010, Suttell responded, objecting to all but two (2) of Plaintiff's interrogatories, and all but one (1) request for production and producing over 1,000 pages of documents.   On September 13, 2010, over a month after the instant motion to compel was filed, Suttell produced an additional 6,736 pages of documents.   Suttell did not, however, respond to the instant motion.

1.   <u>Interrogatory 5 and RP 3</u>

Plaintiff asks the Court to require Suttell to answer Interrogatory 5 and RP 3.  Interrogatory 5 asks Suttell to identify any employees that did any work on the state court action, including nature and date of the work performed, rate of pay, and usual billing rates; RP 3 asks for any documents pertaining to this request.

While Suttell has produced some information regarding Suttell employees working on the state court case, it has not produced the rate of pay and job descriptions of each employee except as to designate between "attorney" and "non-attorney." Plaintiff claims this information is relevant to prove that Suttell charged unreasonable attorney's fees. She also claims that she needs this information to determine which employees had supervisory roles.  Suttell objects, claiming the request is overly broad, unduly burdensome, and seeks irrelevant evidence.

The Court agrees with Plaintiff, and **overrules** Suttell's objections and **grants** Plaintiff's request; Suttell shall fully respond to Interrogatory 5 and RP 3 so as to allow Plaintiff to determine which employees had a supervisory role.

    2.   <u>Interrogatory 8</u>

Plaintiff asks the Court to require Suttell to answer Interrogatory 8, which seeks identification of Suttell employees from August 2005 to the present. Suttell objects, claiming the request is overly broad, unduly burdensome, and seeks irrelevant evidence: Suttell refuses to provide information on employees if they did not work on the state court case.

The Court finds that information on all employees since August 2005 is relevant to the issue of whether class certification is appropriate for this case and not unduly burdensome. Accordingly, the Court **overrules** Suttell's objections and **grants** Plaintiff's request; Suttell shall fully answer Interrogatory 8 by identifying all Suttell employees, including former employees, from August 2005 to the present, and include their name, phone number, job description, rate of pay, billing rates, and dates of employment.

    3.   <u>Interrogatories 11, 12, 16 and RP 13</u>

Plaintiff asks the Court to require Suttell to answer Interrogatories 11, 12, 16, and RP 13. Interrogatory 11 and RP 13 seek a list of all individuals against whom Suttell has filed a lawsuit in Washington based on a Spiegel-catalog debt. Interrogatory 12 asks for a list of, and information pertaining to, all cases Suttell has filed since August 2005 in which the alleged debt originated from a department store, merchant, or other seller. Interrogatory 16 seeks a list of all

individuals who were assessed an attorney fee based on 1.8 hours spent in litigating a default judgment.

Suttell has provided a list of cases from 2005 to the present that involved Spiegel, but only those where Suttell obtained a judgment on behalf of a Midland entity. It has also provided a list of Washington cases in which it sought default judgment. It has refused to provide any other information because the request is "overly broad, vague . . . [or] intended to cause embarrassment." As analyzed above, information regarding Suttell's Washington lawsuits is relevant to the issue of whether this case is well-suited to a class action. And a systems-based approach to finding parties who were potentially injured by Suttell would serve for a more expeditious litigation.

For the reasons set forth above and on the record, the Court **overrules** Suttell's objections and **grants** Plaintiff's request; Suttell shall produce a complete list of all cases filed by Midland with FCNB-Spiegel as the original creditor in Washington since August 2005, including the defendant's address and phone number, the case name and number, jurisdiction, disposition, amount of judgment obtained and paid, and any information on attorneys fees, not just those where a judgment balance exists. If Suttell cannot produce such a list due to technological impossibility, Plaintiff's own expert may access the database to determine whether such a query exists.

4. RP 22

Plaintiff asks the Court to require Suttell to answer RP 22, which asks Suttell to produce all documents regarding contemporaneous "timekeeping practices and procedures." Suttell argues that this is protected by the attorney-client privilege and the work-product doctrine,

ORDER * 15

but it fails to either justify that position or provide a privilege log. Suttell also fails to provide any documentation to support is assertion that their decision to charge $650.00 for every default and $850 for every summary judgment was based on "historical analysis."

Plaintiff represents that Suttell has produced all training materials, orientation materials, software manuals and guidelines, memoranda, personnel manuals, emails, and instructions to employees relating to Suttell's timekeeping practices. It has not, however, produced the "historical analysis" it relies upon as a substitute for contemporaneous timekeeping.

For the reasons set forth above and articulated on the record, the Court **overrules** Suttell's objections and **grants** Plaintiff's request; Suttell shall comply with RP 22 and produce documentation pertaining to the "historical analysis;" Suttell shall describe, with particularity, how the attorneys fees were computed and compiled to develop a "historical analysis."

5.    RP 25

Plaintiff asks the Court to require Suttell to comply with RP 25, which requests production of all documents that Suttell will use to support its "bona fide error" defense under 15 U.S.C. § 1692k(c).[7] Suttell refuses, claiming that information is protected by the attorney-client privilege or work-product doctrine but does not provide a

---

[7] In asserting a "bona fide error" defense under 15 U.S.C. § 1692k(c), Suttell argues that any alleged violation was not intentional and occurred notwithstanding reasonable procedures adopted to avoid such errors.

ORDER * 16

privilege log. Deposition testimony revealed that Suttell employees relied on a list to determine whether the statute of limitations had passed; this list has not yet been produced.

The Court finds that any documentation establishing dates or other facts upon which Suttell relied when committing the alleged violations are relevant and discoverable.   Other than the bare assertion that the attorney-client privilege and work product doctrine applies, Suttell has provided no authority or argument demonstrating that is so.  Furthermore, a party seeking protection must submit a privilege log which would allow the opposing party to adequately assess the privilege or protection's applicability.  Fed. R. Civ. Pro. 26(b)(5).  None was submitted in this case.

For the reasons set forth above and articulated on the record, the Court **overrules** Suttell's objections and **grants** Plaintiff's request; Suttell shall produce all documents that it will use to support the "bona fide error" defenses under 15 U.S.C. § 1692k(c), including the list of applicable statutes of limitations.

6.   RPs 4 and 5

Plaintiff asks the Court to compel Suttell to answer RPs 4 and 5, which seek production of any documentation related to Suttell's right to collect a debt from Plaintiff or on behalf of Midland.  Suttell objects, claiming that the request is covered by attorney-client privilege and work-product doctrine, seeks confidential information, and is overly broad and irrelevant until a class has been certified.  Suttell's counsel has produced an agreement between Suttell and MCMI, but represents that it does not know of any other such documents.

ORDER * 17

The Court finds that agreements establishing the relationship between Suttell and Midland are relevant to the material issues in this case. The attorney-client privilege does not apply because there is no evidence that Midland's agreements with Suttell to collect debts on behalf of Midland contain confidential communications made while seeking legal advice. Nor is there any indication that those documents reveal Suttell's strategy for litigation. And no privilege log was provided. The Court entered a Protective Order (ECF No. 106) on September 8, 2010, which will adequately protect the confidential and proprietary nature of those documents. At the November 17, 2010 hearing, the Court required Midland to produce the December 15, 2006 Servicing Agreement between Midland and MCMI.

For the reasons set forth above and articulated on the record, the Court **overrules** Suttell's objections and **grants** Plaintiff's request; Suttell shall produce any additional agreements allowing Suttell to collect debts on behalf of Midland.

7.   <u>RPs 19 and 20</u>

Plaintiff's counsel represents that he mistakenly asked the Court to compel answers to Interrogatories 19 and 20 when he intended to ask for answers to RPs 19 and 20. While Suttell had responded to RPs 19 and 20, which request templates of forms used in Washington Courts, Suttell's responsive documents did not show the template fields. Plaintiff now requests that Suttell supplement its response with documents that show the fields are populated in its template forms. The Court **grants** Plaintiff's request; Suttell shall supplement its answers to RPs 19 and 20 and provide documents that show populated fields in its template forms.

ORDER * 18

**E.    Plaintiff's Motion to Compel Responses to First Set of Interrogatories and Requests for Production from Suttell Defendants Regarding Net Worth**

Plaintiff asks the Court to compel responses to the First Set of Interrogatories, which sought net worth information from Suttell and from Mr. Case, Ms. Hammer, and their spouses.   Suttell responded to these requests five days late and objected to every request and interrogatory, claiming that each was "overly broad, burdensome, intended to cause annoyance and embarrassment, and premature as no class has been certified."   And because some of the requests seek tax assessments and other private information, Suttell refused to produce that private information until a protective order was entered.   Suttell did not respond to the instant motion.

The Court finds this information is relevant to the issue of statutory damages.   *See* 15 U.S.C. § 1692ka(2)(B) (allowing class statutory damages of up to 1% of a defendant's net worth).   Accordingly, the Court **grants** Plaintiff's request; before the parties' December 7-8, 2010 deposition, Midland shall either 1) answer Interrogatories 1-2 and Requests for Production 1-25 or 2) stipulate to its net worth.

**G.    Attorney Fees**

Courts may apportion reasonable attorneys fees if a motion to compel is granted and denied in part.   Fed. R. Civ. P. 37(a)(5)(c).   The Court declines to award attorneys fees because the parties share equal responsibility in the discovery disputes at issue.

### III.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion to Compel Discovery Responses to Plaintiff's Second Set of Interrogatories **(ECF No. 71)** is **GRANTED** and **DENIED AS MOOT IN PART**.

2.  Plaintiff's Motion to Compel Production of Documents and Responses to Interrogatories from Defendants Mark T. Case and Karen Hammer **(ECF No. 75)** is **GRANTED.**

3.  Plaintiff's Motion to Compel Production of Documents and Responses to Interrogatories from Defendants Suttell & Associates **(ECF No. 79)** is **GRANTED.**

4.  Plaintiff's Motion to Compel Discovery Responses to Plaintiff's First Set of Interrogatories and Requests for Production Regarding Net Worth to the Suttell Defendants **(ECF No. 83)** is **GRANTED.**

5.  A status conference is **SET** for **Wednesday, February 16, 2011, at 10:30 a.m. in Spokane**, at which the parties shall be prepared to discuss how this consolidated case should proceed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and distribute copies to counsel.

**DATED** this 4ᵗʰ        day of February 2011.


                        S/ Edward F. Shea
_____
                        EDWARD F. SHEA
                United States District Judge

Q:\Civil\2009\251.Discovery.wpd

ORDER * 20