# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Martha Vassalle and Jerome Johnson, | ) | Case No. 3:11-cv-0096 |
| | ) | |
| Plaintiffs, | ) | Hon. David A. Katz |
| | ) | |
| vs. | ) | **And Related Cases:** |
| | ) | |
| Midland Funding LLC, et. al., | ) | Case No. 3:08-cv-1434, N.D. Ohio |
| | ) | Case No. 3:10-cv-0091, N.D. Ohio |
| Defendants. | ) | Case No. 3:11-cv-1332, N.D. Ohio |
| | ) | |
| | ) | **DECLARATION OF THEODORE W.** |
| | ) | **SEITZ IN SUPPORT OF** |
| | ) | **DEFENDANTS' MOTION TO** |
| | ) | **ENFORCE THIS COURT'S ORDER** |
| | ) | **ENJOINING LITIGATION OF** |
| | ) | **CLAIMS RELEASED BY THE** |
| | ) | **SETTLEMENT, AND FOR AN OSC** |
| | ) | **RE CONTEMPT AS TO CLASS** |
| | ) | **MEMBERS KELLI GRAY, DANE** |
| | ) | **SCOTT, JOEL FINCH, AND SCOTT** |
| | ) | **BOOLEN** |
| | ) | |
| | ) | |
| | ) | |

1

## DECLARATION OF THEODORE W. SEITZ

I, Theodore W. Seitz, hereby declare as follows:

1.      I am an attorney at law, admitted to practice before this Court, and a member of the law firm of Dykema Gossett, PLLC, counsel of record herein for Defendants Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, "Midland"). I respectfully submit this declaration in support of Defendants' Motion to Enforce This Court's Order Enjoining Litigation of Claims Released by the Settlement, and for an OSC re Contempt as to Class Members Kelli Gray, Dane Scott, Joel Finch, and Scott Boolen (collectively, the "*Gray* Plaintiffs"). The following is within my own personal knowledge and I could and would testify competently thereto under oath if called upon to do so.

2.      I am an attorney of record representing Midland in *Gray v. Suttell & Associates, et al.*, Case No. 09-251, pending in the United States District Court for the Eastern District of Washington. Attached to my declaration as **Exhibit A** is a true and correct copy of the proposed Second Amended Complaint that the *Gray* Plaintiffs have sought leave to file in that case.

3.      Attached to my declaration as **Exhibit B** is a true and correct copy of correspondence between Kirk Miller — the *Gray* Plaintiffs' counsel — and myself regarding the injunction issued by this Court.

4.      Attached to my declaration as **Exhibit C** is a true and correct copy of the *Gray* Plaintiffs' reply brief in support of their motion for leave to file the proposed Second Amended Complaint, which was filed on February 24, 2015.

I declare under the penalty of perjury under the laws of the United States that the foregoing it true and correct. Executed this 23rd day of March, 2015 in Lansing, Michigan.

Theodore W. Seitz

Case: 3:11-cv-00290-DAK Doc #: 295-1 Filed: 03/20/15 1 of 108. PageID #: 5772

# Exhibit A

1  Kirk D. Miller
   *Kirk D. Miller, P.S.*
2  421 W. Riverside Avenue
   Suite 704
3  Spokane, WA  99201
   (509) 413-1494 Telephone
4  (509) 413-1724 Facsimile
   kmiller@millerlawspokane.com
5

6              IN THE UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF WASHINGTON
7

8  KELLI GRAY, and all others similarly  )
   situated,                             )   Case No.: 2:09-CV-00251-EFS
                                         )
9                                        )   SECOND AMENDED COMPLAINT
              Plaintiffs,                )
                                         )
10                                       )
        v.                               )
11                                       )
   SUTTELL & ASSOCIATES, et al.,         )
12                                       )
              Defendants.                )
                                         )
13 EVA LAUBER, et al.,                   )
                                         )
14                                       )
              Plaintiffs,                )
                                         )
15                                       )
        v.                               )
                                         )
16 ENCORE CAPITAL GROUP, INC., et        )
   al.,                                  )
17                                       )
              Defendants.                )
18 ───────────────────────────────

   ///
19
   SECOND AMENDED COMPLAINT-1
20

21

Plaintiffs Kelli Gray, Dane Scott, Scott Boolen, and Joel Finch, suing on

their own behalf and on behalf of all others similarly situated, through their

attorney, Kirk D. Miller of Kirk D. Miller, P.S., allege the following:

## I.    SUMMARY

Encore Capital Group ("Encore Capital") has developed a proprietary,

sophisticated, "system driven" collection process based on the "predictive

behavior" of consumers (and state courts). In conjunction with its subsidiaries and

"franchisee" law firms (including the Suttell Law Firm), it engages in computer

automated, high volume, state court litigation in the collection of distressed debt

(purchased at pennies on the dollar).

That predictive behavior results in a very high default rate of judgments of

unproven cases or for inflated amounts: 1) because the filing of the collection

lawsuit by an attorney implicitly misrepresents that the attorney has had

meaningful involvement in developing and the evaluation of the case against the

consumer-debtor, 2) because consumer-debtors frequently default if it is made to

appear that a creditor, represented by an attorney rather than a collection agency

has sued them, and 3) because that state courts reviewing high volume filings of

SECOND AMENDED COMPLAINT-2

6

1   Defaults and Summary Judgments will enter judgments if it appears on the surface

2   that documentation supporting the debt has been properly attached to the Default

3   or Summary Judgment package.

4           The debt collectors collecting purchased distressed debt have a significant

5   hurdle to overcome in the collection of large portfolios of distressed debt (much of

6   it aged) using the State Courts. Due to the nature of the purchased distressed debt,

7   the high volumes, and automation, the Defendants are unable to meet the

8   requirements of the rules of evidence of providing proof of the records of the debt

9   without misleading the State Courts and consumer-debtors.

10          Instead of providing actual admissible evidence of the proof required in a

11  breach of contract lawsuit, the Encore Defendants (with the knowledge of the

12  Suttell attorney Defendants) hire collection agency employees as "Robo-signers".

13  The Robo-signers sign several hundred affidavits a day falsely claiming that they

14  are a business records custodian with personal knowledge of the facts. They falsely

15  claim in the affidavit knowledge of the assignment(s) of the debt, the amount of the

16  debt, the interest rate, the default of the debt, the alleged credit card terms and

17  conditions, and the record keeping procedures of every bank in America.

18          It is made to appear to the State Court Judges that the debt records filed with

19  the Court were attached to the affidavit by the affiant. This is not true. The

SECOND AMENDED COMPLAINT-3

20

21

7

affidavits are signed in Minnesota by a Midland Credit Management (a licensed

collection agency) employee. Only the two (2) page affidavit is shipped to the

Suttell Law Firm in Bellevue, Washington. A non-attorney Suttell employee

sometime later, as needed, selects and attaches documents to the "business records

affidavit" to send to the Court for filing whenever a Default or Summary Judgment

motion is required. The Court is led to believe that the affiant has authenticated and

established the reliability of the records but the affiant does not even know what

records will be later attached by the Suttell employees to the affidavit.

As noted above, a related issue is that the collection agency affiant does not

actually have any personal knowledge of any records in the first instance. See e.g.

Midland Funding, LLC v. Brent, 644 F.Supp.2d 961 (2009). As a result, the

misrepresentations are highly material. The affidavits are altered by the Suttell

employees by adding documents to the affidavit that the Suttell employee knows

were not attached to the original affidavit. The Suttell employees know that some

or all of the information contained in the affidavits is false.

This Amended Complaint alleges violations of the FDCPA and WCPA

based on the law firm's conduct in altering the false affidavits in order to obtain

judgments, the defendants' filing of time-barred claims against Washington

SECOND AMENDED COMPLAINT-4

consumers, and failure to become licensed as a collection agency, as required by Washington law.

## II.     INTRODUCTION

2.1     This is an action for damages and remedies against Encore Capital Group ("Encore Capital"), Midland Funding, LLC ("Midland Funding"); Midland Credit Management, Inc. ("MCMI") [together "Encore Defendants"]; Suttell & Associates, P.S., know known as Suttell & Hammer, P.S. ("Suttell, P.S."); Mark T. Case and Jane Doe Case, husband and wife; Malisa Gurule and John Doe Gurule, wife and husband; Karen Hammer and Isaac Hammer, wife and husband; and William Suttell and Jane Doe Suttell, husband and wife [together "Suttell Defendants"] pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq., ("FDCPA"); and for damages and remedies pursuant to the Washington State Consumer Protection Act (RCW 19.86 et seq.) ("WCPA").

2.2.    For damages and remedies against Defendant Midland Funding pursuant to the State of Washington Collection Agency Act, RCW 19.16, ("WCAA");

SECOND AMENDED COMPLAINT-5

2.3. For damages and remedies against the Encore Defendants pursuant to the State of Washington Collection Agency Act, RCW 19.16, ("WCAA"); and for damages and remedies pursuant to the Washington State Consumer Protection Act (RCW 19.86 et seq.) ("WCPA").

## III. JURISDICTION & VENUE

3.1. Jurisdiction of this Court arises under 15 U.S.C. §1692k (d), 28 U.S.C. §1337, and 28 U.S.C. §1331. Supplemental Jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367. Declaratory relief is available pursuant to 28 U.S.C. §2201 and §2202.

3.2. Venue is proper in this District under 28 U.S.C. §1391(b) because the Defendants conduct affairs and transact business in this District, a significant portion of the unlawful acts giving rise to this Complaint occurred in this District, and the Plaintiffs reside within the territorial jurisdiction of the court.

## IV. FEDERAL QUESTION SUBJECT MATTER JURISDICTION

4.1. Plaintiffs Kelli Gray, Dane Scott, Scott Boolen, Joel Finch, are each a "consumer" as defined by the FDCPA 15 U.S.C. § 1692a(3).

SECOND AMENDED COMPLAINT-6

4.2.   Defendants Encore Capital, Midland Funding, MCMI, Suttell, P.S., Mark Case, Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell were each attempting to collect a "debt" as defined by FDCPA 15 U.S.C. §1692a(5).

4.3.    Defendants Encore Capital, Midland Funding, MCMI, Suttell, P.S., Mark Case, Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell are each a "debt collector" as defined by the FDCPA 15 U.S.C. §1692a(6).

4.4.   Plaintiff Kelli Gray is a natural person. She is not a business, organization, corporation, or other entity.

4.5.   Plaintiff Kelli Gray is alleged by the Defendant to be obligated to pay a debt.

4.6.   Plaintiff Kelli Gray's alleged debt was an obligation to pay money arising out of a transaction or transactions primarily for personal, family, or household purposes.

4.7.    Defendants each attempted to collect the alleged debt from Plaintiff Kelli Gray.

4.8.   Defendants communicated with Plaintiff Kelli Gray in the attempt to collect the alleged debt.

SECOND AMENDED COMPLAINT-7

4.9.   Defendants alleged that Plaintiff Dane Scott was obligated to pay a debt.

4.10.   Plaintiff Dane Scott is a natural person. He is not a business, organization, corporation, or other entity.

4.11.   Plaintiff Dane Scott's alleged debt was an obligation to pay money arising out of a transaction or transactions primarily for personal, family, owe money on a credit card which included charges for personal, family, or household purposes

4.12.   Defendants each attempted to collect the alleged debt from Plaintiff Dane Scott.

4.13.   Defendants communicated with Plaintiff Dane Scott in the attempt to collect the alleged debt.

4.14.   Defendants alleged that Plaintiff Joel Finch was obligated to pay a debt.

4.15.   Plaintiff Joel Finch is a natural person. He is not a business, organization, corporation, or other entity.

4.16.   Plaintiff Joel Finch's alleged debt was an obligation to pay money arising out of a transaction or transactions primarily for personal, family, or household purposes. Plaintiff Finch was alleged by the

SECOND AMENDED COMPLAINT-8

1     Defendants to owe money on a credit card which included charges for

2     personal, family, or household purposes.

3   4.17. Defendants each attempted to collect the alleged debt from Plaintiff

4     Joel Finch.

5   4.18. Defendants communicated with Plaintiff Joel Finch in the attempt to

6     collect the alleged debt.

7   4.19. Defendants alleged that Plaintiff Scott Boolen was obligated to pay a

8     debt.

9   4.20. Plaintiff Scott Boolen is a natural person. He is not a business,

10     organization, corporation, or other entity.

11   4.21. Plaintiff Scott Boolen's alleged debt was an obligation to pay money

12     arising out of a transaction or transactions primarily for personal,

13     family, or household purposes. Plaintiff Boolen was alleged by the

14     Defendants to owe money on a credit card which included charges for

15     personal, family, or household purposes

16   4.22. Defendants each attempted to collect the alleged debt from Plaintiff

17     Scott Boolen.

18   4.23. Defendants communicated with Plaintiff Scott Boolen in the attempt

19     to collect the alleged debt.

SECOND AMENDED COMPLAINT-9

20

21

13

4.24.   The principle purpose of Defendant Encore Capital's business is the collection of debts.

4.25.   Defendant Encore Capital regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be originally owed or due another using the telephone and mail that Encore Capital obtained after the debt was alleged to be in default.

4.26.   Defendant Midland Funding is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

4.27.   The principle purpose of Defendant Midland Funding's business is the collection of debts.

4.28.   Defendant Midland Funding regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be originally owed or due another using the telephone and mail that Midland Funding obtained after the debt was alleged to be in default.

4.29.   Defendant Suttell, P.S. is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

SECOND AMENDED COMPLAINT-10

14

4.30.  Defendant Suttell, P.S. regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another using the telephone and mail.

4.31.  Defendant Mark T. Case is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

4.32.  Defendant Mark T. Case regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another using the telephone and mail.

4.33.  Defendant Malisa Gurule is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

4.34.  Defendant Malisa Gurule regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another using the telephone and mail.

4.35.  Defendant Karen Hammer is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

4.36.  Defendant Karen Hammer regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another using the telephone and mail.

SECOND AMENDED COMPLAINT-11

4.37.  Defendant Isaac Hammer is a "debt collector" as defined by the
FDCPA, 15 U.S.C. § 1692a(6).

4.38.  Defendant Isaac Hammer regularly collects or attempts to collect,
directly or indirectly, debts owed or due or asserted to be owed or due
another using the telephone and mail.

4.39.  Defendant William Suttell is a "debt collector" as defined by the
FDCPA, 15 U.S.C. § 1692a(6).

4.40.  Defendant William Suttell regularly collects or attempts to collect,
directly or indirectly, debts owed or due or asserted to be owed or due
another using the telephone and mail.

4.41.  Defendant Midland Funding is a "collection agency" as defined by
RCW 19.16.100(2).

4.42.  Defendant Midland Funding is not properly licensed as required by
Washington law.

4.43.  Defendant Midland Funding is a Delaware Corporation.


V.    PARTIES


SECOND AMENDED COMPLAINT-
12

5.1.    Now, and at all relevant times, Plaintiffs Kelli Gray, Dane Scott, Scott Boolen, Joel Finch were residents of the State of Washington residing within the territorial jurisdiction area of the United States District Court for the Eastern District of Washington.

5.2.    Midland Funding, LLC is owned 100% by Midland Portfolio Services, Inc. Midland Portfolio Services, Inc. is owned by Midland Credit Management, Inc. Midland Credit Management, Inc. is owned by Encore Capital Group, Inc. Encore Capital Group, Inc. is a publically held corporation that trades on the NASDAQ under the symbol "ECPG."

5.3.    All of these entities including Defendants Encore Capital, Midland Funding and MCMI share the same headquarters address of 8875 Aero Drive, Suite 200, San Diego, CA 92123 (hereafter "Encore Defendants").

5.4.    Defendant Encore Capital files quarterly 10-Q reports with the Securities Exchange Commission ("SEC"). Defendants Midland Funding and MCMI's financial information and other required disclosures are not separately identified but rather are subsumed in the

SECOND AMENDED COMPLAINT-
13

17

disclosures made by Encore Capital Group, Inc. and are identified to the SEC together with Encore Capital collectively as "The Company."

5.5. All acts done by Defendant Encore Capital were done on their own behalf and on the behalf of Midland Funding and MCMI.

5.6. All acts done by Defendant Midland Funding were done on their own behalf and on the behalf of Encore Capital and MCMI.

5.7. All acts done by Defendant MCMI were done on their own behalf and on the behalf of Midland Funding and Encore Capital.

5.8. Defendant Encore Capital is a Delaware corporation engaged in the business of collecting debts in the state of Washington.

5.9. Defendant MCMI is a Kansas corporation engaged in the business of collecting debts in the state of Washington.

5.10. Defendant Midland Funding is a limited liability corporation engaged in the business of collecting debts within the state of Washington.

5.11. Defendant Midland Funding is not a Washington corporation.

5.12. Defendant Midland Funding has not been qualified to do business in Washington as a foreign corporation.

SECOND AMENDED COMPLAINT-
14

5.13. Defendant Suttell, Hammer, & White, P.S. (f/k/a Suttell & Associates, P.S., f/k/a Suttell & Hammer, P.S.) (hereinafter "Suttell, P.S.") is a law firm incorporated as a Washington professional service corporation

5.14. Defendants Mark T. Case (WSBA # 38589), Malisa Gurule (WSBA # 40602), Karen Hammer (WSBA # 35608), Isaac Hammer (WSBA #36101) and William Suttell (WSBA # 12424) are each an employee of Suttell, P.S. and each an attorney licensed in the state of Washington.

5.15. Defendant Mark T. Case of Suttell, P.S. claimed he was authorized to act as the attorney for Midland Funding in the state of Washington, claimed to represent Midland Funding in the Spokane County Superior Court lawsuit against Plaintiff Kelli Gray, and did act on behalf of the Encore Defendants.

5.16. Each of the "Suttell Defendants" approved the form of the documents used in the state court collection matter filed against the Plaintiffs and the collection system using that complaint.

SECOND AMENDED COMPLAINT-
15

5.17.  All acts done by Defendant Mark T. Case were done on his behalf, on behalf of the Case marital community, on behalf of Suttell, P.S., and on behalf of the Encore Defendants.

5.18.  Defendant Malisa Gurule of Suttell, P.S. claimed she was authorized to act as the attorney for Midland Funding in the state of Washington and on behalf of the Encore Defendants.

5.19.  All acts done by Defendant Malisa Gurule were done on her behalf, on behalf of the Gurule marital community, on behalf of Suttell, P.S., and on behalf of the Encore Defendants.

5.20.  Defendant Karen Hammer of Suttell, P.S. approved the form of the state court Motion and Declaration of Default Judgment filed against Plaintiff Kelli Gray and the collection system using that those documents.

5.21.  Defendants William Suttell, Karen Hammer, and Isaac Hammer are shareholders and policy makers for Suttell, P.S. responsible for the procedures, practices, use and development of the forms, automated collection system, and the supervision of the employees of Suttell, P.S.

SECOND AMENDED COMPLAINT-
16

20

5.22. All acts done by Defendant Karen Hammer were done on her behalf, on behalf of the Hammer marital community, on behalf of Suttell, P.S., and on behalf of the Encore Defendants.

5.23. All acts done by Defendant Isaac Hammer were done on his behalf, on behalf of the Hammer marital community, on behalf of Suttell, P.S., and on behalf of the Encore Defendants.

5.24. All acts done by Defendant William Suttell were done on his behalf, on behalf of the Suttell marital community, on behalf of Suttell, P.S., and on behalf of the Encore Defendants.

5.25. All acts done by Suttell P.S. were done on its own behalf and on behalf of Encore Defendants.

VI.    ENCORE DEFENDANTS' BUSINESS PRACTICES

6.1. Defendants Encore Capital, Midland Funding, and MCMI (Encore Defendants) purchase the right to collect on tens of thousands or more of defaulted credit obligations.

6.2. Defendants Encore Capital, Midland Funding, and MCMI purchase bundled portfolios of debt in default for a small fraction of the face value of the alleged obligations.

SECOND AMENDED COMPLAINT-
17

6.3.   The alleged debts bundled together in the portfolios often do not originate from the same alleged original creditor.

6.4.   The debt in default purchased by Defendants Encore Capital, Midland Funding, and MCMI is graded based on a number of factors affecting its collectability.

6.5.   One of the factors used to grade debt in default is the time between the date it was last performing and the present date.

6.6.   The older the debt, the lower it is graded.

6.7.   Generally, the lower the grade debt is given, the lower its value on the debt buying market.

6.8.   The only records of the account in a portfolio are stored and transmitted electronically.

6.9.   Defendants Encore Capital, Midland Funding, and MCMI receive approximately a dozen fields of data or less pertaining to each individual debt they purchase.

6.10.  The fields usually contain at a minimum the name of the debtor and an amount alleged owed.

SECOND AMENDED COMPLAINT-
18

6.11. The information related to each individual debt is electronically merged into a computer database maintained by Defendants Encore Capital, Midland Funding, and MCMI.

6.12. No employees of Defendants Encore Capital, Midland Funding, and MCMI have any personal knowledge of the debts or the original creditors at the time the debts are purchased and merged into the computer database.

6.13. Defendants Encore Capital, Midland Funding, and MCMI attempt to collect the debts they purchased after default.

6.14. Defendants Encore Capital, Midland Funding, and MCMI file lawsuits to collect the debts they purchased after default.

6.15. Defendant Mark T. Case of Suttell, P.S., was an attorney for Midland Funding, LLC in the State of Washington, Spokane County Superior Court Lawsuit against Plaintiff Kelli Gray.

6.16. Defendant Karen Hammer of Suttell, P.S., was an attorney for Midland Funding, LLC in the State of Washington, Spokane County Superior Court Lawsuit against Plaintiff Kelli Gray.

SECOND AMENDED COMPLAINT-19

6.17. Defendant Malisa Gurule of Suttell, P.S., was an attorney for Midland Funding, LLC in the State of Washington, Benton County Superior Court Lawsuit against Plaintiff Dane Scott.

6.18. Defendant Malisa Gurule of Suttell, P.S., was an attorney for Midland Funding, LLC in the State of Washington, Benton County Superior Court Lawsuit against Plaintiff Joel Finch.

6.19. Defendant Malisa Gurule of Suttell, P.S., was an attorney for Midland Funding, LLC in the State of Washington, Benton County Superior Court Lawsuit against Plaintiff Scott Boolen.

6.20. Defendant Karen Hammer of Suttell, P.S., was an attorney for Midland Funding, LLC in the State of Washington, Spokane County Superior Court Lawsuit against Plaintiff Marla Herbert.

6.21. Defendants Encore Capital, Midland Funding, and MCMI prepare affidavits for use as evidentiary support in lawsuits to collect the alleged debt they purchased after default.

6.22. Each affidavit is generated by computer software which merges the data received in the portfolios of defaulted debt into an electronic form affidavit which is then printed.

SECOND AMENDED COMPLAINT-
20

6.23. The affidavit is printed on a printer at the desk of a randomly selected MCMI employee, employed in St. Cloud, Minnesota.

6.24. The person selected to sign the affidavit is based upon when the affidavit comes off the printer and which printer rather than any personal knowledge of the affiant of the account being collected.

6.25. Defendant MCMI calls the affiants a "legal specialist" or "specialist".

6.26. Generally each day the Encore Defendants assign approximately ten (10) to twelve (12) employees as a "legal specialist" or "specialist" to sign affidavits.

6.27. Each affiant ("legal specialist" or "specialist") signs between One Hundred (100) and Four Hundred (400) affidavits per day.

6.28. Each affiant ("legal specialist" or "specialist") signs each affidavit without personal knowledge of the facts and statements contained in the affidavits.

6.29. Which affiant ("legal specialist" or "specialist") signs which particular affidavit is randomly determined based on when the affidavits are printed rather than any knowledge of the account that is being verified.

SECOND AMENDED COMPLAINT-
21

1    6.30.   Ivan Jimenez is an employee or former employee of MCMI.

2    6.31.   Mr. Jimenez testified under oath that he personally signed between

3            "200 and 400" of such Affidavits [MCMI "Form 400"] per day. See

4            Midland Funding LLC v. Brent, 644 F.Supp.2d 961, 966-967 (ND

5            OH, 2009).

6    6.32.   Mr. Jimenez testified under oath that he has no personal knowledge of

7            the facts he is attesting to on behalf of the Encore Defendants. *See*

8            *Midland Funding LLC v. Brent*, 644 F.Supp.2d 961, 966-969 (ND

9            OH, 2009).

10   6.33.   Mr. Jimenez testified that despite signing an affidavit to the contrary,

11           he has no personal knowledge of the assignment or whether the

12           Encore Defendants have properly purchased or own the account. *See*

13           *Midland Funding LLC v. Brent*, 644 F.Supp.2d 961, 966-969 (ND

14           OH, 2009).

15   6.34.   Defendants Encore Capital, Midland Funding, and MCMI have a

16           business location at 16 McLeland Road, Saint Cloud, Minnesota,

17           56395 ("Minnesota location").

18

19   SECOND AMENDED COMPLAINT-
     22
20

21

6.35. The primary purpose of the Minnesota Location is to generate, print and sign affidavits to support the debt collection lawsuits filed by the Encore Defendants throughout the United States.

6.36. Defendant Suttell, P.S. claimed to represent Midland Funding in the state court collection cases against Plaintiffs Kelli Gray, Dane Scott, Scott Boolen, Joel Finch.

6.37. The Suttell Defendants base their fee on a percentage of the amount collected contingency basis.

6.38. The Suttell Defendants do not have a written fee agreement with Midland Funding but rather only with MCMI.

## VII. FACTS RELATED TO KELLI GRAY

7.1. On September 24, 2008, Defendants served Plaintiff Kelli Gray the Summons and Complaint in Washington State Superior Court, Spokane County, Case No.: 08-2-04860-2 (Collection Lawsuit).

7.2. On November 5, 2008, Defendants filed the Collection Lawsuit against Kelli Gray in Washington State Superior Court, Spokane County.

SECOND AMENDED COMPLAINT-23

7.3.　The alleged debt which was the subject of the Collection Lawsuit was from an alleged obligation to Spiegel, account number 50-2493-287-2 ("Spiegel").

7.4.　The Spiegel debt was for the purchase of clothing from the Spiegel catalogue.

7.5.　The clothing was a "good" as defined by the Revised Code of Washington ("RCW") § 62A.2-105.

7.6.　The Washington UCC statute of limitations to bring an action for breach of contract for the sale of a good is four (4) years pursuant to RCW § 62A.2-725.

7.7.　The clothing was a "good" as defined by Oregon Revised Statute ("O.R.S.") § 72.1030

7.8.　The Oregon UCC statute of limitations to bring an action for breach of contract for the sale of a good is four (4) years pursuant to O.R.S. § 72.7250.

7.9.　No payment has been made to Spiegel since sometime before May 14, 2004.

SECOND AMENDED COMPLAINT-24

7.10. No charges were made on the Spiegel account since sometime before May 5, 2003.

7.11. The Collection Lawsuit was an attempt to collect a debt that was time barred by the Washington UCC statute of limitations.

7.12. The Collection Lawsuit was an attempt to collect a debt that was time barred by the Oregon UCC statute of limitations.

7.13. Defendant Midland Funding, LLC solicits debts that were originated in Washington that are in default in order to collect or to attempt to collect after purchasing the debt.

7.14. On October 30, 2008, Defendant Karen Hammer signed a Motion and Declaration for Default Judgment in the Gray Collection Lawsuit.

7.15. The signing of the Motion and Declaration for Default Judgment was an attempt to collect a debt.

7.16. On November 5, 2008, Defendant Karen Hammer on behalf of Defendant Midland Funding, LLC filed the Motion and Declaration for Default Judgment in the Gray Collection Lawsuit.

7.17. The filing of the Motion and Declaration for Default Judgment was an attempt to collect a debt.

SECOND AMENDED COMPLAINT- 25

7.18. Elizabeth Neu is an employee or former employee of MCMI.

7.19. Elizabeth Neu's acts, as alleged in this Complaint, were done under the direction and control of Defendant MCMI.

7.20. All acts done by Elizabeth Neu were done on behalf of Defendant MCMI, on behalf of Midland Funding, and on behalf of Encore Capital.

7.21. On August 26, 2008, an employee of MCMI, other than Elizabeth Neu, generated through a computer system using MCMI "Form 400", an affidavit regarding the alleged indebtedness of Plaintiff Gray.

7.22. On August 26, 2008, Elizabeth Neu signed the Affidavit to be used in the collection of an alleged defaulted debt, alleged to have been owed to the Encore Defendants by Plaintiff Gray.

7.23. On August 11, 2009, United States District Court Judge David Katz of the Northern District of Ohio determined MCMI "Form 400" as used by the Defendants to be "patently false" in an Order on Summary Judgment entered by the court in Midland Funding, LLC v. Brent, 644 F.Supp.2d 961 (2009).

SECOND AMENDED COMPLAINT-
26

7.24.  The "Form 400" Affidavit of Elizabeth Neu filed in the Kelli Gray
State Court Collection case is identical in form to the Ivan Jimenez
"Form 400" affidavit determined to be "patently false" in the Brent
case.

7.25.  During the relevant time period, Elizabeth Neu personally signed One
Hundred (100) to Four Hundred (400) similar affidavits per day.

7.26.  On November 5, 2008, the Neu "Form 400" Affidavit was filed on
behalf of Midland Funding as the Plaintiff in a Spokane County
Washington collection lawsuit by the Suttell Defendants against
Plaintiff (in this lawsuit) Gray.

7.27.  MCMI shares a computer software database system called "JST" with
the Suttell Defendants.

7.28.  MCMI authorized the Suttell Defendants to file the Neu Affidavit on
or about November 5, 2008 in order to attempt to obtain a Default
Judgment in the Spokane County Washington collection lawsuit
against Plaintiff Gray.

7.29.  Ms. Elizabeth Neu in her Affidavit ("Form 400") made the false,
misleading, unfair and deceptive statements that her "statements

SECOND AMENDED COMPLAINT-
27

31

[were] based upon personal knowledge" and that she had "personal knowledge of all relevant financial information concerning Midland Credit Management's account number xxxxxx5726"[Gray alleged account].

7.30.  Ms. Elizabeth Neu did not have personal knowledge of the information in her Affidavit regarding the Gray alleged account.

7.31.  Ms. Elizabeth Neu did not have "personal knowledge of all relevant financial information concerning Midland Credit Management's account number xxxxxx5726" [Gray alleged account].

7.32.  Ms. Elizabeth Neu in her Affidavit ("Form 400") made the false, misleading, unfair and deceptive statement that she had personal knowledge that "the defendant [Gray] did fail to make payments on the account."

7.33.  Ms. Elizabeth Neu did not know whether or not Ms. Gray had failed to make payments on her account.

7.34.  Ms. Elizabeth Neu in her Affidavit ("Form 400") made the false, misleading, unfair and deceptive statement that she had personal knowledge "that demand has been made for defendant to make

SECOND AMENDED COMPLAINT-28

1    payment of the balance owing on the account described above more

2    than thirty (30) days prior to making this affidavit."

3    7.35.  Ms. Elizabeth Neu did not know when or even whether any demand

4    for payment had been made by the Defendants to Ms. Gray.

5    7.36.  Ms. Elizabeth Neu in her Affidavit ("Form 400") made the false,

6    misleading, unfair and deceptive statement that "the attorneys

7    representing plaintiff Midland Funding LLC were retained on

8    Midland Funding LLC behalf by me or persons reporting to me for the

9    purpose of collecting the delinquent debt owed on defendant's

10   account number set forth above".

11   7.37.  Ms. Elizabeth Neu, an employee of MCMI, did not retain the Suttell

12   attorneys who filed a Spokane County Washington collection lawsuit

13   on behalf of "Midland Funding" as the named Plaintiff against Ms.

14   Gray.

15   7.38.  Ms. Elizabeth Neu does not have any employees reporting to her.

16   7.39.  No person "reporting to" Elizabeth Neu retained the Suttell attorneys

17   on behalf of "Midland Funding LLC … for the purpose of collecting

18

19   SECOND AMENDED COMPLAINT-
     29
20

21

33

1        the delinquent debt owed on defendant's account number set forth

2        above".

3     7.40.  Defendants Suttell P.S., Mark Case, Malisa Gurule, Karen Hammer,

4        Isaac Hammer, and William Suttell each knew that neither Elizabeth

5        Neu nor someone reporting to Elizabeth Neu had retained Suttell, P.S.

6        on behalf of Midland Funding.

7     7.41.  Defendants Suttell P.S., Mark Case, Malisa Gurule, Karen Hammer,

8        Isaac Hammer, and William Suttell each knew or should have known

9        that they had not been retained by Midland Funding.

10     7.42.  Ms. Elizabeth Neu was not aware whether there had ever been a Gray

11        "FCNB-Spiegel account" or not.

12     7.43.  Ms. Elizabeth Neu did not review any records prior to signing the

13        affidavit and did not know whether or not there even existed a final

14        statement of account or what information it might contain.

15     7.44.  Ms. Elizabeth Neu in her Affidavit ("Form 400") made the false,

16        misleading, unfair and deceptive statement that she had personal

17        knowledge that the "interest at a rate …as annual percentage rate

18        calculated as required by the Federal Truth in Lending Act."

19 SECOND AMENDED COMPLAINT-
20 30

21

7.45. Ms. Elizabeth Neu did not have any information as to the interest rate, nor how an annual percentage rate is "calculated as required by the Federal Truth in Lending Act."

7.46. Ms. Elizabeth Neu in her Affidavit ("Form 400") made the false, misleading, unfair and deceptive statement that she was aware of or had participated in "business dealings with the defendant (s)."

7.47. Ms. Elizabeth Neu had not participated and was not aware of any business dealings with Plaintiff Gray.

7.48. Ms. Elizabeth Neu had no basis to allege that "the defendants (s), is/are not a minor (s) or mentally incapacitated person (s)."

7.49. Neither Elizabeth Neu, nor MCMI, nor Midland Funding had any business dealings with Plaintiff Kelli Gray prior to the time that Ms. Neu signed the Affidavit.

7.50. Most importantly, Ms. Elizabeth Neu did not review or even see any records before signing the affidavit.

7.51. When the Neu Affidavit was sent to Suttell, P.S., no records were attached.

SECOND AMENDED COMPLAINT-31

35

7.52. The Affidavit was deliverd to Suttell as a paper copy with an original manually signed signature.

7.53. Ms. Elizabeth Neu did not attach the "Bill of Sale and Assignment of Accounts", "Spiegel Charge" nor the "FCNB Credit Card Account Agreement" to her Affidavit.

7.54. Ms. Elizabeth Neu was never made aware that the "Bill of Sale and Assignment of Accounts", "Spiegel Charge" or the "FCNB Credit Card Account Agreement" were attached to her Affidavit or even that they were going to be attached to her Affidavit.

7.55. Ms. Elizabeth Neu did not approve or authorize the attachment of the "Bill of Sale and Assignment of Accounts", "Spiegel Charge" or "FCNB Credit Card Account Agreement" to her Affidavit.

7.56. On or before October 30, 2008, an employee of Suttell, P.S. printed the documents called "Bill of Sale and Assignment of Accounts", "Spiegel Charge" and "FCNB Credit Card Account Agreement" from Suttell, P.S.'s electronic files.

7.57. Suttell, P.S. employees, without the knowledge or approval of Ms. Elizabeth Neu, attached the "Bill of Sale and Assignment of

SECOND AMENDED COMPLAINT-
32

36

Accounts", "Spiegel Charge" and "FCNB Credit Card Account Agreement" to the Motion for Default filed in Spokane County Superior Court in a way that made it appear that the "Bill of Sale and Assignment of Accounts", "Spiegel Charge" and "FCNB Credit Card Account Agreement" were attached by Elizabeth Neu to her Affidavit and that she was authenticating the documents as business records.

7.58. Ms. Elizabeth Neu did not know what was later attached to her Affidavit and filed in support of Default Judgment in the Gray collection lawsuit.

7.59. On October 30, 2008, a Suttell, P.S. non attorney employee prepared approximately twenty (20) to thirty (30) Motion and Declaration for Default Judgment documents and delivered them to Defendant Karen Hammer to be signed. This set of documents included the Gray default pleadings.

7.60. Defendant Karen Hammer spent two (2) minutes or less reviewing the Gray collection Default motion and supporting documentation.

7.61. On October 30, 2008, Defendant Karen Hammer signed the Motion and Declaration for Default Judgment, caused it to be served on Ms.

SECOND AMENDED COMPLAINT-33

Gray, and caused it to be filed in the Spokane County Superior Court on November 5, 2008 in the Gray Collection Lawsuit.

7.62.  The signing, serving and filing of the Motion and Declaration for Default Judgment were each done in an attempt to collect a debt.

7.63.  Defendants Mark Case, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved the form and procedure of preparing and presenting the State Court Motion and Declaration for Default Judgment filed against Plaintiff Kelli Gray and the collection system using that Motion unfairly and deceptively including misrepresenting the authentication and origination of allegedly supporting documents and filing affidavits that each knows or should know are false, unfair, and deceptive.

7.64.  Defendants Mark Case, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved of the process and procedure of requiring or allowing a Suttell, P.S. employee to attached the "Bill of Sale and Assignment of Accounts", "Spiegel Charge" and "FCNB Credit Card Account Agreement" to the affidavit of Elizabeth Neu

SECOND AMENDED COMPLAINT-34

38

and then attach the Neu Affidavit to the Motion and Declaration for Default Judgment filed against Plaintiff Kelli Gray.

7.65. Defendants Mark Case, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved of the process and procedure of allowing non-attorney employees of Suttell, P.S. to select and attach the "Bill of Sale and Assignment of Accounts", "Spiegel Charge" and "FCNB Credit Card Account Agreement" to the Affidavit of Elizabeth Neu without the knowledge of Elizabeth Neu.

7.66. Defendants Mark Case, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved of the process and procedure of filing MCM employee affidavits in Midland Funding cases that they knew or should have known were false, misleading and unfair as indicated in the preceding paragraphs.

## VIII. FACTS RELATED TO DANE SCOTT

8.1. On November 19, 2009, Defendant Malisa Gurule signed a Motion and Declaration for Default Judgment in the Scott Collection Lawsuit.

8.2. The signing of the Motion and Declaration for Default Judgment was an attempt to collect a debt.

SECOND AMENDED COMPLAINT-
35

8.3. On November 30, 2009, Defendant Malisa Gurule on behalf of Defendant Midland Funding, LLC filed the Motion and Declaration for Default Judgment in the Scott Collection Lawsuit.

8.4. The filing of the Motion and Declaration for Default Judgment was an attempt to collect a debt.

8.5. Judy Richter is an employee or former employee of MCMI.

8.6. Judy Richter claimed her job description was a "Specialist".

8.7. Judy Richter's acts, as alleged in this Complaint, were done under the direction and control of Defendant MCMI.

8.8. All acts done by Judy Richter were done on behalf of Defendant MCMI, on behalf of Midland Funding, and on behalf of Encore Capital.

8.9. On August 24, 2009, an employee of MCMI, other than Judy Richter, generated through a computer system an affidavit regarding the alleged indebtedness of Plaintiff Scott.

8.10. On August 24, 2009, Judy Richter signed the Affidavit to be used in the collection of an alleged defaulted debt, alleged to have been owed to the Encore Defendants by Plaintiff Scott.

SECOND AMENDED COMPLAINT-36

8.11. The August 24, 2009 Judy Richter Affidavit was generated using a MCM form designated "AFFRECORD" ("Form AFFRECORD").

8.12. The MCMI "Form AFFRECORD" replaces the MCMI "Form 400."

8.13. The MCMI process of printing and signing form affidavits to fulfill requests for "Form AFFRECORDS" has not changed since "Form 400" was in use.

8.14. During the relevant time period, Judy Richter personally signed One Hundred (100) to Four Hundred (400) affidavits per day.

8.15. Attached as Exhibit "44" is a true and correct copy of the Richter Affidavit filed with the Benton County Washington Court in the Scott collection case.

8.16. On November 30, 2009, the Richter Affidavit "Form AFFRECORD" was filed by the Suttell Defendants on behalf of Midland Funding, LLC as the Plaintiff in a Benton County Washington collection lawsuit against the Plaintiff (in this case) Dane Scott.

8.17. MCMI shares a computer software database system called "JST" with the Suttell Defendants.

SECOND AMENDED COMPLAINT-37

8.18.  On or before November 30, 2009, MCMI authorized the Suttell Defendants to file the Richter Affidavit in order to attempt to obtain a Default Judgment in the Benton County Washington collection lawsuit against Plaintiff Scott.

8.19.  Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that she "was a custodian of records for Midland Credit Management, Inc."

8.20.  Ms. Richter was not a "custodian of records" for MCMI.

8.21.  Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that MCMI was the "servicer of the account for the Plaintiff" [Midland Funding].

8.22.  Ms. Judy Richter had no knowledge of the relationship between MCMI and Midland Funding.

8.23.  Ms. Judy Richter does not know what a "servicer" of an account is within the context of her statement.

SECOND AMENDED COMPLAINT-
38

8.24. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that her "statements herein [were] based upon personal knowledge of the recordkeeping systems maintained on plaintiff's behalf."

8.25. Ms. Judy Richter did not have personal knowledge of the recordkeeping systems maintained on plaintiff's [Midland Funding] behalf.

8.26. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that "Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's WASHINGTON MUTUAL account xxxxxxxx330 (MCM Number xxxxxxx35)" [Scott alleged account].

8.27. Ms. Judy Richter had no knowledge of the ownership of the debt.

8.28. Ms. Judy Richter had no knowledge related to the assignment of the debt.

8.29. Ms. Judy Richter had no knowledge of whether Dane Scott had ever had a "Washington Mutual account" or not.

SECOND AMENDED COMPLAINT-
39

8.30.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had "possession of the books and records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf."

8.31.   Ms. Judy Richter did not ever have possession of the books and records pertaining to the account.

8.32.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she was "familiar with the manner and method by which MCM creates and maintains its normal business books and records."

8.33.   Ms. Judy Richter did not have any knowledge or information about how MCMI creates or maintains business books and records.

8.34.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she had personal knowledge that "the records are kept in the regular course of business."

8.35.   Ms. Judy Richter did not have any knowledge or information about whether or not the Washington Mutual records, the Midland Funding

SECOND AMENDED COMPLAINT-
40

1        records, or the MCMI records are kept in the ordinary course of

2        business.

3   8.36.   Ms. Judy Richter does not know what keeping records in the ordinary

4        course of business means.

5   8.37.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the

6        false, misleading, unfair and deceptive statement that she had personal

7        knowledge that "it was in the regular course of business for a person

8        with knowledge of the act or event recorded to make the record or

9        data compilation, or for a person with knowledge to transmit

10        information thereof to be included in such record."

11   8.38.   Ms. Judy Richter did not have any knowledge of how any of the

12        records were created, complied, transmitted, or selected for

13        transmission by Washington Mutual, Midland Funding, or MCMI.

14   8.39.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the

15        false, misleading, unfair and deceptive statement that she had personal

16        knowledge that "the record or compilation was made at or near the

17        time of the act or even, or reasonably soon thereafter."

18

19   SECOND AMENDED COMPLAINT-

20   41

21

8.40. Ms. Judy Richter did not have any knowledge of when the record was made or compiled or whether it was near in time to the event.

8.41. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she had personal knowledge that "the account, pursuant to the attached statement, shows that the defendant(s) owe(s) a balance of $5208.19."

8.42. Ms. Judy Richter did not review the account statement.

8.43. The account statement was not attached to her Affidavit at the time she signed the Affidavit.

8.44. Ms. Judy Richter did not have any personal knowledge of the amount of the alleged debt.

8.45. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she had personal knowledge that the account "balance will continue to accrue interest at the rate set forth in the cardholder agreement/original contract and/or as required by law, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment."

SECOND AMENDED COMPLAINT-
42

8.46.   Ms. Judy Richter did not have any information as to the interest rate.

8.47.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that "this action is based upon a revolving credit agreement entered into between defendant(s) and the original credit grantor. Pursuant to the agreement, defendant(s) agreed to pay monthly installments to the original credit grantor for all goods and/or services and/or cash advances."

8.48.   Ms. Judy Richter did not have any information about the type or nature or terms of any agreement entered into by Dane Scott.

8.49.   Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that "upon information and belief, defendant(s) used or authorized the use of the credit card account to obtain loans from the original grantor for the purpose of obtaining goods and/or services and/or cash advances but failed to make the payments due pursuant to the agreement."

SECOND AMENDED COMPLAINT-
43

8.50. Ms. Judy Richter did not have any information nor had she formed any belief, nor did she do any investigation or have any information to form a belief regarding Dane Scott's use of any credit card.

8.51. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that "demand was made for full payment of the balance herein more than 30 days prior to making this affidavit; defendant(s) failed to make full payment of the amount owed on the account".

8.52. Ms. Judy Richter did not have any knowledge of if, when or whether any demand had been made for payment.

8.53. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she had personal knowledge that "the attorneys representing plaintiff [Midland Funding] were retained for the purpose of collecting the delinquent debt owed on the account set out above."

SECOND AMENDED COMPLAINT-
44

48

8.54. Ms. Judy Richter did not have any knowledge of whether any attorneys were retained, who the attorneys were, by whom they were retained, or for what purpose.

8.55. Suttell, P.S. knew that Ms. Richter's statement regarding retaining its services was false.

8.56. Defendant Suttell, P.S. was not retained by the Plaintiff [Midland Funding] in the Benton County Washington Collection lawsuit.

8.57. Ms. Judy Richter in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that "upon information and belief, the documents attached hereto are certified to be correct originals or true and correct copies of the originals, being a reproduction from the records on file on behalf of plaintiff or submitted to establish the contents of a lost or destroyed document."

8.58. No documents were attached to the Richter Affidavit at the time she signed it.

8.59. Ms. Judy Richter was not aware of what documents would be or were attached to the Affidavit after she signed it.

SECOND AMENDED COMPLAINT-45

49

8.60. Ms. Judy Richter was not aware when the Suttell, P.S. employees attached documents to her Affidavit.

8.61. Ms. Judy Richter did not know if the documents that were later attached by someone else were originals nor whether they were true and correct copies, nor whether they were a reproduction, nor whether they were submitted to establish the contents of a lost document.

8.62. Ms. Judy Richter could not authenticate any documents related to the Scott Benton County Collection lawsuit.

8.63. Ms. Judy Richter never reviewed any documents related to the Scott Benton County Collection lawsuit.

8.64. Ms. Judy Richter is required by MCMI, Midland Funding and Encore Capital to sign the Affidavits as they are printed.

8.65. Ms. Judy Richter did not have personal knowledge of the Scott account.

8.66. Ms. Judy Richter did not have personal knowledge of Washington Mutual records.

SECOND AMENDED COMPLAINT-
46

8.67.   Ms. Judy Richter did not have any business dealings with Plaintiff Dane Scott nor any knowledge of MCMI or any creditor's business dealings with Plaintiff Dane Scott.

8.68.   Ms. Judy Richter did not review any records before signing the Affidavit.

8.69.   When the Judy Richter Affidavit was sent to Suttell, P.S., no records were attached.

8.70.   The Affidavit was sent by delivery of a paper copy with an original manually signed signature.

8.71.   Ms. Judy Richter did not attach the "Bill of Sale from Chase Bank, N.A. to Midland Funding, LLC" or the "Visa or MasterCard Account Agreement" to her Affidavit.

8.72.   Ms. Judy Richter was never made aware that the "Bill of Sale from Chase Bank, N.A. to Midland Funding, LLC" and the "Visa or MasterCard Account Agreement" were attached to her Affidavit or even that they were going to be attached to her Affidavit.

SECOND AMENDED COMPLAINT-
47

8.73.   Ms. Judy Richter did not approve or authorize the attachment of the
"Bill of Sale from Chase Bank, N.A. to Midland Funding, LLC" or
the "Visa or MasterCard Account Agreement" to her Affidavit.

8.74.   On or before November 19, 2009, a non-attorney Suttell, P.S.
employee printed the document called "Bill of Sale from Chase Bank,
N.A. to Midland Funding, LLC" and the "Visa or MasterCard
Account Agreement" from Suttell, P.S.'s electronic files.

8.75.   Suttell, P.S. employees, without the knowledge or approval of Judy
Richter, attached the "Bill of Sale from Chase Bank, N.A. to Midland
Funding, LLC" and the "Visa or MasterCard Account Agreement" to
the Motion for Default Judgment filed in Benton County Superior
Court, in a way that made it appear that the "Bill of Sale from Chase
Bank, N.A. to Midland Funding, LLC" and the "Visa or MasterCard
Account Agreement" were attached by Judy Richter to her Affidavit,
and she was authenticating the documents as business records.

8.76.   Ms. Judy Richter did not know what was later attached to her
Affidavit and filed in support of Default Judgment.

SECOND AMENDED COMPLAINT-
48

8.77. On or about November 19, 2009, a Suttell, P.S. employee prepared approximately twenty (20) to thirty (30) package Motion and Declaration for Default Judgments and delivered them to Defendant Malisa Gurule to be signed. This set of documents included the Scott Default documents.

8.78. Defendant Malisa Gurule spent two (2) minutes or less reviewing the Dane Scott Default documents and supporting documentation.

8.79. On November 19, 2009, Defendant Malisa Gurule signed the Motion and Declaration for Default Judgment, caused it to be served on Dane Scott and caused it to be filed in the Benton County Superior Court on November 30, 2009 in the Dane Scott Collection Lawsuit.

8.80. The signing, filing, and service of the Dane Scott Motion and Declaration for Default Judgment was an attempt to collect a debt.

8.81. Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved the form and procedure of preparing and presenting the State Court Motion and Declaration for Default Judgment filed against Plaintiff Dace Scott and the collection system using that Motion, unfairly and deceptively including

SECOND AMENDED COMPLAINT-49

1      misrepresenting the authentication and origination of allegedly

2      supporting documents and filing affidavits that each knows or should

3      know are false, unfair and deceptive.

4   8.82.  Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and

5      William Suttell of Suttell, P.S. approved of the process and procedure

6      of requiring or allowing a Suttell, P.S. employee to attach the "Bill of

7      Sale from Chase Bank, N.A. to Midland Funding, LLC" and "Visa or

8      MasterCard Account Agreement" to the affidavit of Judy Richter and

9      then attach the Richter Affidavit to the Motion and Declaration for

10     Default Judgment filed against Plaintiff Dane Scott.

11   8.83.  Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and

12     William Suttell of Suttell, P.S. approved of the process and procedure

13     of allowing non-attorney employees of Suttell, P.S. to select and

14     attach the "Bill of Sale from Chase Bank, N.A. to Midland Funding,

15     LLC" and "Visa or MasterCard Account Agreement" to the Affidavit

16     of Judy Richter without the knowledge of Judy Richter.

17         IX.    FACTS RELATED TO SCOTT BOOLEN

18

19 SECOND AMENDED COMPLAINT-
50

20

21

54

9.1     On May 13, 2010, Defendant Malisa Gurule signed a Motion and Declaration for Default Judgment in the Scott Boolen Collection lawsuit.

9.2     The signing of the Motion and Declaration for Default Judgment was an attempt to collect a debt.

9.3     On May 24, 2010, Defendant Malisa Gurule on behalf of Defendant Midland Funding, LLC filed the Motion and Declaration for Default Judgment in the Boolen Collection lawsuit.

9.4     The filing of the Motion and Declaration for Default Judgment was an attempt to collect a debt.

9.5     Elizabeth Neu is an employee or former employee of MCMI.

9.6     Elizabeth Neu's acts, as alleged in this Complaint, were done under the direction and control of Defendants Encore and MCMI.

9.7     All acts done by Elizabeth Neu were done on behalf of Defendant MCMI, on behalf of Midland Funding, and on behalf of Encore Capital.

9.8     On July 13, 2009, an employee of MCMI, other than Elizabeth Neu, generated through a computer system using MCMI's "Form

SECOND AMENDED COMPLAINT-
51

AFFRECORD" an affidavit regarding the alleged indebtedness of Plaintiff Scott Boolen.

9.9     On July 13, 2009, Elizabeth Neu signed the Affidavit to be used in the collection of an alleged defaulted debt, alleged to have been owed to the Encore Defendants by Plaintiff Scott Boolen.

9.10    The July 13, 2009, Elizabeth Neu Affidavit was generated using an MCMI form designated "AFFRECORD" ("Form AFFRECORD").

9.11    The MCMI "Form AFFRECORD" replaced the MCMI "Form 400."

9.12    The MCMI process of printing and signing form affidavits to fulfill requests for "Form AFFRECORDS" has not changed since "Form 400" was in use.

9.13    During the relevant time period, Elizabeth Neu personally signed One Hundred (100) to Four Hundred (400) affidavits per day.

9.14    On May 25, 2010, the Elizabeth Neu "Form AFFRECORD" Affidavit was filed by the Suttell Defendants on behalf of Midland Funding, LLC, as the Plaintiff in a Benton County Washington collection lawsuit against the Plaintiff [in this case] Scott Boolen.

SECOND AMENDED COMPLAINT-
52

9.15 The Encore Defendants knew or should have known that the Suttell Defendants would file the Elizabeth Neu affidavit on their behalf.

9.16 MCMI shares a computer software database system called "JST" with the Suttell Defendants.

9.17 On or before May 25, 2010, Encore and MCMI authorized the Suttell Defendants to file the Elizabeth Neu Affidavit in order to attempt to obtain a Default Judgment in the Benton County Washington collection lawsuit against Plaintiff Scott Boolen.

9.18 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she was "a custodian of records for Midland Credit Management, Inc."

9.19 Elizabeth Neu was not a "custodian of records" for MCMI.

9.20 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that she "make[s] the statements herein based upon personal knowledge of the recordkeeping systems maintained on plaintiff's behalf."

9.21 Ms. Elizabeth Neu did not have personal knowledge of the record keeping systems maintained on plaintiff's [Midland Funding] behalf.

SECOND AMENDED COMPLAINT-53

9.22 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that " I have possession of the books and records pertaining to defendant's BANK OF AMERICA account xxxx5106 (MCM Number 8530375119) (hereinafter "the account") and am authorized to make this affidavit on plaintiff's behalf."

9.23 Ms. Elizabeth Neu never had possession of the books and records pertaining to the account.

9.24 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "I am familiar with the manner and method by which MCMI creates and maintains its normal business books and records."

9.25 Ms. Elizabeth Neu did not have any knowledge or information about how MCMI creates or maintains business books and records.

9.26 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "the records are kept in the regular course of business."

SECOND AMENDED COMPLAINT-
54

9.27 Ms. Elizabeth Neu did not have any knowledge that "the records are kept in the regular course of business."

9.28 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "it was in the regular course of business for a person with knowledge of the act or event recorded to make the records or data compilation, or for a person with knowledge to transmit information thereof to be included in such record."

9.29 Ms. Elizabeth Neu did not have any knowledge or information about whether or not the Bank of America records, the Midland Funding records, or the MCMI records are kept in the regular course of business.

9.30 Ms. Elizabeth Neu does not know what the regular course of business means.

9.31 Ms. Elizabeth Neu did not have any knowledge of how any of the records were created, compiled, transmitted, or selected for transmission by Bank of America, Midland Funding or MCMI.

SECOND AMENDED COMPLAINT-55

9.32 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "the record or compilation was made at or near the time of the act or reasonably soon thereafter."

9.33 Ms. Elizabeth Neu did not have any knowledge of when the record was made or compiled, or whether it was near in time to the event.

9.34 Ms. Elizabeth Neu did not review the account statement.

9.35 The account statement was not attached to her Affidavit at the time she signed the Affidavit.

9.36 Ms. Elizabeth Neu did not have personal knowledge of the amount of the alleged debt.

9.37 Scott Boolen did not owe Midland Funding the sum of $2,258.03.

9.38 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "such balance will continue to accrue interest at the rate set forth in the cardholder agreement/original contract and/or as required by law, until judgment is entered herein, after which interest on the unpaid balance shall

SECOND AMENDED COMPLAINT-
56

1   accrue as required by law and as set forth within the terms of the

2   judgment."

3   9.39   Ms. Elizabeth Neu did not have any information as to the interest rate.

4   9.40   Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the

5       false, misleading, unfair and deceptive statement that "this action is

6       based upon a revolving credit agreement entered into between

7       defendant(s) and the original credit grantor. Pursuant to the

8       agreement, defendant(s) agreed to pay monthly installments to the

9       original credit grantor for all goods and/or services and/or cash

10      advances."

11  9.41   Ms. Elizabeth Neu did not have any information nor had she formed

12      any belief nor did she do any investigation nor have any information

13      to form a belief regarding Plaintiff Scott Boolen's agreement with the

14      original credit grantor.

15  9.42   Ms. Elizabeth Neu had no personal knowledge of any "action" against

16      Plaintiff Scott Boolen.

17  9.43   Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the

18      false, misleading, unfair and deceptive statement that "upon

19  SECOND AMENDED COMPLAINT-
    57

20

21

61

information and belief, defendant(s) used or authorized the use of the credit card account to obtain loans from the original grantor for the purpose of obtaining goods and/or services and/or cash advances but failed to make the payments due pursuant to the agreement."

9.44   Ms. Elizabeth Neu did not have any information nor had she formed any belief nor did she do any investigation nor have any information to form a belief regarding Plaintiff Scott Boolen's use of any credit card.

9.45   Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "the defendant(s) failed to make payments on the account; demand has been made for defendant(s) to make payment of the balance owing on the account described herein more than thirty (30) days prior to making this affidavit."

9.46   Ms. Elizabeth Neu did not have any knowledge of if, when or whether demand had been made for payment.

9.47   Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "the attorneys

SECOND AMENDED COMPLAINT-58

representing plaintiff [Midland Funding] were retained for the purpose

of collecting the delinquent debt owed on the account set out above."

9.48 Ms. Elizabeth Neu did not have any knowledge of whether any

attorneys were retained, who the attorneys were, by whom they were

retained, or for what purpose.

9.49 Defendant Suttell, P.S. was not retained by the plaintiff [Midland

Funding] in the Scott Boolen Benton County Washington collection

law suit.

9.50 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the

false, misleading, unfair and deceptive statement that "upon

information and belief, the documents attached hereto are certified to

be correct originals or true and correct copies of the originals, being a

reproduction from the records on file on behalf of plaintiff or

submitted to establish the contents of a lost or destroyed document."

9.51 No documents were attached to the Elizabeth Neu Affidavit at the

time she signed it.

9.52 Ms. Elizabeth Neu was not aware of what documents would be or

were attached to the Affidavit after she signed it.

SECOND AMENDED COMPLAINT-
59

9.53 Ms. Elizabeth Neu was not aware when the Suttell, P.S. employees attached documents to her Affidavit.

9.54 Ms. Elizabeth Neu did not know if the documents that were later attached by someone else were originals, nor whether they were true and correct copies, nor whether they were a reproduction, nor whether they were submitted to establish the contents of a lost document.

9.55 Ms. Elizabeth Neu could not authenticate any documents related to the Scott Boolen Benton County Collection lawsuit.

9.56 Ms. Elizabeth Neu never reviewed any documents related to the Scott Boolen Benton County Collection Lawsuit.

9.57 Ms. Elizabeth Neu in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "if called to testify as a witness thereon, I could and would competently testify as to all the facts stated herein."

9.58 Ms. Elizabeth Neu did not have personal knowledge of any of the facts asserted in her "Form AFFRECORD" Affidavit.

9.59 Ms. Elizabeth Neu signed the "Form AFFRECORD" Affidavit without the knowledge or information contained in the Affidavit.

SECOND AMENDED COMPLAINT-
60

1    9.60  Ms. Elizabeth Neu is required by MCMI, Midland Funding and

2          Encore Capital to sign the affidavits as they are printed.

3    9.61  Ms. Elizabeth Neu did not have personal knowledge of the Scott

4          Boolen account.

5    9.62  Ms. Elizabeth Neu did not have personal knowledge of the Bank of

6          America Records.

7    9.63  Ms. Elizabeth Neu did not have any business dealings with Plaintiff

8          Scott Boolen nor any knowledge of MCMI or any creditor's business

9          dealings with Plaintiff Scott Boolen.

10   9.64  Ms. Elizabeth Neu did not review any records before signing the

11         Affidavit.

12   9.65  The Affidavit of Elizabeth Neu was notarized by Bernice Evelyn

13         Thell.

14   9.66  Bernice Evelyn Thell did not observe Elizabeth Neu sign the

15         Affidavit.

16   9.67  When the Elizabeth Neu Affidavit was sent to Suttell, P.S., no records

17         were attached.

18

19   SECOND AMENDED COMPLAINT-
     61
20

21

9.68 The Affidavit of Elizabeth Neu was sent by delivery of a paper copy with an original manually signed signature to Suttell, P.S.

9.69 Ms. Elizabeth Neu did not attach the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" or the "Bank of America Cardholder Agreement" to her Affidavit.

9.70 Ms. Elizabeth Neu was never made aware that the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank of America Cardholder Agreement" were attached to her Affidavit or even that they were going to be attached to her Affidavit.

9.71 Ms. Elizabeth Neu did not approve or authorize the attachment of the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank of America Cardholder Agreement" to her Affidavit.

9.72 On or before May 13, 2010, a non-attorney Suttell, P.S. employee printed the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank

SECOND AMENDED COMPLAINT-
62

of America Cardholder Agreement" from Suttell, P.S.'s electronic files.

9.73   Suttell, P.S. employees, without the knowledge or approval of Elizabeth Neu, attached the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank of America Cardholder Agreement" to the Motion for Default Judgment filed in Benton County Superior Court, in a way that made it appear that the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank of America Cardholder Agreement" were attached by Elizabeth Neu to her Affidavit and that she was authenticating the documents as business records.

9.74   Ms. Elizabeth Neu did not know what was later attached to her Affidavit and filed in support of Default Judgment.

9.75   On or about May 13, 2010, a Suttell, P.S. employee prepared approximately twenty (20) to thirty (30) package Motion and Declaration for Default Judgment and had them delivered to

SECOND AMENDED COMPLAINT-63

1    Defendant Malisa Gurule to be signed. This set of documents included

2    the Scott Boolen Default documents.

3    9.76    Defendant Malisa Gurule spent two (2) minutes or less reviewing the

4    Scott Boolen Default documents and supporting documentation.

5    9.77    On May 13, 2010, Defendant Malisa Gurule signed the Motion and

6    Declaration for Default Judgment, caused it to be served on Plaintiff

7    Scott Boolen and caused it to be filed in the Benton County Superior

8    Court on May 14, 2010 in the Scott Boolen Collection lawsuit.

9    9.78    The signing, filing and service of the Scott Boolen Motion and

10    Declaration for Default Judgment were an attempt to collect a debt.

11    9.79    Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and

12    William Suttell of Suttell, P.S. approved the form and procedure of

13    preparing and presenting the state court Motion and Declaration for

14    Default Judgment filed against Plaintiff Scott Boolen and the

15    collection system using that Motion unfairly and deceptively,

16    including misrepresenting the authentication and origination of

17    allegedly supporting documents and filing affidavits that each knows

18    or should know are false, unfair and deceptive.

19    SECOND AMENDED COMPLAINT-
64

20

21

9.80    Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved of the process and procedure of requiring or allowing a Suttell, P.S. employee to attach the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank of America Cardholder Agreement" to the affidavit of Elizabeth Neu and then attach the Neu Affidavit to the Motion and Declaration for Default Judgment filed against Plaintiff Scott Boolen.

9.81    Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell of Suttell, P.S. approved of the process and procedure of allowing non-attorney Suttell, P.S employees to select and attach the "Bank of America, Exhibit C, Bill of Sale and Assignment of Loans", the "Hawaiian Airlines account statements" and the "Bank of America Cardholder Agreement" to the Affidavit of Elizabeth Neu without the knowledge of Elizabeth Neu.

## X.    FACTS RELATED TO JOEL FINCH

10.1    Kelly Ellsworth is an employee or former employee of MCMI.

SECOND AMENDED COMPLAINT-
65

10.2   Kelly Ellsworth's acts, as alleged in this Complaint, were done under the direction and control of Defendant MCMI.

10.3   All acts done by Kelly Ellsworth were done on behalf of Defendant MCMI, on behalf of Midland Funding, and on behalf of Encore Capital.

10.4   On April 20, 2010, an employee of MCMI, other than Kelly Ellsworth, generated through a computer system an affidavit regarding the alleged indebtedness of Plaintiff Finch.

10.5   On April 20, 2010, Kelly Ellsworth signed the Affidavit to be used in the collection of an alleged defaulted debt, alleged to have been owed to the Encore Defendants by Plaintiff Finch.

10.6   During the relevant time period, Kelly Ellsworth personally signed One Hundred (100) to Four Hundred (400) affidavits per day.

10.7   The April 20, 2010 Kelly Ellsworth Affidavit was generated using a MCMI form designated "AFFRECORD" ("Form AFFRECORD").

10.8   The MCMI "Form AFFRECORD" replaces the MCMI "Form 400".

SECOND AMENDED COMPLAINT-66

1   10.9   The MCMI process of printing and signing form affidavits to fulfill

2          requests for "Form AFFRECORDS" has not changed since "Form

3          400" was in use.

4   10.10  Attached as Exhibit "46" is a true and correct copy of the Ellsworth

5          Affidavit filed with the Benton County Washington Court in the Finch

6          collection case.

7   10.11  On August 12, 2010, the Ellsworth Affidavit "Form AFFRECORD"

8          was filed by the Suttell Defendants on behalf of Midland Funding,

9          LLC as the Plaintiff in the Benton County Washington collection

10         lawsuit against the Plaintiff [in this case] Finch.

11  10.12  The Encore Defendants knew or should have known that the Suttell

12         Defendants would file the Ellsworth Affidavit on their behalf.

13  10.13  MCMI shares a computer software database system called "JST" with

14         the Suttell Defendants.

15  10.14  On or before August 12, 2010, MCMI authorized the Suttell

16         Defendants to file the Ellsworth Affidavit in order to attempt to obtain

17         a Default Judgment in the Benton County Washington collection

18         lawsuit against Plaintiff Finch.

19  SECOND AMENDED COMPLAINT-
    67

20

21

10.15 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she was "employed as a Specialist and have access to pertinent account records for Midland Credit Management, Inc., servicer of this account on behalf of plaintiff [Midland Funding]."

10.16 Ms. Kelly Ellsworth was not a "Specialist" for MCMI.

10.17 Ms. Kelly Ellsworth did not have "access to pertinent account records" for MCMI.

10.18 Ms. Kelly Ellsworth had no knowledge of the relationship between MCMI and Midland Funding.

10.19 Ms. Kelly Ellsworth does not know what a "servicer" of an account is within the context of her statement.

10.20 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that her "statements herein based upon personal knowledge of those accounts maintained on plaintiff's behalf."

10.21 Ms. Kelly Ellsworth did not have personal knowledge of the accounts maintained on "plaintiff's [Midland Funding] behalf."

SECOND AMENDED COMPLAINT-
68

72

10.22 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that "plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's FIRST NATIONAL BANK OF OMAH account xxxxxxxx2457 (MCM Number 85319291050 ("hereinafter the account") [Finch alleged account].

10.23 Ms. Kelly Ellsworth had no knowledge of the ownership of the debt.

10.24 Ms. Kelly Ellsworth had no knowledge related to the assignment of the debt.

10.25 Ms. Kelly Ellsworth had no knowledge of whether Joel Finch had ever had a "First National Bank of Omaha account" or not.

10.26 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had "access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf."

10.27 Ms. Kelly Ellsworth did not ever have access or review the records pertaining to the account.

SECOND AMENDED COMPLAINT-69

10.28 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she was "familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account."

10.29 Ms. Kelly Ellsworth did not have any knowledge or information about how MCMI creates or maintains business records.

10.30 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that she had personal knowledge that "the records are kept in the regular course of business."

10.31 Ms. Kelly Ellsworth did not have any knowledge or information about whether or not the First National Bank of Omah records, the Midland Funding records, or the MCMI records are kept in the ordinary course of business.

10.32 Ms. Kelly Ellsworth does not know what keeping records in the ordinary course of business means.

10.33 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that "it was in

SECOND AMENDED COMPLAINT-70

74

the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record."

10.34 Ms. Kelly Ellsworth did not have any knowledge of how any of the records were created, compiled, transmitted, or selected for transmission by First National Bank of Omah, Midland Funding, or MCMI.

10.35 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that "in the regular course of business, the record or compilation is made at or near the time of the act or event."

10.36 Ms. Kelly Ellsworth did not have any knowledge of when the record was made or compiled or whether it was near the time of the act or event.

10.37 Ms. Kelly Ellsworth did not have any personal knowledge of the amount of the alleged debt.

SECOND AMENDED COMPLAINT-71

10.38 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that the account "balance may accrue interest at the rate set forth in the cardholder agreement/original contract and/or as required by law, until judgment is entered herein, after which interest on the unpaid balance shall accrue as required by law and as set forth within the terms of the judgment."

10.39 Ms. Kelly Ellsworth did not have any information as to the interest rate.

10.40 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statements that "upon information and belief, this action is based upon a revolving credit agreement entered into between defendant(s) and the original credit grantor."

10.41 Ms. Kelly Ellsworth did not have any information nor had she formed any belief nor did she do any investigation or have any information to form a belief regarding Plaintiff Finch's agreement with the original credit grantor.

SECOND AMENDED COMPLAINT-
72

10.42 Ms. Kelly Ellsworth had no personal knowledge of any "action" against Plaintiff Finch.

10.43 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "upon information and belief, pursuant to the agreement, defendant(s) agreed to pay monthly installments to the original credit grantor for all goods and/or services and/or cash advances."

10.44 Ms. Kelly Ellsworth did not have any information about the type, nature or terms of any agreement entered into by Joel Finch.

10.45 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "upon information and belief, defendant(s) used or authorized the use of the credit card account to obtain loans from the original grantor for the purpose of obtaining goods and/or services and/or cash advances but failed to make the payments due pursuant to the agreement."

10.46 Ms. Kelly Ellsworth did not have any information nor had she formed any belief, nor did she do any investigation or have any information to form a belief regarding Joel Finch's use of any credit card.

SECOND AMENDED COMPLAINT-
73

10.47 Ms. Kelly Ellsworth in her Affidavit ("Form AFFRECORD") made the false, misleading, unfair and deceptive statement that "if called to testify as a witness thereon, I could and would competently testify as to all the facts stated herein."

10.48 Ms. Kelly Ellsworth did not have personal knowledge of any of the facts asserted in her "Form AFFRECORD" Affidavit.

10.49 Ms. Kelly Ellsworth signed the "Form AFFRECORD" Affidavit without knowledge or information contained in the Affidavit.

10.50 Ms. Kelly Ellsworth is required by MCMI, Midland Funding and Encore Capital to sign the affidavits as they are printed.

10.51 Ms. Kelly Ellsworth did not have personal knowledge of the Finch account.

10.52 Ms. Kelly Ellsworth did not have any personal knowledge of First National Bank of Omah.

10.53 Kelly Ellsworth did not have any business dealings with Plaintiff Joel Finch nor any knowledge of MCMI or any creditor's business dealings with Plaintiff Joel Finch.

SECOND AMENDED COMPLAINT-74

1    10.54 Ms. Kelly Ellsworth did not review any records before signing the
2           Affidavit.

3    10.55 When the Kelly Ellsworth Affidavit was sent to Suttell, P.S., no
4           records were attached.

5    10.56 The Affidavit was sent by delivery of a paper copy with an original
6           manually signed signature.

7    10.57 Ms. Kelly Ellsworth did not attach the "Affidavit of Andrew Carlson,
8           Manager for Jefferson Capital Systems, LLC" and "Assignment of
9           Accounts from Jefferson Capital Systems, LLC to Midland Funding,
10          LLC" ("Finch Media") to her Affidavit.

11   10.58 Ms. Kelly Ellsworth was never made aware that the "Affidavit of
12          Andrew Carlson, Manager for Jefferson Capital Systems, LLC" and
13          "Assignment of Accounts from Jefferson Capital Systems, LLC to
14          Midland Funding, LLC" were attached to her Affidavit or even that
15          they were going to be attached to her Affidavit.

16   10.59 Ms. Kelly Ellsworth did not approve or authorize the attachment of
17          the "Affidavit of Andrew Carlson, Manager for Jefferson Capital

18

19   SECOND AMENDED COMPLAINT-
     75
20

21

Systems, LLC" or "Assignment of Accounts from Jefferson Capital

Systems, LLC to Midland Funding, LLC" to her Affidavit.

10.60  On or before November 19, 2009, a Suttell, P.S employee printed

documents purported to be an "Affidavit of Andrew Carlson, Manager

for Jefferson Capital Systems, LLC", "Assignment of Accounts from

Jefferson Capital Systems, LLC to Midland Funding, LLC."

10.61  Jefferson Capital Systems, LLC is located at 16 McLeland Road,

Saint Cloud, MN, the same address as the MCMI Minnesota location.

10.62  Suttell, P.S. employees, without the knowledge or approval of Kelly

Ellsworth, attached the "Affidavit of Andrew Carlson, Manager for

Jefferson Capital Systems, LLC" and "Assignment of Accounts from

Jefferson Capital Systems, LLC to Midland Funding, LLC" to the

Motion for Default Judgment filed in Benton County Superior Court,

in a way that made it appear that the "Affidavit of Andrew Carlson,

Manager for Jefferson Capital Systems, LLC" and "Assignment of

Accounts from Jefferson Capital Systems, LLC to Midland Funding,

LLC" were attached by Kelly Ellsworth to her Affidavit, and she was

authenticating the documents as business records.

SECOND AMENDED COMPLAINT-
76

10.63 Ms. Kelly Ellsworth did not know what was later attached to her
Affidavit and filed in support of Default Judgment.

10.64 On or about June 21, 2010, a Suttell, P.S. employee prepared
approximately twenty (20) to thirty (30) package Motion and
Declaration for Default Judgment had them delivered to Defendant
Malisa Gurule to be signed. This set of documents included the Finch
Default documents.

10.65 Defendant Malisa Gurule spent two (2) minutes or less reviewing the
Joel Finch Default documents and supporting documentation.

10.66 On June 21, 2010, Defendant Malisa Gurule signed a Motion and
Declaration for Default Judgment, caused it to be served on Joel Finch
and caused it to be filed in the Benton County Superior Court on
August 12, 2010 in the Finch Collection Lawsuit.

10.67 The signing, service and filing of the Finch Motion and Declaration
for Default Judgment was an attempt to collect a debt.

10.68 Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and
William Suttell of Suttell, P.S. approved the form and procedure of
preparing and presenting the State Court Motion and Declaration for

SECOND AMENDED COMPLAINT-
77

81

Default Judgment filed against Plaintiff Joel Finch and the collection

system using that Motion, unfairly and deceptively including

misrepresenting the authentication and origination of allegedly

supporting documents and filing affidavits that each knows or should

know are false, unfair, and deceptive.

10.69 Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and

William Suttell of Suttell, P.S. approved of the process and procedure

of requiring or allowing non-attorney Suttell, P.S. employees to attach

the "Affidavit of Andrew Carlson, Manager for Jefferson Capital

Systems, LLC" and "Assignment of Accounts from Jefferson Capital

Systems, LLC to Midland Funding, LLC" to the affidavit of Kelly

Ellsworth and then attach the Kelly Ellsworth Affidavit to the Motion

and Declaration for Default Judgment filed against Plaintiff Joel

Finch.

10.70 Defendants Malisa Gurule, Karen Hammer, Isaac Hammer and

William Suttell of Suttell, P.S. approved of the process and procedure

of requiring or allowing non-attorney Suttell, P.S. employees to attach

the "Affidavit of Andrew Carlson, Manager for Jefferson Capital

SECOND AMENDED COMPLAINT-
78

Systems, LLC" and "Assignment of Accounts from Jefferson Capital

Systems, LLC to Midland Funding, LLC" to the affidavit of Kelly

Ellsworth without the knowledge of Kelly Ellsworth.

XI.    VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

11.1.    Defendants Encore Capital, MCMI, Midland Funding, Suttell, P.S.,

Mark Case, Malisa Gurule, Karen Hammer, Isaac Hammer and

William Suttell, through their own acts, by and through their agents

and employees, and their policies and procedures, have violated the

FDCPA which has caused damage to the Plaintiffs.

11.2.    Defendants Encore Capital and Midland Funding violated 15 U.S.C. §

1692e(5) by bringing and maintaining legal actions in the state of

Washington in the name of Midland Funding, while Midland Funding

was not licensed as a collection agency.

11.3.    Defendants Encore Capital, MCMI, Midland Funding, Suttell, P.S.,

Mark Case, Malisa Gurule, Karen Hammer, Isaac Hammer and

William Suttell made misleading and deceptive statements in the

collection of a debt in violation of 15 USC § 1692e.

SECOND AMENDED COMPLAINT-
79

11.4.  The Suttell Defendants[1] served on debtors and filed affidavits signed by Encore Defendants employees that the Suttell defendants knew or should have known contained false and misleading statements regarding proof of the existence, amount and status of alleged debts in violation of 15 USC § 1692e; 15 USC § 1692f.

11.5.  The Defendants misrepresented the information Suttell employees attached to the affidavits of MCMI employees.

11.6.  Defendants Encore Capital, MCMI, Midland Funding, Suttell, P.S., Mark Case, Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell  by commencing or threatening to commence a lawsuit to collect a debt which is barred by the statute of limitations violated the FDCPA, 15 USC § 1692f(1).

11.7.  Defendants Encore Capital, MCMI, Midland Funding, Suttell, P.S., Mark Case, Malisa Gurule, Karen Hammer, Isaac Hammer and William Suttell used unfair or unconscionable means to collect or

---

[1] Encore Defendants did so as well but Plaintiffs are enjoined from pursuing these violations by *Vassalle v. Midland Funding, LLC*, United States District Court, Northern District of Ohio Western Division, Case No. 3:11-cv-00096.

SECOND AMENDED COMPLAINT-
80

1    attempt to collect a debt in violation of 15 USC § 1692f including but

2    not limited to 15 USC § 1692f(1).

3    11.8.  The Suttell Defendants failed to have meaningful attorney

4    involvement in the preparation and presentation of the debt collection

5    lawsuit which is a misrepresentation and an unfair practice pursuant to

6    15 USC § 1692e and §1692f.

7    XII.    VIOLATION OF THE CONSUMER PROTECTION ACT

8    12.1.  Defendants Encore Capital and Midland Funding violated RCW

9    19.86, et seq., the Washington Consumer Protection Act (WCPA) by

10   bringing and maintaining actions against consumers in the state of

11   Washington without first obtaining a Washington collection agency

12   license.

13   12.2.  Plaintiff Dane Scott suffered an injury to property as a result of the

14   Defendants' collection efforts, including but not limited to, the taking

15   of money by garnishment.

16   12.3.  Defendants Encore Capital and Midland Funding violation of the

17   Washington State Collection Agency Act is a per se violation of the

18   Washington State Consumer Protection Act (RCW 19.16.440).

SECOND AMENDED COMPLAINT-
81

1    12.4.  Defendants Encore Capital, Midland Funding, and MCMI's violation

2           of the Washington State Collection Agency Act (WCAA) prohibited

3           practices section, RCW 19.16.250 or licensing sections is an unfair act

4           or practice and/or an unfair method of competition in the conduct of

5           trade or commerce.

6    12.5.  Defendants Encore Capital, and Midland Funding's violation of the

7           Washington State Collection Agency Act (WCAA) prohibited

8           practices section, RCW 19.16.250 or licensing sections affects the

9           public interest in violation of the Washington State Consumer

10          Protection Act. (RCW 19.16.440).

11   12.6.  Defendants Encore Capital and Midland Funding have violated the

12          WCCA including but not limited to the prohibited practices section

13          (RCW 19.16.250).

14   12.7.  Defendants Encore Capital and Midland Funding have violated the

15          WCCA including but not limited to failing to obtain and maintain a

16          license as required by RCW 19.16.110.

17

18

19   SECOND AMENDED COMPLAINT-
     82
20

21

12.8.   The business of collection agencies, as well as all acts and practices of collection agencies and debt collectors, are subject to the Consumer Protection Act, RCW 19.86 and subsequent sections.

12.9.   The Consumer Protection Act of the State of Washington requires that all collection agencies, their agents, and debt collectors abstain from unfair or deceptive practices or acts and unfair methods of competition.

12.10. Defendants Encore Capital, and Midland Funding individually and/or by and through their agents and employees, policies and procedures, have engaged in deceptive acts and practices, unfair acts and practices, and unfair methods of competition that have caused injury to the Plaintiffs' property, including but not limited to bringing and maintaining actions without first obtaining a collection agency license.

12.11. Defendants Encore Capital and Midland Funding, were engaged in unfair and deceptive acts and practices in attempting to collect an alleged debt from the Plaintiffs while unlicensed as a collection agency.

SECOND AMENDED COMPLAINT-83

1  12.12. Defendants Encore Capital and Midland Funding are in the business

2      of debt collection in trade or commerce.

3  12.13. Unlawful and unfair debt collections are against public interest.

4  12.14. Defendants Encore Capital and Midland Funding's actions were the

5      direct cause of injury to Plaintiffs' property.

6  12.15. The violations have harmed and unless enjoined will continue to harm

7      the public interest by collecting judgments that were unlawful, and

8      obtained through an unfair method of competition.

9       XIII.  CLASS ALLEGATIONS

10  13.1. This action is brought on behalf of a class consisting of:

11     13.1.1.   All natural persons;

12     13.1.2.   who were defendants in a lawsuit filed in a court in

13           Washington State;

14     13.1.3.   in which Midland Funding, LLC was the Plaintiff;

15     13.1.4.   in which Suttell, P.S. represented or alleged to represent

16           Midland Funding, LLC; and

17

18

19 SECOND AMENDED COMPLAINT-
  84

20

21

13.1.5.   For FDCPA sub-class1[2]:  where a form affidavit, such as "Form 400" or "Form AFFRECORD" was filed with a Court in the state of Washington; and the affidavit was filed on or after August 12, 2009, (the date one (1) year prior to the commencement of this action, 15 USC 1692k(d)); and the Suttell defendants attached any document(s) other than pleadings to the affidavit before filing; or

13.1.6.   For FDCPA sub-class2: for transactions covered by the UCC-2-725 statute of limitations, the lawsuit was commenced with a Court in the state of Washington; on or after August 12, 2009, (the date one (1) year prior to the commencement of this action, 15 USC 1692k(d)) and more than four (4) years lapsed after the date of default on the underlying transaction; or

---

[2] The WCAA (RCW 19.16.430-450) and WCPA (RCW 19.86.090- treble damages etc.) would also apply to this subclass.

SECOND AMENDED COMPLAINT-85

89

13.1.7.   For FDCPA sub-class3: The state court action was commenced on or after August 12, 2009 (the date one (1) year prior to the commencement of this action) until September 26, 2013 (the date Defendant Midland Funding became licensed as a collection agency)

13.1.8.   WCPA/WCAA subclass1[3]. The action was brought in a court in the state of Washington on or after August 12, 2006 (the date four (4) years prior to the commencement of this action) until September 26, 2013 (the date Defendant Midland Funding became licensed as a collection agency) and resulted in a judgment and injury to the consumer's property;

13.2.   The class is sufficiently numerous that joinder of all members is impractical.

---

[3] This sub-class would not share in a distribution of the FDCPA statutory damages, 15 USC 1692k without the application of equitable tolling.

SECOND AMENDED COMPLAINT-86

13.3.  This assertion is based upon the fact that the Defendants threaten to sue and do sue hundreds of consumers in the state of Washington by merging data into form collection letters, affidavits and complaints.

13.4.  The data merged into the form collection letters and complaints is obtained by the Defendants by purchasing books of old debt beyond the statute of limitations.

13.5.  The Affidavits filed in the state court collection matters is a form and it makes claims substantially similar to those found previously to be false and misleading.

13.6.  Each time a false and misleading affidavit was filed with a Washington court, it was known to be false by the attorney responsible for filing it.

13.7.  There are questions of law and fact common to the class which predominates over any questions peculiar to individual class members. The principal issues include whether Defendants violated the FDCPA, WCAA and the WCPA by:

13.7.1.  Using false representations or deceptive means to collect or attempt to collect a debt;

SECOND AMENDED COMPLAINT-87

13.7.2.    Using unfair or unconscionable means to collect or attempt to collect a debt;

13.7.3.    Threatening and/or taking action that could not legally be taken;

13.7.4.    Threatening to file a lawsuit to collect debts barred by the statute of limitations;

13.7.5.    Defendant Midland Funding, LLC violated the WCAA and the WCPA by collecting and/or attempting to collect debts without a license as required by Washington Law.

13.8.    There are no individual questions other than issues which can be determined by a ministerial inspection of Defendants' records. There are no individual questions peculiar to individual class members.

13.9.    Plaintiffs have the same claims as the members of the class. All of the claims are based on the same factual and legal theories.

13.10.    Plaintiffs will fairly and adequately represent the interest of the class members. They are committed to vigorously litigating this matter. Plaintiffs have retained counsel experienced in prosecuting class actions and claims involving unlawful collection matters. Neither the

SECOND AMENDED COMPLAINT-
88

Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

13.11. A class action is a superior method for the fair and efficient adjudication of this controversy.

13.12. Class wide damages are essential to induce Defendants to comply with the law.

13.13. The interest of the class members in individually controlling the presentation of separate claims against the Defendants is small because the maximum statutory damages in an individual FDCPA action are $1,000.00.

13.14. Certification of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate. A class action is the only appropriate means of resolving this controversy because the class members are not aware of their rights. In the absence of a class action, a failure of justice will result.

13.15. Certification of a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendants have acted on

SECOND AMENDED COMPLAINT-
89

grounds generally applicable to the class, thereby making appropriate declaratory relief with respect to the class as a whole.

## XIV.    DEMAND

WHEREFORE, Plaintiffs demand judgment as follows:

14.1.  Actual damages;

14.2.  Statutory individual damages for the named Plaintiffs pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2);

14.3   Statutory class damages for the named Plaintiffs and putative class members pursuant to the FDCPA 15 U.S.C. § 1692k(a)(2)(B);

14.4   Reasonable attorney's fees and costs pursuant to the FDCPA, 15 U.S.C. §1692k(a)(3);

14.5   Reasonable attorney's fees and costs pursuant to the Washington Consumer Protection Act, RCW 19.86;

14.6   Treble damages pursuant to the Washington Consumer Protection Act, RCW 19.86;

14.7.  Declaratory Judgment that Defendants' practices violate the Fair Debt Collection Practices Act and/or the Washington Consumer Protection Act; and/or the Washington Collection Agency Act;

SECOND AMENDED COMPLAINT-90

14.8. Disgorgement pursuant to RCW 19.16.450 of all interest, service charges, attorneys' fees, collection costs, delinquency charge or any other fees or charges otherwise legally chargeable to the debtor on such claim, collected by Defendants;

14.9. Disgorgement of all funds collected based on any lawsuit commenced prior to September 26, 2013.

14.10. Injunction prohibiting Defendants from collecting on any judgment obtained prior to September 26, 2013.

14.11. For such other and further relief as may be just and proper.

DATED this 2nd of February, 2015.

> Kirk D. Miller, P.S.
>
> s/Kirk D. Miller
> Kirk D. Miller, WSBA #40025
> Attorney for Plaintiffs

SECOND AMENDED COMPLAINT-91

CM/ECF CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Kirk D. Miller          kmiller@millerlawspokane.com;

John D. Munding          munding@crumb-munding.com; Ashley@crumb-munding.com;

Theodore Seitz          tseitz@dykema.com;

Bradley Fisher          bradfisher@dwt.com;

Richard Stone          richard.stone@hoganlovells.com

Kirk D. Miller, P.S.


s/Kirk D. Miller
Kirk D. Miller, WSBA #40025
Attorney for Plaintiffs

SECOND AMENDED COMPLAINT-92

# Exhibit B

**From:** Kirk D. Miller [mailto:kmiller@millerlawspokane.com]
**Sent:** Friday, February 27, 2015 12:12 PM
**To:** Seitz, Theodore
**Cc:** 'John Munding'
**Subject:** RE: Vassalle et al v. Midland et al;/Gray et al v. Midland et al

Hi Ted,

Your motion for contempt would be premature at this point. If the attorney's actions are held to be covered under the vaSalle injunction, then the members are prohibited "from commencing or prosecuting" the action. At this point, we have done neither. The motion to amend request that judge Shea allow us to prosecute the action. If he grants the motion to amend on that issue, only then would we be allowed to prosecute the action. At that point, if you are so inclined, you could file a motion for contempt against the plaintiffs, and I suppose that it would also be appropriate to ask Judge Katz to hold judge Shea in contempt as well. While the mass filing a fraudulent affidavits in courts across the country is certainly an interesting back story, it really has nothing to do with the claims against the Suttell attorneys. Even if the Midland affidavits were completely true, I don't think that it is a tough sell to convince a court that altering another person's affidavit is, at a minimum, deceptive. Regarding the scope of the injunction, I find it curious that the court added the phrase "where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit…". If the injunction is really intended to be as broad as you suggest, that language is superfluous. It could have simply enjoined litigation "arising out of or relating to the released parties use of affidavits in debt collection lawsuits…" and left it at that. Do you suppose that judge Katz also intended to enjoin all litigation by the class members against the Suttell defendants arising from their doctoring of affidavits used by other debt collectors?   I sincerely doubt it.

There is no further briefing required or allowed on the motion to amend. John Munding told me that he wants to wait until after the hearing on the motion to amend before I take your clients' deposition.  The only benefit to bringing your motion now is to try to cut off judge Shea's right to rule on this issue. I doubt that it will be well taken, but proceed as you feel you must.

Kirk D. Miller
Kirk D. Miller, P.S.
421 W. Riverside Ave.
Suite 704
Spokane, WA 99201
phone: 509-413-1494
fax: 509-413-1724
kmiller@millerlawspokane.com

**From:** Seitz, Theodore [mailto:TSeitz@dykema.com]
**Sent:** Friday, February 27, 2015 7:53 AM
**To:** Kirk D. Miller
**Cc:** 'John Munding'
**Subject:** RE: Vassalle et al v. Midland et al;/Gray et al v. Midland et al

Kirk:

Thank you for the response to my earlier email.   I appreciate your candor and willingness to discuss this matter further.

I have had the chance to review Plaintiffs' reply to Defendants' responses re the motion for leave to amend.  I understand Plaintiffs' position below and in the Reply, but I believe that Plaintiffs are mistaken as to the previous ruling by Judge Shea allowing affidavit claims to move forward against the Suttell firm several years later.

The Order that I believe you are referring is dated April 15, 2011.   That Order references, in part,  the injunction against parallel litigation that Judge Katz in Ohio entered upon granting preliminary approval to the first *Brent/Vassalle* class settlement.  The language in that injunction did not mention attorneys, while the injunction and release referenced in Judge Katz's Judgment Entry dated October 14, 2014 most certainly does include claims against attorneys such as the Suttell firm.  See e.g., paragraphs 6 and 13 of *Vassalle* Judgment Entry.

While I understand that Plaintiffs may believe that they have taken care to avoid  Judge Katz's Injunction, it is clear that the claims in Plaintiffs' proposed Second Amended Complaint, which cite at length to Midland affiants' lack of personal knowledge when executing affidavits used by the Suttell firm in lawsuits are "arising out of or relating to the use of affidavits in debt-collection lawsuits brought by Defendants, where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit."  *Vassalle* Judgment , Paragraphs 6 and 13.   It makes no difference that Plaintiffs' view their proposed amended claim to be that the Suttell firm allegedly further altered the Midland affidavits.  None of the Plaintiffs opted-out of the renewed *Vassalle* settlement, so they are bound by the Release and Judge Katz's Injunction, who continues to have jurisdiction over the Vassalle settlement and class members.

Thus, due to the amount of effort that the *Vassalle* Court, along with my clients, and the *Vassalle* Class Counsel put into the *Vassalle* class settlement, my clients have instructed me to pursue a motion to show cause as to why Plaintiffs' should not be held in contempt of court for violating the *Vassalle* injunction.  I plan to file the motion early next week, so as to allow you and Plaintiffs' time to consider the withdrawal of the motion for leave to amend to add the proposed Second Amended Complaint claims re Midland affidavits.

Again, I appreciate your consideration of this matter.

Regards,

Ted


**From:** Kirk D. Miller [mailto:kmiller@millerlawspokane.com]
**Sent:** Monday, February 23, 2015 2:19 PM
**To:** Seitz, Theodore
**Cc:** 'John Munding'
**Subject:** RE: Vassalle et al v. Midland et al;/Gray et al v. Midland et al

Hi Ted,

Thank you for your email and I appreciate your communication with me on this point. I tried to make clear in my amended complaint that the claims against the Midland entities that were wrapped up in the Vassalle settlement were not part of the amended complaint and could not be litigated at this time due to the injunction. A number of the facts relevant to the Vassalle/Brent cases, however, I believe are relevant to the claim that the Suttell defendants altered the Midland affidavits by attaching documents to them. I believe the judge Shea previously authorized such a claim to go forward and the allegations were previously included in the version of a proposed amended complaint filed as an attachment to a notice in 2011. I certainly would not intentionally disregard an injunction signed by Judge Katz and would be happy to work with you to clarify the language of the proposed amended complaint so that we all have the same understanding. I expect to file a reply regarding the motion to amend the complaint later today and I will try to emphasize this point in my reply, as well. Please feel free to give me a call anytime to discuss.

Kirk D. Miller
Kirk D. Miller, P.S.
421 W. Riverside Ave.
Suite 704
Spokane, WA 99201
phone: 509-413-1494
fax: 509-413-1724
kmiller@millerlawspokane.com

---

**From:** Seitz, Theodore [mailto:TSeitz@dykema.com]
**Sent:** Friday, February 20, 2015 2:19 PM
**To:** Kirk Miller (kmiller@millerlawspokane.com)
**Cc:** John Munding (john@mundinglaw.com); Seitz, Theodore
**Subject:** Vassalle et al v. Midland et al;/Gray et al v. Midland et al
**Importance:** High

Kirk:

As you know, I am counsel for the Midland Defendants in the *Vassalle* consolidated class action matter.  I am also co-counsel with John Munding in the *Gray* matter.  We have not had many direct dealings, but I thought it appropriate, as a courtesy, to reach out and touch base with you about the above-referenced matters—given the posture of both cases .

As you are aware, for over a year there has been a renewed class settlement in place in the *Vassalle* case. The renewed settlement was granted Final Approval on October 4, 2014.    A copy of the Final Approval Order is attached.  In addition, the *Vassalle* court entered an injunction, which prohibits *Vassalle* class members, who did not opt –out of the settlement, from proceeding on claims released by the renewed class settlement. The *Vassalle* Court continues to retain jurisdiction over the *Vassalle* settlement and its injunction remains in place.    A copy of the *Vassalle* injunction is also attached.

Recently, Plaintiffs have sought to amend their complaint in the *Gray* case to bring claims barred by the *Vassalle* settlement.  As class members in *Vassalle* who did not opt out of the settlement, they have violated the *Vassalle* Court's injunction.   This was also explained in the Midland response to Plaintiffs' Motion for Leave to Amend in *Gray*.

Due to the *Vassalle* Court's continuing jurisdiction over the *Gray* Plaintiffs, who are also *Vassalle* class members, the Midland Defendants intend to seek an Order to Show Cause next week as to why the *Gray* Plaintiffs should not be held in contempt of the *Vassalle* Court's injunction by filing the Motion for Leave to Amend their Complaint to add claims prohibited by the *Vassalle* class settlement.

Both John and I encourage and welcome the opportunity to discuss this matter further to see if we can reach a solution that could avoid the necessity to seek a contempt order against your clients.

Regards,

Ted



| **Theodore W. Seitz** | 517-374-9149 Direct | Capitol View |
| Member | 517-374-9100 Main | 201 Townsend Street, Suite 900 |
| TSeitz@dykema.com | 855-258-3518 Fax | Lansing, Michigan 48933 |
| | | www.dykema.com |

*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately. Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.



This email has been checked for viruses by Avast antivirus software.
www.avast.com



This email has been checked for viruses by Avast antivirus software.
www.avast.com

# Exhibit C

1   Kirk D. Miller
    *Kirk D. Miller, P.S.*
2   421 W. Riverside Avenue
    Suite 704
3   Spokane, WA 99201
    (509) 413-1494 Telephone
4   (509) 413-1724 Facsimile
    kmiller@millerlawspokane.com
5

6
                IN THE UNITED STATES DISTRICT COURT
7                EASTERN DISTRICT OF WASHINGTON

8   KELLI GRAY, and all others similarly  )
    situated,                             )   Case No.: 2:09-CV-00251-EFS
                                          )
9              Plaintiffs,                )   REPLY IN SUPPORT OF
                                          )   PLAINTIFFS' SECOND MOTION TO
10         v.                             )   AMEND COMPLAINT (ECF No. 472)
                                          )
11  SUTTELL & ASSOCIATES, et al.,         )
                                          )
12            Defendants.                 )
    _____)
13  EVA LAUBER, et al.,                   )
                                          )
14             Plaintiffs,                )
                                          )
15         v.                             )
                                          )
16  ENCORE CAPITAL GROUP, INC., et        )
    al.,                                  )
17                                        )
              Defendants.                 )
18  _____)

19

20  REPLY IN SUPPORT OF
    PLAINTIFFS' SECOND MOTION TO
21  AMEND COMPLAINT - 1

I.  Scope of Claims Against the Defendants

The primary purpose of Plaintiff's second motion to amend the complaint is to narrow the scope of the remaining litigation following the Supreme Court's determination on the certified question and the *Vassalle* settlement/injunction.  As described in the Supplemental Joint Status Certificate (ECF No. 467), there are essentially three remaining claims in this case.  The Court should allow amendment to reflect these remaining claims. Not only does justice so require, but it is in all of the parties' and the Court's interest to clearly define and narrow the scope of the remaining claims so that both discovery and motion practice can be narrowly tailored to achieve final, expeditious resolution of this case that has been pending since 2009.

A.    Statute of Limitations Violation

Plaintiffs allege that the Midland defendants violated the FDCPA and WCPA by filing lawsuits and thereby collecting or attempting to collect money from Washington consumers on claims that were beyond the UCC 2-275 statute of limitations for sale of goods.  Furthermore, Suttell defendants violated the FDCPA by litigating the cases that were beyond the statute of limitations. This allegation was contained in the original Complaint filed on behalf of Plaintiff Kelli Gray. See ECF No. 1.  Plaintiffs waive their WCPA claim against the Suttell defendants, as it

REPLY IN SUPPORT OF
PLAINTIFFS' SECOND MOTION TO
AMEND COMPLAINT - 2

1    is a new claim (although under the same facts) and the Suttell defendants may be

2    prejudice.  The FDCPA claims can be resolved via cross-motions for summary

3    judgment and damages can be ascertained via minimal discovery tailored to the list

4    of FCNB-Spiegel cases that the Court previously ordered the Midland defendants

5    to produce.  ECF No. 205.

6            B.     Failure to License

7           The Washington Supreme Court issued its ruling on the scope of the

8    "collection agency" definition under RCW 19.16.100, as it existed at the inception

9    of this lawsuit.  Plaintiff alleges that the Midland defendants illegally sued

10    Washington consumers and maintained those lawsuits without first obtaining a

11    collection agency license.  In doing so, the Midland defendants violated the

12    FDCPA and WCPA.  For a limited number of reasons, the Midland defendants do

13    not concede that they are/were a "collection agency" under the prior definition in

14    the statute.  This issue should be dissolved through dispositive motion practice

15    following a 30(b)(6) deposition of the Encore/Midland defendants.  Plaintiff's

16    counsel has already requested dates for the deposition and the facts necessary for

17    the court to make a determination on this claim should be completed within the

18    next few months.

19

20    REPLY IN SUPPORT OF
       PLAINTIFFS' SECOND MOTION TO
21    AMEND COMPLAINT - 3

C.     Altering Affidavits

Like the others, this is not a new claim.  ECF No. 298-1.  It alleges that the Suttell defendants systematically altered the form affidavits it received from the Midland defendants by attaching documents to them without the knowledge or permission of the affiant, in an effort to deceive consumers into believing that documents were authenticated by the affiant and in violation of the FDCPA.  As clarified by the Court, this claim was indisputably viable under the original *Brent* settlement and injunction.  ECF Nos. 299, 364.

The point of contention raised by Defendants in response to Plaintiff's recent motion to amend (ECF No. 472) stems from the broader scope of the release and injunction issued in the *Vassalle* case (ECF No. 477 (attachment)).  That release covers claims against the Suttell attorneys "arising out of or relating to the use of affidavits in debt collection lawsuits" where the affiant "lacked personal knowledge of the facts stated in the affidavit".  *Id.*  Plaintiffs' claims against the Suttell defendants, however, do not arise from the use of the false affidavits in any way contemplated by the *Vassalle* court.  The truth or falsity of the affidavits when they left Midland is immaterial to the claim.  Rather, Plaintiffs allege that the Suttell defendants independently and materially altered the affidavits after they were received from the Midland defendants.  While Plaintiffs agree that FDCPA

REPLY IN SUPPORT OF
PLAINTIFFS' SECOND MOTION TO
AMEND COMPLAINT - 4

1   claims against Midland's attorneys for filing false affidavits provided by Midland

2   is clearly barred by the *Vassalle* injunction, further alteration of the Midland

3   affidavits by the attorneys without the knowledge of Midland is beyond the scope

4   of anything considered by the *Vassalle* court in approving the settlement and

5   injunction language.  While Plaintiffs certainly would not disregard or intentionally

6   run afoul of Judge Katz' order, this allegation addresses issues outside its scope.

7                           II.     Conclusion

8          For all the reasons set forth herein, and because it is in the interest of the

9   parties and the Court, Plaintiffs respectfully request that the court grant Plaintiffs'

10  motion to amend the complaint.

11         DATED this 24th day of February, 2015.

12                                          Kirk D. Miller, P.S.

13

14                                          s/Kirk D. Miller
                                            Kirk D. Miller, WSBA #40025
15                                          Attorney for Plaintiffs

16

17

18

19

20  REPLY IN SUPPORT OF
    PLAINTIFFS' SECOND MOTION TO
21  AMEND COMPLAINT - 5

CM/ECF CERTIFICATE OF SERVICE

I hereby certify that on the 24ᵗʰ day of February, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Kirk D. Miller          kmiller@millerlawspokane.com;

John D. Munding      munding@crumb-munding.com; Ashley@crumb-munding.com;

Theodore Seitz         tseitz@dykema.com;

Bradley Fisher         bradfisher@dwt.com;

Kirk D. Miller, P.S.


s/Kirk D. Miller
Kirk D. Miller, WSBA #40025
Attorney for Plaintiffs

REPLY IN SUPPORT OF
PLAINTIFFS' SECOND MOTION TO
AMEND COMPLAINT - 6