1

2

3

4

5                          UNITED STATES DISTRICT COURT
                            EASTERN DISTRICT OF WASHINGTON
6

7   KELLI GRAY and all others similar        NO. CV-09-251-EFS
    situated,
8                                            **ORDER RULING ON MOTION TO
                                             STRIKE AND SUMMARY-JUDGMENT
9                Plaintiffs,                  MOTIONS REGARDING THE STATUTE
                                             OF LIMITATIONS**
10       v.

11  SUTTELL & ASSOCIATES; MIDLAND
    FUNDING, LLC; MARK T. CASE and JANE
12  DOE CASE, husband and wife; and KAREN
    HAMMER and JOHN DOE HAMMER,
13

14               Defendants.
    ──────────────────────────────────       [NO. CV-10-5132-EFS]
15  EVA LAUBER; DANE SCOTT; SCOTT BOOLEN;
    JOEL FINCH; and all others similarly
    situated,
16

17               Plaintiffs,

18       v.

19  ENCORE CAPITAL GROUP, INC.; MIDLAND
    FUNDING, LLC; MIDLAND CREDIT
20  MANAGEMENT, INC.; SUTTELL & HAMMER,
    PS.; MARK T. CASE and JANE DOE CASE,
21  husband and wife; MALISA L. GURULE
    and JOHN DOE GURULE; KAREN HAMMER and
22  ISAAC HAMMER, wife and husband;
    WILLIAM SUTTELL and JANE DOE SUTTELL,
23  husband and wife;

24               Defendants.
    ──────────────────────────────────
25

26


    ORDER - 1

Before the Court, without oral argument, are the Suttell Defendants'[1] Motion for Summary Judgment Dismissing Plaintiff Gray's "Statute of Limitations" Claim(s), ECF No. 480, Plaintiffs'[2] Motion for Partial Summary Judgment, ECF No. 483, the Midland Defendants'[3] Motion for Summary Judgment on Plaintiff Gray's FDCPA Claims, ECF No. 495, and Plaintiffs' Motion to Strike, ECF No. 523. All three summary-judgment motions relate to Plaintiffs' claim that Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, by suing Plaintiff Kelli Gray to collect on a debt after the statute of limitations expired. The motion to strike addresses several of the exhibits submitted by the Midland Defendants in support of their summary-judgment motion. Having reviewed the pleadings and the file, the Court is fully informed and finds that, although genuine disputes of material fact exist as to the applicable statute of limitations, the bona fide error defense insulates Defendants from liability even if their debt-collection suit was untimely.

---

[1] Suttell & Associates PS, Suttell & Hammer PS, Mark Case, Jane Doe Case, Karen Hammer, Isaac Hammer, Malisa Gurule, John Doe Gurule, William Suttell, and Jane Doe Suttell.

[2] Kelli Gray, Eva Lauber, Dane Scott, Scott Boolen, and Joel Finch.

[3] Midland Funding LLC, Midland Credit Management Inc., and Encore Capital Group Inc.

## I.    UNDERLINED UNDISPUTED FACTS[4]

In August 2001, Plaintiff Kelli Gray applied for and was issued a credit card. Ms. Gray received the credit card in the mail, as well as an Account Agreement and periodic statements. Ms. Gray used the credit card to purchase clothing and apparel from Spiegel Brands, Inc. (Spiegel) stores. She received an account statement dated June 3, 2003, and made the $40 payment reflected therein in May 2003. Ms. Gray made her last payment on the credit card on May 13, 2004.

The June 3, 2003 statement that Ms. Gray received contains "Spiegel Charge" in large bold letters at the top. It then contains a block of text reading,

> FCNB has increased the late payment charge to $35, unless you have already rejected the increase. If FCNB does not receive an amount equal to at least the total minimum payment due by the payment due date on this statement, a late payment charge of $35 will be charged to your account. If you have rejected the increase, please see the reverse for late payment charge terms. Effective immediately, Eddie Bauer Stores can no longer accept payments on your FCNB credit card account. To make payments on your FCNB credit card account, please follow the payment instructions that appear on this statement.

Next the statement contains an "Account Summary," reflecting a "Total New Balance" of $1,394.76. A section entitled "Account Activity" follows, showing that a $40 payment was made on May 5, 2003. The bottom of the statement is a detachable payment slip with the word "Spiegel," addressed to:

---

[4] The Court has excerpted these facts from the parties' Joint Statement of Uncontroverted Facts for Purposes of Pending Motions for Summary Judgment, ECF No. 531 & Ex. A.

FCNB Processing Center
9310 SW Gemini Drive
Beaverton, OR 97078-0001.

First Consumers National Bank (FCNB) was a Federal Deposit Insurance Corporation insured, national bank regulated by the Office of the Comptroller of the Currency.

On October 27, 2008, the Suttell Law Firm filed an action on behalf of Midland Funding in Spokane County Superior Court against Ms. Gray to collect on the credit card account. The lawsuit was dismissed with prejudice on March 15, 2011; the dismissal was not based on a statute-of-limitations defense.

## II.   <u>LEGAL STANDARDS</u>

**A.   Summary Judgment**

Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must point to specific facts establishing a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A statement or dispute of fact must be supported by materials in the record. Fed. R. Civ. P. 56(c)(1)(a) & 2010 advisory committee's note. If the non-moving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary-judgment motion. *Celotex Corp.*, 477 U.S. at 322.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Housing Council of*

*Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations, modifications, and citations omitted). However, the Court must review evidence submitted in support of any of the cross-motions to determine whether it presents a dispute of material fact that precludes summary judgment for the opposing party. *Id.* at 1135; *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). In ruling on a motion for summary judgment, the Court must consider only evidence that could be presented in an admissible form at trial. Fed. R. Civ. P. 56(c)(2); *see* Ed Brunet, John Parry & Martin Redish, Summary Judgment: Federal Law and Practice § 8.6 (2014).

**B.    Fair Debt Collection Practices Act**

The FDCPA prohibits debt collectors from engaging in various abusive and unfair practices. *Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995). A debt collector is prohibited from using "unfair or unconscionable means to collect or attempt to collect debt." 15 U.S.C. § 1692f. "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of the FDCPA. 15 U.S.C. § 1692f(1). Filing a debt-collection lawsuit outside the statute of limitations, without having determined that the limitations period has been or should be tolled, violates the FDCPA. *Id.*; *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987).

**C.    Bona Fide Error Defense**

"The bona fide error defense is an affirmative defense that insulates debt collectors from liability even when they have violated

the FDCPA." *Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006). A defendant may escape liability using the defense if it can prove that the violation was "1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2012); 15 U.S.C. § 1692k(c). The debt collector has the burden of proof on this affirmative defense. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008).

Although the Supreme Court has held that the bona fide error defense in section 1692k(c) does not apply when a debt collector mistakenly interprets the legal requirements of the FDCPA, it explicitly declined to reach the question of whether a bona fide error defense is available when a violation results from a misinterpretation of the legal requirements of a state or federal law, other than the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 580 n.4 (2010). The Courts of Appeals and District Courts have reached different conclusions on this question. *See* Janet Flaccus, Fair Debt Collection Practices Act: Lawyers and the Bona Fide Error Defense, 2001 Ark. L. Notes 95, 96 (2001) ("On first examination, the cases discussing the bona fide error rule seem in disarray. It is submitted, however, that most can be explained by one simple observation. If the lawyer's actions are taken when the law is reasonably clear that what they are doing they can not do, the bona fide error defense will not apply. If, on the other hand, the law that the attorney is allegedly breaking is not at all clear, the bona fide

error defense is applied."); *Johnson v. Riddle*, 305 F.3d 1107, 1120 n.14 (10th Cir. 2002) (collecting cases).

More than thirty years ago, the Ninth Circuit stated broadly, "[r]eliance on advice of counsel or a mistake about the law is insufficient by itself to raise the bona fide error defense." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982). However, the issue in *Baker* was whether a debt collector could rely on its attorney's mistaken interpretation of the FDCPA's requirements. *Id.* at 777. Some courts in this circuit have applied *Baker* broadly and refused to apply the bona fide error defense when the defendant was ignorant or mistaken about the applicable state law. *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1101 (D. Or. 2000) (holding bona fide error defense was inapplicable where defendant was ignorant or mistaken about the law in Oregon that required a five-day waiting period before collecting a judgment).

Other courts in this circuit and elsewhere have taken a limited view of *Baker's* expansive language. *Watkins v. Peterson Enter., Inc.*, 57 F. Supp. 2d 1102, 1107–08 (E.D. Wash. 1999) (holding that a mistaken view of the law that had been approved by state district courts was a bona fide error); *Fry v. Bowman, Heintz, Boscia, Vician, P.C.*, 193 F. Supp. 2d 1070, 1085–86 (S.D. Ind. 2002) (holding that use of an incorrect summons form that was identical to those issued by a number of state courts was a bona fide error); *West v. Check Alert Sys.*, No. 1:00-CV-860, 2001 WL 1699196, at *7 (W.D. Mich. Sept. 7, 2001) (holding the bona fide error defense was available because the defendant complied with state law); *see also Rosado v. Taylor*, 324 F.

ORDER - 7

Supp. 2d 917, 932 (N.D. Ind. 2004) (exploring the reasoning behind *Baker* and of the courts that decline to follow it).

In a case presenting an issue similar to that presently before this Court, the Middle District of Florida held that the bona fide error defense was available and appropriate where the defendants filed a collection action outside the applicable statute of limitations (Delaware's) but had a "weak, at best," but good faith argument that Florida's statute of limitations should apply or that Delaware's should be tolled. *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1275 (M.D. Fla. 2008). At least two other district courts have taken a similar approach. *Almand v. Reynolds & Robin, P.C.*, 485 F. Supp. 2d 1361, 1365-67 (M.D. Ga. 2007) (finding defendants did not knowingly and intentionally file a time-barred suit where there was no controlling or persuasive authority from the state supreme court as to which statute of limitations applied); *Simmons v. Miller*, 970 F. Supp. 661, 664 (S.D. Ind. 1997) (finding no intentional misconduct that would violate the FDCPA where neither the state legislature nor the state supreme court had pronounced the applicable statute of limitations).

The trend in the case law appears to be toward allowing the bona fide error defense where the law is not clear, as stated by Ms. Flaccus and recognized and adopted by the Seventh and Tenth Circuits and the district courts cited above. Flaccus, *supra* at 96; *Johnson*, 305 F.3d at 1120 n.14; *Jenkins v. Heintz*, 124 F.3d 824, 832 & n.7 (7th Cir. 1997); *McCorriston*, 536 F. Supp. 2d at 1275; *Almand*, 485 F. Supp. 2d at 1365-67; *Simmons*, 970 F. Supp. at 664. Although the Ninth

Circuit has not adopted this approach and has not retreated from its broad statements in *Baker*, 677 F.2d at 779, *Baker* addressed a mistake as to the requirements of the FDCPA, not lack of clarity as to the applicable statute of limitations under state law.  The Supreme Court explicitly declined to reach this issue in *Jerman*, 559 U.S. at 580 n.4.  This Court finds that the bona fide error defense may be available in a case alleging defendants filed suit outside the applicable statute of limitations where the applicable limitations period has not been provided by the state legislature or resolved by the state courts.

**D.    Applicable Statute of Limitations**

Article 2 of the Uniform Commercial Code (UCC) governs transactions in goods and provides a four-year statute of limitations for breach of any contract for sale.[5]  UCC §§ 2-102 & 2-725.  "This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions."  UCC § 2-725 Official Comment.  In contrast, an action upon a written contract or an account receivable is governed by a six-year statute of limitations.[6]

_____

[5]  The parties agree that it does not matter whether Oregon or Washington law is applied here because both states have adopted the relevant portions of the UCC.  ECF No. 483 at 8-9; ECF No. 480 at 3; RCW 62a.2-725 (codifying UCC § 2-725 in Washington); ORS 72.2070 (codifying UCC § 2-725 in Oregon).

[6]  Oregon law provides a six-year statute of limitations for "[a]n action upon a liability created by statute," or "[a]n action upon a contract or liability, express or implied."  ORS 12.080.

Although a contract between buyer and seller for the sale of goods is governed by Article 2's four-year statute of limitations, characterizing the type of transaction and thus determining whether Article 2's four-year statute of limitations applies becomes more complicated when the purchase is not paid for outright or if a third party is involved in financing the purchase.

Where a sales contract creates a secured loan agreement between the seller of a good and the buyer, courts view the contract as a "hybrid agreement, constituting both a contract for sale and a secured transaction" and hold that a suit by the seller for the deficiency is also governed by Article 2's four-year statute of limitations. *Scott v. Ford Motor Credit Co.*, 345 Md. 251, 255, 257, 258, 262 (1997) (citing *Assoc. Discount Corp. v. Palmer*, 47 N.J. 183 (1966)); *see also Ford*, 345 Md. at 258-60 (collecting cases in agreement); *Ford Motor Credit Co. v. Arce*, 348 N.J. Super. 198, 199 (N.J. Super. Ct. 2002) (holding that retail installment contract entered to finance purchase of car was subject to Article 2's four-year statute of limitations). Even if a bank subsequently purchases a seller's interest in a contract that was originally between buyer and seller and sues to

---

Washington law provides a six-year statute of limitations for "[a]n action upon a contract in writing, or liability express or implied arising out of a written agreement," and "[a]n action upon an account receivable." RCW 4.16.040. For purposes of determining these motions, it is not necessary to analyze whether Oregon or Washington law applies because both states provide the same statutes of limitations for the relevant conduct.

enforce the contract, the suit is still governed by Article 2. *Citizens Nat'l Bank of Decatur v. Farmer*, 77 Ill. App. 3d 56, 59 (Ill. Ct. App. 1977).

On the other hand, if the sale of goods is financed according to a separate agreement between the buyer and a bank or even a separate agreement between the buyer and seller, Article 2's statute of limitations does not apply. When an individual buys a vehicle using a loan from a bank that is secured by the vehicle, the transaction between the bank and the buyer is not a sale of goods governed by Article 2 and the bank's suit to recover the balance due is not subject to a four-year statute of limitations. *BancOhio Nat'l Bank v. Freeland*, 13 Ohio App. 3d 245, 247 (Ohio Ct. App. 1984). Similarly, a promissory note containing a security agreement that references an underlying sales contract creates a separate, distinct cause of action, because the promissory note contains an unconditional promise to pay and is thus a negotiable instrument subject to UCC Article 3, not Article 2. *Alpacas of Am., LLC v. Groome*, 179 Wn. App. 391, 393 (Wash. Ct. App. 2014); *accord O'Neill v. Steppat*, 270 N.W. 2d 375, 376–77 (S.D. 1978).

Courts have long held that a suit to recover money due on a credit card account is not subject to Article 2's four-year statute of limitations because the cardholder agreement is a written contract, not a contract for the sale of goods. *See, e.g.*, *Harris Trust and Savings Bank v. McCray*, 21 Ill. App. 3d 605, 610 (1974). In *Harris*, one of the first and most oft-cited cases to address the statute of limitations applicable to credit card agreements, the credit card was

issued to the defendant by a bank and used to purchase goods from a third-party merchant. *Id.* at 606. The Illinois Court of Appeals rejected the defendant's argument that she had entered into and breached a contract for the sale of goods when she used her credit card to purchase goods and failed to pay the credit card. *Id.* at 606-07. The court explained that "[t]he bank credit card system involves a tripartite relationship between the issuer bank, the cardholder, and merchants," and clarified that the debtor-creditor relationship between the bank and the cardholder is separate from the agreement between the bank and the merchant and the agreement between the merchant and the cardholder. *Id.* at 607-08, 610. "It is only when the purchase money is advanced by a third party that an action to recover a balance due is removed from Article 2 of the U.C.C." *May Co. v. Trusnick*, 54 Ohio App. 2d 71, 75 (Ohio Ct. App. 1977) (citing *Harris*).

However, the tripartite relationship described in *Harris* may become blurred when the credit card is obtained from or named for the merchant seller. In that circumstance, if the credit card was financed by a third party bank and the buyer's agreement was with the bank, then courts have held that Article 2 does not apply. *Asset Acceptance, LLC v. Witten*, No. 90297, 2008 WL 2837304 at *1 n.1, *2 n.2 (Ohio Ct. App. July 24, 2008) (stating in *dicta* that Article 2 does not apply "where a bank provides financing, but does not sell the goods."); *Fulk v. LVNV Funding LLC*, No. 5:14-125-DCR, 2014 WL 5364807 at *3 (E.D. Ky. Oct. 21, 2014) (holding that "[t]he creation of a credit card leading to an underline [sic] debt is distinct and

independent from the sale of goods" in a case where the buyer obtained the credit card from a merchant when he purchased an all-terrain vehicle (ATV) from that merchant and used the credit card to pay for the ATV but it was clear that the credit card agreement was between the buyer and the bank for an extension of credit).

One court has reached the opposite conclusion from *Asset Acceptance* and *Fulk*.  In an unpublished decision, citing *Associates Discount Corporation v. Palmer,* the New Jersey Superior Court found that a contract for sale of goods was created and that Article 2's four-year statute of limitations applied to a credit card account where the plaintiff "signed up" for a Levitz store credit card at the Levitz store and the card could only be used and was only used to buy furniture from the Levitz store.  *New Century Fin. Serv., Inc. v. McNamara*, No. DC-016572-12, 2014 WL 1057076, at *1 & *4 (N.J. Sup. Ct. Mar. 20, 2014).  However, it is not clear from the opinion in that case whether the buyer entered a credit card agreement with the Levitz store or with a third party bank.  *Id.*

In sum, Article 2's four-year statute of limitations applies to a transaction between a buyer and a seller for the sale of goods.  A separate, distinct agreement between buyer and seller to finance the sale or a separate agreement between buyer and a bank leading to a tripartite relationship will not be governed by Article 2.  In limited circumstances where a credit card is obtained from a seller or an entity closely related to the seller, rather than a separate third-party bank, and where the credit card can only be used to buy goods

from that seller, the transaction may be deemed a sale of goods such that Article 2 applies.

## III.   SUTTELL DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 480

### A.   Additional Facts Construed in the Light Most Favorable to Plaintiffs[7]

Ms. Gray obtained the credit card at issue in this case by filling out a form online. Dep. of Kelli Gray Harrington[8] at 22 ln. 5-8 (Oct. 5, 2010), ECF No. 481-1. The card she obtained contained the word "Spiegel" and a number; it did not say "Visa" or "Master Card." *Id.* at 25-26. Ms. Gray understood that her credit card could only be used for purchases at the Spiegel website and catalog. *Id.* at 30. She received statements from Spiegel in the mail at her home, containing "Spiegel" and the amount and date due. *Id.* at 32-33. The

---

[7] The Court considers the following additional facts which it gleaned from a thorough review of the record. When considering this motion and creating this factual section, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[8] Ms. Gray married Mr. Harrington in July 2009. Dep. of Kelli Gray Harrington at 22 ln. 5-8 (Oct. 5, 2010), ECF No. 481-1. For clarity, the Court will continue to refer to her herein as "Ms. Gray."

bill could be paid online, which is generally how Ms. Gray paid her bill, or by sending a check. *Id.* at 33–34. Ms. Gray testified at her October 5, 2010 deposition that she had never heard of FCNB and did not know what it was. *Id.* at 54. She denies that she had an agreement with FCNB and disputes the existence of a tripartite relationship. Motion for Partial Summary Judgment, ECF No. 483 at 11–12 & n.3; Response, ECF No. 498 at 6 n.1.

Mr. Hammer of the Suttell law firm declares that the firm had data indicating Ms. Gray made a payment as late as 2004 and that they concluded a suit filed in 2008 was timely. Hammer Decl. ¶ 6, ECF No. 482. The account information provided by Ms. Gray confirms that the last payment was made on May 13, 2004. Ex. A, ECF No. 485-1. Ms. Gray's credit card account was in default on or before July 2004. *Id.* Mr. Hammer states that the firm had a formal screening process to determine whether a claim might be subject to a statute-of-limitations defense and that they maintained a matrix identifying six years as the applicable limitations period in Washington and Oregon. Hammer Decl. ¶ 6, ECF No. 482. He states, "it was and is widely accepted that credit card accounts governed by Oregon and Washington law are subject to six year statutes of limitation." *Id.* ¶ 4. Mr Hammer declares, "[w]e do not, and did not, file cases on claims that we believe to be untimely." Hammer Decl. ¶ 7, ECF No. 482.

**B.    Analysis**

1.    <u>Applicability of the FDCPA</u>

As lawyers who collect debts through litigation, the Suttell Defendants are "debt collectors" under the FDCPA. *See McCollough v.*

1  *Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011)

2  (citing *Heintz*, 514 U.S. at 294).

3          2.    <u>Applicable Statute of Limitations</u>

4          If a four-year statute of limitations under UCC Article 2

5  governs, there appears to be no dispute that the October 2008 debt-

6  collection lawsuit was untimely.  If, however, the action is treated

7  as an action upon a contract or account receivable with a six-year

8  statute of limitations, then there appears to be no dispute that the

9  suit was timely and that the Suttell Defendants did not violate the

10 FDCPA by filing it.

11         The key questions to be answered in determining the applicable

12 statute of limitations are with whom Ms. Gray entered into a credit

13 card agreement.  This will determine whether this case presents a

14 tripartite relationship, as described in *Harris*, 316 Ill. App. 3d at

15 610.  The terms of the applicable credit card agreement must be

16 analyzed to confirm whether Ms. Gray's card could only be used to buy

17 goods from Spiegel.  If Ms. Gray entered into a credit card agreement

18 with FCNB, then it will be necessary to determine the relationship

19 between FCNB and Spiegel and consider whether the two companies are

20 functionally the same entity, such that FCNB credit card accounts

21 should be considered to be financed by Spiegel, or whether they are

22 truly separate entities, such that the tripartite relationship is

23 maintained, as in *Fulk*, 2014 WL 5364807 at *3, and *Asset Acceptance*,

24 2008 WL 2837304 at *2 n.2.

25         Presently, it is clear that Ms. Gray opened the credit card at

26 issue online and that the card itself and account statements

ORDER – 16

prominently displayed the word "Spiegel." The account statement indicated that "FCNB" had increased the late payment fee and directed that payment be mailed to "FCNB Processing Center." Yet Ms. Gray testified she had never heard of FCNB and did not know who or what it was. Although neither the Suttell Defendants nor Plaintiffs submitted the relevant credit card agreement in connection with this motion, the Court located a document entitled "FCNB Credit Card Account Agreement" in the record relating to the Suttell Defendants' 2010 motion to dismiss based on the same arguments. Ex. A, ECF No. 34-1. However, the account agreement is undated and unauthenticated, and contains nothing connecting it to Ms. Gray.[9] Therefore, even if the Court were to find that the account agreement is part of the "materials in the record" on this motion, Fed. R. Civ. P. 56(c)(1)(A), the Court would not consider it in ruling on the motion.

Even if the Court were to consider this document and find that it is the account agreement applicable to Ms. Gray, the account agreement alone does nothing to illuminate the relationship between FCNB and Spiegel.[10] Indeed, the word "Spiegel" never appears in the

---

[9] The document also gives new meaning to the term "fine print" in that the very small writing and poor copy quality make it extremely difficult to read. Additionally, it appears that it may be incomplete, as the parties have quoted portions of the agreement that do not appear in any of the copies examined by the Court. *Compare, e.g.*, ECF No. 526 at 3 *with* ECF No. 516-3.

[10] Plaintiff cites to the findings of an independent examiner appointed by the Northern District of Illinois regarding the

ORDER – 17

document, and there are no restrictions regarding the stores at which the card may be used.   In sum, the Court does not have sufficient, undisputed information in the record currently before it to determine the applicable statute of limitations.   Therefore, the Court will not grant summary judgment for the Suttell Defendants on their argument that a six-year statute of limitations applies and cannot find as a matter of law that their suit against Ms. Gray was timely.

       3.   <u>Bona Fide Error Defense</u>

      The Suttell Defendants argue that even if the Court determines that a four-year statute of limitations applies, Defendants should not be held liable because their understanding that a six-year statute of limitations applies to credit card debt and decision to file suit within that period was a bona fide error.   Motion for Summary Judgment, ECF No. 480 at 9.   Plaintiffs did not respond to this argument.   *See* Response, ECF No. 498 (containing no response); Reply, ECF No. 520 at 8-9 (addressing bona fide error as to Midland Defendants only).   Accordingly, the Court assesses whether the undisputed facts demonstrate that the Suttell Defendants are eligible for the bona fide error defense.

---

relationship between FCNB and Spiegel, *Sec. and Exch. Comm'n v. Spiegel, Inc.*, No. Civ.A. 03-C-1685, 2003 WL 22176223, at *6 (N.D. Ill. Sept. 15, 2003), but the Court declines to consider the factual findings of the independent examiner because they are not part of the "materials in the record" before the Court on these motions.   Fed. R. Civ. P. 56(c)(1)(A).

A defendant may escape liability using the defense if it can prove that the violation was "1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." 15 U.S.C. § 1692k(c); *McCollough*, 637 F.3d at 948. Courts employ a subjective approach in determining whether a FDCPA violation is unintentional, asking whether the debt collector can establish lack of specific intent to violate the FDCPA. *Johnson*, 443 F.3d at 728. The second and third prongs are objective inquiries. *Id.* at 729. A bona fide error is one that is "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005). The third prong is assessed on a case-by-case basis, and the analysis depends on the facts and circumstances of the particular case. *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011). A defendant must do more than merely assert the maintenance of procedures reasonably adapted to avoid error in a conclusory declaration and instead must explain the procedures and the manner in which they were adapted. *Reichert*, 531 F.3d at 1007.

Even if the Suttell Defendants filed suit outside the applicable statute of limitations, the undisputed facts show that this was an unintentional, genuine mistake, made despite the firm's procedures to prevent the filing of lawsuits with a statute-of-limitations defense. Decl. of Isaac Hammer, ECF No. 482. If it is later determined that a four-year statute of limitations applies under the facts of this case, this was not clear to the Suttell Defendants at the time they filed suit, and understandably so given that it was not clear to the Court

in its initial analysis.   The Suttell Defendants believed in good faith that a six-year statute of limitations applied, *id.*, and nothing in the statutes or case law in Washington, Oregon, or even the case law in other states in 2008, should have alerted the Suttell Defendants that their understanding was incorrect.[11]   Additionally, the firm maintained screening procedures and updated matrices to ensure that claims were filed within the statute of limitations.   *Id.* Therefore, the Suttell Defendants are entitled to summary judgment on Plaintiffs' claim that they violated the FDCPA by filing a debt-collection lawsuit outside the statute of limitations because if the suit was filed outside the limitations period, it was a bona fide error.

### IV.   PLAINTIFFS' MOTION TO STRIKE, ECF NO. 523

The Court now addresses Plaintiffs' motion to strike, which pertains to exhibits submitted in support of the Midland Defendants' motion for summary judgment.

**A.   Legal Standard**

When seeking or opposing summary judgment, a party must support its factual position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[11] Indeed the only case to address an issue similar to that presented here before the October 28 debt-collection suit was filed was an unpublished decision of the New Jersey Superior Court in July 2008, which confirmed the Suttell Defendants' understanding of the law. *See Asset Acceptance*, 2008 WL 2837304 at *2 n.2.

information, affidavits or declarations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)(B)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) 2010 advisory committee's note.

At the summary-judgment phase, the Court focuses on the admissibility of the evidence's contents, rather than on the admissibility of its form. *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003). "If the movant's materials are capable of being put in a form which is admissible at trial, the need for summary judgment materials to be trustworthy and reliable has still been satisfied." Brunet, Parry & Redish, <u>supra</u>, § 8.6. Thus, hearsay evidence may be considered at the summary judgment phase, as long as it could be presented in an admissible form at trial. *Singleton v. Lopez*, 577 Fed. App'x 733, 736 (9th Cir. 2014).

**B.   Analysis**

Plaintiffs seek to strike Exhibits A, C, D, G, H, I, J, K, and P attached to the Declaration of John Munding, ECF No. 516, and presented in support of the Midland Defendants' motion for summary judgment because the documents are unauthenticated hearsay and Mr. Munding, the Midland Defendants' attorney, does not have personal knowledge of their contents and origin. Motion to Strike, ECF No. 523 at 2; Reply, ECF No. 530 at 2. The Midland Defendants respond that

1    the documents are admissible and explain how each would be

2    authenticated at trial. Response, ECF No. 529.

3        1.    Exhibit A: Ms. Gray's 5/7/2003 Credit Report

4        Exhibit A is a copy of Ms. Gray's credit report from Novastar.

5    ECF No. 514. Ms. Gray's credit report is relevant and would be

6    admissible at trial if authenticated by her testimony or by the

7    testimony of a records custodian. It contains personal information

8    indicating it belongs to Ms. Gray and its form is typical of credit

9    reports. *Id.* Its heading and footer indicate its origin at Novastar.

10   *Id.* Because its present form would be admissible at trial with proper

11   authentication, the Court declines to strike Exhibit A.

12       2.    Exhibit C: FCNB Credit Card Agreement

13       Exhibit C is a copy of FCNB's credit card agreement. Decl. of

14   John Munding, ECF No. 516; Ex. C, ECF No. 516-3. Defendants argue

15   that this document is admissible because Plaintiffs have not produced

16   the relevant contract and Ms. Gray's credit report and bank statements

17   reflect that her credit card account was financed by FCNB. Response,

18   ECF No. 529 at 9. Ms. Gray's failure to produce the relevant contract

19   may be relevant to her motion for summary judgment, but it has no

20   bearing on the question of whether this contract produced by

21   Defendants is or will be admissible.

22       Although Exhibit C is an example of a FCNB credit card

23   agreement, there is no indication that this is *the agreement* that

24   governed Ms. Gray's credit card, as it does not contain any

25   information, nor is there any testimony, tying it to Ms. Gray or to

26   Spiegel. There is also no evidence in the record indicating that this

was the only credit card agreement in use by FCNB during the applicable time period and so therefore must be the agreement that applied to Ms. Gray. The Court strikes Exhibit C because it finds that Defendants have not met their burden of showing that its contents are relevant, and thus admissible at trial, nor how this document would be authenticated.

       3.   <u>Exhibit D: 6/3/03 Card Statement</u>

Exhibit D is a Spiegel Charge card statement for Ms. Gray for the period closing June 3, 2003. ECF No. 516-4. This document is relevant and would be admissible at trial if authenticated by Ms. Gray's testimony or by the testimony of a records custodian. It contains Ms. Gray's name and address, and the payment information within could be verified. Because its present form would be admissible at trial with proper authentication, the Court declines to strike Exhibit D.

       4.   <u>Exhibit G: Bill of Sale and Assignment of Accounts from</u>
                <u>Spiegel to Midland</u>

Exhibit G is a Bill of Sale and Assignment of Accounts dated December 4, 2007, from Spiegel to Midland. ECF No. 516-7. The document was signed by Spiegel President Marvin Toland before a notary. *Id*. This document could be authenticated at trial by the testimony of Mr. Toland or of a records custodian. The Court declines to strike Exhibit G at present because it could be admissible at trial after proper authentication. However, it is not immediately clear to the Court how this document is relevant to the present case, so the

1   Court will consider what weight, if any, to give it when ruling on the

2   Midland Defendants' summary-judgment motion.

3       5.   Exhibit H: Purchase and Sale Agreement

4       Exhibit H is a Purchase and Sale Agreement between Spiegel and

5   Midland, dated December 4, 2007.  ECF No. 514.  The document is signed

6   and clearly identified as a bill of sale.  It could be authenticated

7   at trial by one of the signers or by a records custodian.  The Court

8   declines to strike Exhibit H at present because it could be admissible

9   at trial after proper authentication.  However, it is not immediately

10  clear to the Court how this document is relevant to the present case,

11  so the Court will consider what weight, if any, to give it when ruling

12  on the Midland Defendants' summary-judgment motion.

13      6.   Exhibit I: Loan Schedule

14      Exhibit I is "Schedule A" of Ms. Gray's original August 24, 2001

15  loan.  Decl. of John Munding, ECF No. 516; Ex. I, ECF No. 516-9.  The

16  document contains Ms. Gray's name and address, a portion of an account

17  number, and other identifying characteristics that would enable it to

18  be authenticated at trial by Ms. Gray or another appropriate witness.

19  This same document was submitted by Plaintiffs in support of their

20  summary-judgment motion.  Ex. A, ECF No. 485-1.  This document is

21  relevant, and the Court declines to strike Exhibit I because its

22  present form would be admissible at trial with proper authentication.

23      7.   Exhibit J: Servicing Agreement

24      Exhibit J is the servicing agreement entered into between

25  Midland Funding and Midland Credit Management.  ECF No. 514.  The

26  document is signed by the president of each entity and could be

1    authenticated by him at trial or by a records custodian. This

2    document is relevant to the relationship between the Defendants and

3    would be admissible at trial with proper authentication, so the Court

4    declines to strike Exhibit J.

5        8.    Exhibit K: Collection Agreement

6    Exhibit K is a collection agreement between Midland Credit

7    Management and Suttell & Associates. ECF No. 514. This document is

8    signed by both parties, and Defendants represent that it is a record

9    of regularly conducted business activities. Exhibit K is relevant and

10   could be authenticated at trial by testimony of the signers or a

11   records custodian. The Court declines to strike Exhibit K because it

12   would be admissible at trial with proper authentication.

13       9.    Exhibit P: Flow Chart

14   Exhibit P contains three flow charts regarding "Estimation of

15   SOL," "Estimate Start Date," and "Estimate Date of Occurrence." ECF

16   No. 514. Mr. Munding declares that these flow charts were used by

17   Midland Credit Management to estimate the applicable statute of

18   limitations. Decl. of John Munding, ECF No. 516. Mr. Munding's

19   explanation is in concert with their contents. Though it is not clear

20   that Mr. Munding has personal knowledge of the purpose of these

21   records such that he could authenticate them at trial, the Court finds

22   that their contents are relevant and would be admissible at trial if

23   accompanied by appropriate testimony from a qualified witness, which

24   the Midland Defendants state they would be. *See* Response, ECF No. 529

25   at 9. Therefore, the Court declines to strike Exhibit P because it

26   would be admissible at trial with proper authentication.

C.    **Conclusion**

Plaintiffs' motion to strike is granted as to Exhibit C, the FCNB Credit Card Agreement, and denied as to all other exhibits.

V.    **MIDLAND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 495**

A.    **Additional Facts Construed in the Light Most Favorable to Plaintiffs[12]**

On December 4, 2007, Midland Funding, LLC purchased defaulted credit card accounts from Spiegel Acceptance Corporation.  Bill of Sale and Assignment of Accounts, ECF No. 516-7; Purchase and Sale Agreement, ECF No. 516-8.  On the same day, FCNB sold or transferred its right, title, and interest in "certain preferred charge accounts and certain MasterCard and VISA accounts" to CCA Assets LLC, Ex. H, ECF No. 514 at 25, and CCA Assets LLC transferred "certain preferred private label charge accounts . . . that are associated with certain credit card receivables owned by [Spiegel Acceptance Corporation]" to Spiegel Acceptance Corporation, Ex. H, ECF No. 514 at 23.  Midland Funding assigned delinquent or deficient consumer obligations to its

---

[12] The Court considers the following additional facts which it gleaned from a thorough review of the record.  When considering this motion and creating this factual section, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record.  *See Anderson,* 477 U.S. at 255; *Scott,* 550 U.S. at 380.

servicer, Midland Credit Management, Inc., to pursue collection efforts. Servicing Agreement, Ex. J, ECF No. 514. Midland Credit entered into a collection agreement with Suttell & Associates. Ex. K, ECF No. 514. Suttell & Associates later assigned the Collection Agreement to Suttell & Hammer. *Id.*

In August 2001, Ms. Gray opened a Spiegel-branded credit card online. Midland Defendants' Statement of Facts, ECF No. 496 ¶¶ 1-2; Plaintiffs' Statement of Facts, ECF No. 527 ¶ 1. It is unclear from the record whether Ms. Gray's credit card account was the subject of any of the above-described sale and assignment transactions. On October 27, 2008, Defendant Mark Case of Suttell & Associates filed a lawsuit against Ms. Gray in Spokane County Superior Court to collect on a credit card account with an alleged unpaid balance of $2,065.22. Superior Court Complaint, Ex. L, ECF No. 516-12.

**B.    Analysis**

   1.    <u>Applicability of the FDCPA</u>

A debt collector is, "any person . . . who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Midland Defendants have not provided any argument or evidence suggesting that they are not debt collectors. Therefore, the Court finds that the FDCPA applies to the Midland Defendants. *See, e.g.*, *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 643-44 (7th Cir. 2009) (assuming that the FDCPA applies to the Midland Defendants); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870, 880 (N.D. Ill. 2009) (holding that Encore is a debt collector under the FDCPA as a

purchaser of defaulted debts, even though it was not directly involved in collection activities).

    2.   <u>Applicable Statute of Limitations</u>

The Midland Defendants argue that the six-year statute of limitations period applicable to written contracts or accounts receivable applies and that the 2008 debt-collection lawsuit was timely because it was filed within the six-year limitations period. Motion for Partial Summary Judgment, ECF No. 495 at 10. Plaintiffs argue that the four-year statute of limitations in Article 2 applies and that the 2008 debt-collection lawsuit was not timely.

As was the case with the Suttell Defendants' motion, there are insufficient undisputed facts in the record for the Court to determine the applicable statute of limitations. The Court struck the FCNB Credit Card Agreement, Exhibit C, from the record on this motion, but even if the agreement were considered, it does not show that Ms. Gray entered a credit card agreement with FCNB. Similarly, the Midland Defendants provided exhibits documenting various transfers of delinquent credit card accounts, but these documents do not assist the Court in determining the relationship between FCNB and Spiegel or FCNB and Ms. Gray. Furthermore, nothing in these documents shows that Ms. Gray's credit card account at issue here was among those involved in the various transfers. For these reasons, the Court cannot determine as a matter of law that the six-year statute of limitations governing

written contracts applies, rather than the four-year statute of limitations governing contracts for the sale of goods.[13]

The Midland Defendants also argue that the 2008 debt-collection lawsuit was a suit on an account receivable and thus governed by a six-year statute of limitations under Washington law. RCW 4.16.050(2); Reply, ECF No. 534 at 3-4. An account receivable is "an amount due a business on account from a customer who has bought merchandise or received services." *Tingey v. Haisch*, 159 Wn.2d 652, 659, 663, 665 (2007). An oral contract between a customer and a business for the purchase of merchandise or services and for which performance has been completed meets this definition. *Id.* at 659-60. The Midland Defendants argue that even if the transaction could be characterized as *either* a contract for sale of goods *or* an account receivable, the longer limitations period applicable to accounts receivable should apply. Reply, ECF No. 534 at 2, 5; *Tomlin v. Boeing Co.*, 650 F.2d 1065, 1072 (9th Cir. 1981). Although it is possible that the relationship at issue here could be viewed as an account receivable, the Court does not presently have sufficient undisputed evidence before it in the record to make this determination. The Court cannot find as a matter of law that a six-year statute of

_____

[13] The Midland Defendants' argument that an implied contract arising out of a written agreement exists between Ms. Gray and FCNB because Ms. Gray made payments to FCNB suffers from the same evidentiary deficit. Reply, ECF No. 534 at 2.

ORDER - 29

limitations applies and denies the Midland Defendants' motion for summary judgment on this point.

3.    Bona Fide Error Defense

The Midland Defendants argue that if the Court determines that a four-year statute of limitations applies, Defendants should not be held liable because their understanding that a six-year statute of limitations applied to credit card debt was a bona fide error.  Motion for Partial Summary Judgment, ECF No. 495 at 15.  Plaintiffs respond that the bona fide error defense does not apply to mistakes of law, citing *Jerman*.  Reply, ECF No. 520 at 8-9.  The Court assesses whether the undisputed facts demonstrate that the Midland Defendants are eligible for the bona fide error defense, under the standards set forth above in relation to the Suttell Defendants' motion.

As an initial matter, *Jerman* does not hold that the bona fide error defense does not apply to all mistakes of law, as Plaintiffs state; rather, it holds that the bona fide error defense does not apply to incorrect interpretation of the legal requirements of the FDCPA.  *Jerman*, 559 U.S. at 576.  The Supreme Court explicitly declined to decide whether the bona fide error defense applies to a misinterpretation of the legal requirements of other federal or state laws.  *Id.* at 580 n.4.  As explained in detail above, this Court determined that the bona fide error defense is available under the circumstances of this case.

Here, even if the debt-collection suit was filed outside the applicable limitations period, there is no evidence suggesting that the Midland Defendants intentionally directed this to occur.  Indeed,

they believed the applicable statute of limitations to be six years, and there is no evidence that their interpretation of the applicable statute of limitations was a contrived, rather than a genuine, mistake. As a matter of fundamental fairness, when the Court itself undertakes an extensive survey of the statutes and case law and cannot easily determine which statute of limitations applies, it will not hold the Defendants liable for failing to determine that a four-year statute of limitations governs, if in fact that is ultimately determined to be the law.

Finally, Midland Credit had a process in place for determining the statute of limitations and ensuring that untimely debt-collection suits were not filed. Supplemental Response to Discovery, Ex. O, ECF No. 516-15. It determined the date of occurrence, the start date for the limitations period, and the applicable statute of limitations using detailed flow charts. *Id.*; Flow Charts, Ex. P, ECF No. 514. It updated its flow charts when it became aware of changes to the statute of limitations to be applied in a particular state. Supplemental Response to Discovery, Ex. O, ECF No. 516-15. The Court finds that, under the facts and circumstances of this case, the Midland Defendants' procedures were reasonably adapted to avoid filing suit outside the statute of limitations. *Owen*, 629 F.3d at 1274. Furthermore, the Court finds that additional procedures or screening would not have avoided the alleged error here because the law was unclear.

//

/

**VI.**  **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 483**

In ruling on Plaintiffs' motion, the Court considered the parties' undisputed facts because Plaintiffs did not produce additional evidence that impacts the Court's ruling on these motions when viewed in the light most favorable to Defendants. *See* Statement of Facts, ECF No. 484. Plaintiffs have provided no evidence that shows Ms. Gray contracted with Spiegel for the sale of goods, and there is a genuine dispute as to whether Plaintiff contracted with Spiegel or FCNB as well as a dearth of evidence as to the relationship between Spiegel and FCNB. For this reason, the Court cannot find as a matter of law that a four-year statute of limitations applies and denies Plaintiffs' motion for partial summary judgment.

**VII.** **CONCLUSION**

The parties disagree as to the nature of Ms. Gray's debt and the applicable statute of limitations. After a thorough review of the record and the case law, the Court has determined that the statute-of-limitations issue in this case does not present a situation where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). However, the Court need not determine the applicable statute of limitations to decide these motions. The Court grants Defendants' motions for summary-judgment because, even if a four-year statute of limitations applies, Defendants' good-faith and reasonable belief that a six-year statute of limitations governed was a bona fide error, insulating Defendants from liability under 15 U.S.C. § 1692k(c).

/

ORDER – 32

Accordingly, **IT IS HEREBY ORDERED**:

1. The Suttell Defendants' Motion for Summary Judgment Dismissing Plaintiff Gray's "Statute of Limitations" Claim(s), **ECF No. 480**, is **GRANTED**. Plaintiffs' statute-of-limitations claim against the Suttell Defendants is dismissed.

2. Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 483**, is **DENIED**.

3. Plaintiffs' Motion to Strike, **ECF No. 523**, is **GRANTED IN PART** (Exhibit C) and **DENIED IN PART** (remainder).

4. The Midland Defendants' Motion for Summary Judgment on Plaintiff Gray's FDCPA Claims, **ECF No. 495**, is **GRANTED**. Plaintiffs' statute-of-limitations claim against the Midland Defendants is dismissed.

5. **By no later than September 16, 2015,** Plaintiffs must file a notice succinctly listing (1) the remaining claim(s) presently asserted and against whom each is asserted, and (2) the claims they would assert if permitted to file an amended complaint and against whom. **At the September 30, 2015 hearing**, all counsel shall be prepared to discuss the status of the remaining claims in this case, the status of the related actions in the Northern District of Ohio and the Sixth Circuit, and how best to move this case forward to an efficient resolution.

//

/

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 11th day of August 2015.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge
