1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7    KELLI GRAY; EVA LAUBER;
     DANE SCOTT; SCOTT BOOLEN;              NO:  2:09-CV-251-RMP
8    JOEL FINCH; and all others similarly
     situated,                             ORDER GRANTING IN PART AND
9                                          DENYING IN PART SECOND
                            Plaintiffs,    MOTION FOR SUMMARY
10                                         JUDGMENT
              v.

11   SUTTELL & ASSOCIATES, P.S.;
     MIDLAND FUNDING, LLC; MARK
12   T. CASE and JANE DOE CASE, wife
     and husband; KAREN HAMMER and
13   JOHN DOE HAMMER, husband and
     wife; ENCORE CAPITAL GROUP,
14   INC.; MIDLAND CREDIT
     MANAGEMENT, INC.; SUTTELL &
15   HAMMER, P.S.; MALISA L.
     GURULE; JOHN DOE GURULE;
16   ISAAC HAMMER; WILLIAM G.
     SUTTELL and JANE DOE SUTTELL,
17   wife and husband,

18                          Defendants.

19

20       BEFORE THE COURT is Defendants Midland Credit Management, Inc.'s,

21   Midland Funding, LLC's, and Encore Capital Group, Inc.'s Second Motion for

     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
     SUMMARY JUDGMENT ~ 1

Summary Judgment, **ECF No. 538**. On November 30, 2015, this matter was

reassigned from Judge Edward F. Shea to this Court. ECF No. 567. The Court

heard oral argument on January 26, 2016. The Court has reviewed the motion, the

memorandum in response (ECF No. 573), the memorandum in reply (ECF

No. 576), has heard argument from counsel, and is fully informed.

## BACKGROUND

### A. The *Gray* Lawsuit

Plaintiff Kelli Gray ordered an item from Spiegel Brands, Inc. ("Spiegel")

mail-order catalogue and did not pay. On December 4, 2007, Midland Funding,

LLC ("Midland Funding") purchased Ms. Gray's defaulted Spiegel account.

Midland Funding assigned the account to its servicer, Midland Credit

Management, Inc. ("MCMI"), which determines whether certain accounts are

"eligible" or "not eligible" for collection. Defendants Mark T. Case and Karen

Hammer, attorneys for Defendant Suttell & Associates ("Suttell"), filed a lawsuit

against Ms. Gray in Spokane County Superior Court to collect the debt.

On August 12, 2009, Ms. Gray filed the instant lawsuit before this Court.

Ms. Gray, on behalf of herself and others similarly situated, alleged that

Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692, *et seq.*, the Washington State Consumer Protection Act ("WCPA"), RCW

chapter 19.86, and the Washington State Collection Agency Act ("WCAA'), RCW

chapter 19.16, by 1) serving and filing time-barred lawsuits ("statute-of-

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 2

1  limitations" claim); 2) requesting unreasonable attorney fees of $650.00 for a

2  default judgment and $850.00 for a summary judgment ("attorney-fee" claim); and

3  3) acting as a "collection agency" without a "collection agency" license

4  ("licensing" claim).

5  ### B. The *Lauber* Lawsuit

6  Plaintiffs Eva Lauber, Dane Scott, Scott Boolen, and Joel Finch

7  (collectively, "Lauber Plaintiffs"), similar to Ms. Gray, were obligated to pay a

8  debt and failed to do so. On November 10, 2010, the Lauber Plaintiffs filed a

9  complaint before this Court that alleged violations of the FDCPA, WCPA, and

10  WCAA, alleging that Defendants: 1) filed unfair, deceptive, and misleading

11  affidavits in support of state-court default and summary judgment motions

12  ("affidavit" claim); and 2) acted as a "collection agency" without a "collection

13  agency" license ("licensing" claim).

14  ### C. Defendants

15  For the purpose of this Order, the Court will continue to utilize Judge Shea's

16  categorization of the Defendants. Defendants Suttell & Associates PS, Suttell &

17  Hammer PS, Mark Case, Jane Doe Case, Karen Hammer, Isaac Hammer, Malisa

18  Gurule, John Doe Gurule, William Suttell, and Jane Doe Suttell are the "Suttell

19  Defendants." Defendants Midland Funding, LLC, Midland Credit Management,

20  Inc., and Encore Capital Group, Inc., are the "Midland Defendants."

21  //

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 3

**D. Procedural History**

### 1. *Consolidation and First Amended Complaint*

On December 29, 2010, Judge Shea consolidated the *Gray* lawsuit with the *Lauber* lawsuit. ECF No. 182. On March 23, 2011, Judge Shea granted Plaintiffs' motion for leave to amend or correct the complaint. ECF Nos. 296 and 299. Plaintiffs filed the First Amended Complaint on April 8, 2011. ECF No. 297. The First Amended Complaint is the current operative pleading in this matter.

### 2. *The* **Brent** *Injunction*

On March 11, 2011, the District Court for the Northern District of Ohio issued a preliminary injunction in *Midland Funding, LLC v. Brent*, No. 3:08-CV-1434-AK (hereinafter "*Brent*"). The *Brent* preliminary injunction prohibits individuals from:

> participating as class member in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum arising out of or relating to the use of affidavits in debt collection lawsuits by Encore Capital Group, Inc., and/or its subsidiaries and affiliates, including but not limited to Midland Credit Management, Inc., Midland Funding LLC, MRC Receivables Corp., and Midland Funding NCC-2 Corp., unless and until such time as the Class member involved in such action timely and validly excludes himself or herself from the class to pursue individual relief.

ECF No. 272-3. Interpreting the preliminary injunction, Judge Shea concluded that Plaintiffs could continuing litigating: 1) the attorney-fee, licensing, and statute-of-limitations claims against both the Midland Defendants and the Suttell Defendants;

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 4

and 2) the affidavit claim against the Suttell Defendants. ECF Nos. 299 and 364.

Judge Shea determined that the *Brent* injunction barred Plaintiffs' affidavit claims

against the Midland Defendants. ECF No. 299.

### 3.  Compelled Arbitration

On March 19, 2012, Judge Shea concluded that Plaintiff Eva Lauber must

submit her claims to arbitration based on the Arbitration Rider included in

Ms. Lauber's loan agreement. ECF No. 410. As such, Judge Shea stayed

Ms. Lauber's claims pending arbitration. *Id.*

### 4.  Motion to Dismiss

In April 2011, both the Suttell Defendants and the Midland Defendants

moved to dismiss various causes of action asserted in Plaintiffs' First Amended

Complaint. ECF Nos. 306, 310, and 313. The Suttell Defendants moved to dismiss

Plaintiffs' FDCPA attorney-fee claim. ECF No. 313. Both the Suttell Defendants

and the Midland Defendants moved to dismiss Plaintiffs' WCPA claims. ECF

Nos. 306, 309, 310, and 313.

Judge Shea dismissed the FDCPA attorney-fee claim and all WCPA claims

against the Suttell Defendants as well as Scott Boolen's, Joel Finch's, and Kelli

Gray's WCPA claims against the Midland Defendants. ECF No. 416. Judge Shea

denied Midland Defendants' motion as it pertained to Dane Scott's WCPA cause

of action. *Id.*

//

### 5. *Certification to the Washington State Supreme Court*

On February 4, 2013, Judge Shea determined that certification to the Washington State Supreme Court was necessary to resolve issues of Washington State law. ECF No. 447. Judge Shea certified the following questions to the Washington State Supreme Court:

1. Does the definition of "collection agency" in RCW 19.16.100(2) include a person who 1) purchases claims that are owed or due or asserted to be owed or due another, 2) undertakes no activity on said delinquent consumer account but rather contracts with an affiliated collection agency to collect the purchased claims, and 3) is the named plaintiff in a subsequent collection lawsuit for said purchased claims?

2. Can a company, such as Midland Credit,[1] file lawsuits in the Washington [State Superior Courts] on delinquent consumer accounts without being licensed as a collection agency as defined by RCW 19.16.100(2)?

*Id.* The Washington State Supreme Court issued an opinion answering the certified questions on August 28, 2014. ECF No. 463.

### 6. *First Motion for Summary Judgment*

In March and April 2015, both the Suttell Defendants and the Midland Defendants moved for summary judgment on various causes of action asserted in Plaintiffs' First Amended Complaint. ECF Nos. 480 and 495. Both the Suttell Defendants and the Midland Defendants moved for summary judgment on Plaintiff Gray's FDCPA statute-of-limitation claim. ECF Nos. 480 and 495. Judge Shea

---

[1] Later changed to "Midland Funding, LLC." *See* ECF Nos. 458 and 459.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 6

granted both motions under 15 U.S.C. § 1692k(c) as the court found that the

Defendants had made a bona fide error as related to the applicable statute-of-

limitations. ECF No. 544.

**E. Midland Defendants' Corporate Structure**

The following chart illustrates the relationships between Midland Funding

and its parent companies, the remaining Midland Defendants:

Encore Capital Group, Inc. (publicly held corporation)

↓ Owns

Midland Credit Management, Inc. (licensed collection agency)

↓ Owns

Midland Portfolio Services, Inc. (owns 100% of Midland Funding)

↓ Owns

Midland Funding, LLC (debt-buying entity that owns the accounts).

*Gray v. Suttell & Associates*, 181 Wn.2d 329, 333 (2014). As described by the

Washington State Supreme Court:

> Midland Funding purchases defaulted receivables, i.e., consumers'
> unpaid financial commitments to credit originators such as banks, credit
> unions, consumer finance companies, commercial retailers, auto
> finance companies, and telecommunications companies. Midland
> Funding has no employees and is merely a holding company for the
> delinquent accounts it purchases.
>
> Midland Credit Management . . . services the defaulted accounts on
> behalf of Midland Funding. Pursuant to the "Servicing Agreement,"
> [MCMI] decides how to collect on the defaulted accounts purchased by
> Midland Funding. [MCMI's] employees manage the collection process

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 7

and perform the collection acts for these defaulted accounts. [MCMI] is licensed by the State of Washington as a collection agency. To fulfill its servicing duties, [MCMI] contracts directly with Suttell & Associates, a law firm, to file collection lawsuits in Midland Funding's name. From 2005 to 2010, 1,081 cases were filed in Washington superior courts naming Midland Funding LLC as plaintiff.

*Id.* at 334.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party may move for partial summary judgment by identifying the specific claim or defense on which summary judgment is sought. *Id.* If the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set out specific facts showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 8

The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(c)(2). Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II. Washington Collection Agency Act

Midland Defendants argue that Plaintiffs' WCAA claim must be dismissed as the WCAA does not create a private cause of action. ECF No. 538 at 8. Plaintiffs do not respond to the Midland Defendants' argument. *See* ECF No. 573.

The remedy for a violation of the WCAA is through the WCPA. *See Genschorck v. Suttell & Hammer, P.S.*, 12-CV-0615-TOR, 2013 WL 6118678, at *3 (E.D. Wash. Nov. 21, 2013). As noted in RCW 19.16.440:

> [t]he operation of a collection agency or out-of-state collection agency without a license as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 9

for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.

RCW 19.16.440. "When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA and [Federal Trade Commission Act] under state and federal law, reflecting the public policy significance of this industry." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009). Therefore, an individual cannot assert a private cause of action under the WCAA. *See Connelly v. Puget Sound Collections, Inc.*, 16 Wn. App. 62, 64 n.1 (1976) ("Under the Collection Agency Act, it appears that only the attorney general or the local prosecuting attorney 'may bring an action' to restrain a violation of that act.") (citing RCW 19.16.460). To the extent Plaintiffs attempt to assert a cause of action under the WCAA, the Court **GRANTS** Midland Defendants' motion for summary judgment.

### III.    Washington Consumer Protection Act

Midland Defendants argue that Mr. Scott's WCPA claim premised on Midland Funding's not being properly licensed as a "collection agency" fails for several reasons: 1) Midland Funding was not required to be licensed as a "collection agency" under the WCAA; 2) Midland Funding, even if required to be licensed under the WCAA, is entitled to the WCPA good faith exception; and 3) Mr. Scott has not sustained an "injury to property or business" as required to maintain a WCPA cause of action. ECF No. 538 at 8–9.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 10

To maintain a WCPA cause of action, a plaintiff must demonstrate: (1) an unfair or deceptive act or practice by a defendant; (2) occurring in trade or commerce; (3) an impact on the public interest; (4) injury to the plaintiff's business or property; and (5) that the defendant's alleged unfair or deceptive act caused plaintiff's injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85 (1986).

**A. WCAA Collection Agency Licensing Requirement**

No person may act as a "collection agency" without first having applied for and obtained a license. RCW 19.16.110. Operating a "collection agency" without a license is a *per se* unfair practice under the WCPA. RCW 19.16.440; *see also Panag*, 166 Wn.2d at 53. The viability of Mr. Scott's WCPA licensing claim depends upon whether Mr. Scott can demonstrate a genuine issue of material fact concerning whether Midland Funding was a "collection agency" subject to the WCAA.

**1.  Gray v. Suttell & Associates**

In *Gray*, the Washington State Supreme Court addressed the definition of "collection agency" under the WCAA pursuant to Judge Shea's certified questions.

The WCAA was amended by the legislature in 2013. Prior to the amendment, and relevant to Midland Funding as the relevant conduct took place under the prior WCAA regime, the WCAA defined a "collection agency" as:

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 11

(a) Any person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person;

(b) Any person who directly or indirectly furnishes or attempts to furnish, sells, or offers to sell forms represented to be a collection system or scheme intended or calculated to be used to collect claims even though the forms direct the debtor to make payment to the creditor and even though the forms may be or are actually used by the creditor himself or herself in his or her own name;

(c) Any person who in attempting to collect or in collecting his or her own claim uses a fictitious name or any name other than his or her own which would indicate to the debtor that a third person is collecting or attempting to collect such claim.

Former RCW 19.16.100(2) (2003). The 2013 amendment added the following subpart:

(d) Any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims.

RCW 19.16.100(2)(d).

The Washington State Supreme Court found that, prior to the 2013 amendment, the WCAA was ambiguous as to whether a passive debt buying entity was within the scope of "collection agency." *Gray*, 181 Wn.2d at 341. Further, the court determined that the 2013 amendments merely clarified that such a passive debt buyer was a "collection agency," as opposed to changing the WCAA licensing requirements. *Id.* at 342.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 12

1    The Washington State Supreme Court concluded that a debt buyer, such as

2    Midland Funding, was within the pre-amendment definition of "collection agency"

3    if the debt buyer "solicit[s] claims for collection."[2] *Id.* at 343. Turning to the

4    ordinary meaning, the court defined "solicit" as "to endeavor to obtain by asking or

5    pleading." *Id.* at 340 (quoting WEBSTER'S THIRD NEW INTERNATIONAL

6    DICTIONARY 2169 (2002)). The court contrasted two alternatives: an entity

7    "soliciting claims for collection [which] involves conduct aimed at procuring a

8    claim for collection" and "[a] passive market participant." *Id.* An entity "solicited

9    claims" if the entity "advertise[s] that it is purchasing claims, target[s] individual

10   sellers, enter[s] into contracts with sellers to purchase claims, or perform[s]

11   market-based research to generate lists used to purchase claims." *Id.* However, "if

12   a company is formed, sits idle, and never actually solicits or acquires any claims

13

14   [2] The Washington State Supreme Court noted that RCW 19.16.100(2)(a), through

15   the use of the disjunctive "or," "strongly suggests that there are two types of

16   collection agencies." *Gray*, 181 Wn.2d at 339. The court defined the two

17   categories as an entity that is engaged in "soliciting claims for collection" and an

18   entity that is engaged in "collecting or attempting to collect claims owed or due or

19   asserted to be owed or due another person." *Id.* (quoting RCW 19.16.100(2)(a)).

20   The court concluded that a debt buyer can be a "collection agency" even if the

21   entity does not "collect claims owed to another." *Id.* at 340.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 13

for collection, that company has not solicited claims for collection. Nor has a company solicited claims if it engaged in no marketing and merely passively accepts offers." *Id.* at 340–41. The court concluded that "Midland Funding, a debt buyer, is a 'collection agency' under RCW 19.16.100(2) if the district court finds that Midland Funding solicited claims for collection—that is, if Midland Funding or its agents took any affirmative steps to obtain claims for collection." *Id.* at 341.

### 2. *Midland Funding, LLC*

Midland Defendants argue that Midland Funding is not a "collection agency" as the entity does not "solicit claims for collection." ECF No. 538 at 11 (quoting *Gray*, 181 Wn.2d at 341). Midland Defendants allege that Midland Funding is "a passive debt buyer that has no employees and is merely a holding company for delinquent accounts." *Id.* at 11–12. Mr. Scott contends that MCMI employees, acting as Midland Funding's agents, solicit claims for collection on behalf of Midland Funding. ECF No. 573 at 6. Midland Defendants counter that, even if MCMI employees are Midland Funding's agents, summary judgment is appropriate as MCMI has been a licensed "collection agency" under the WCAA since 2000. ECF No. 576 at 4. Further, Midland Defendants note that the undisputed evidence demonstrates that creditors approach MCMI concerning purchasing portfolios of accounts, not the other way around. *Id.* at 5.

As part of discovery in this matter, Plaintiffs deposed Gregory Gerkin, MCMI's Corporate Counsel for Legal Affairs and Compliance. As noted by

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 14

Midland Defendants, Mr. Gerkin testified that creditors contact MCMI inviting MCMI to bid on selected portfolios of accounts that are available for sale. ECF No. 574-1 at 16. However, as recounted by Mr. Gerkin:

> [i]f the seller then accepts Midland Credit Management's bid, the purchase agreement is worked out, and then the – you know, Midland Credit Management then executes the agreement using Midland Funding, LLC, as the purchasing entity and then funds it from a Midland Credit Management bank account from Encore Capital Group's credit line.

*Id.* at 17. Although selling creditors make initial contact with MCMI, MCMI must enter a bid, on behalf of Midland Funding, before any portfolio of accounts is purchased. *See id.*; *see also* ECF No. 574-2 at 33–34 (MCMI Senior Vice President Amy Anuk testified that creditor's "put out invitation[s] to bid" which cause MCMI to "place the bid").

Bidding on a portfolio of accounts is distinguishable from "merely passively accepting offers" as described by the Washington State Supreme Court. *See Gray*, 181 Wn.2d at 341. The former involves MCMI, on behalf of Midland Funding, making an offer, or bid, on a selected portfolio of accounts. Affirmatively making an offer or bidding on a portfolio is not the equivalent of merely accepting offers that a creditor might bring to MCMI. In the first scenario MCMI is the offeror while in the second MCMI is the accepting party. The former requires an affirmative act while the latter does not.

1      Further, as MCMI bids for a portfolio of accounts on behalf of Midland

2   Funding, it is conceivable that the MCMI employees are acting as Midland

3   Funding's agents to the extent that the employee is purchasing portfolios of

4   account in Midland Funding's name. Midland Defendants' corporate structure

5   supports this theory. Midland Funding, as a distinct corporate entity, has no

6   employees. ECF No. 540 at 3. As Mr. Gerkin testified, "the three primary

7   officers . . . are the same for each [Midland] entity." ECF No. 574-1 at 14. For

8   example, Ken Vecchione is both the president and chief executive officer of

9   MCMI and the president of Midland Funding. *Id.* at 20. Mr. Vecchione, as

10  president of Midland Funding, "ultimately signs" the purchase agreements with

11  creditors for portfolios of accounts. *Id.* at 21. As Mr. Gerkin described the Midland

12  Defendants' processes when purchasing a portfolio:

13          [i]t depends on how you're describing purchase. Midland Funding,
            LLC's name is put onto the purchase and sale agreement; therefore, we
14          refer to Midland Funding, LLC, as the purchaser. The money flows
            from a Midland Credit Management bank account to the issuer.
15          Midland Credit Management employees are who facilitate that process.
            But no, in a legal sense, Midland Credit Management does not purchase
16          the accounts. Midland Funding, LLC – Midland Credit Management,
            you know, acts as the entity that does the work, but Midland Funding,
17          LLC's name is put onto the purchase and sale agreement.

18  *Id.* at 22. As MCMI employees "do[] the work" underlying every purchase made in

19  Midland Funding's name, *see id.*, such employees arguably were Midland

20  Funding's agents for that limited purpose.

21

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 16

The Court finds that, viewing the facts in the light most favorable to the non-moving party, Mr. Scott has demonstrated a genuine issue of material fact concerning whether MCMI employees acted as Midland Funding's agents when placing bids on portfolios of accounts. A corporation can "act only through its agents." *Houser v. City of Redmond*, 91 Wn.2d 36, 40 (1978). As Midland Funding has no employees, ECF No. 540 at 3, Midland Funding can only purchase portfolios of accounts through MCMI employees. *See* ECF No. 574-1 at 5 (noting that "Midland Funding doesn't decide or not decide to do anything); ECF No. 576 at 3 (noting that "it is undisputed that while [Midland Funding] owned Scott's debt, any acts relating to the debt were undertaken by licensed debt collection agency [MCMI]"). Although Midland Defendants argue that MCMI "has been a licensed 'collection agency' under the WCAA since the year 2000," *id.* at 4, MCMI's license does not extend to or include Midland Funding, a distinct corporate entity which was both the actual purchaser and unlicensed.

Based on the above, the Court concludes that Mr. Scott has demonstrated a genuine issue of material fact concerning whether affirmative acts taken by MCMI employees, acting as agents for Midland Funding, resulted in Midland Funding's soliciting claims for collection. Accordingly, the Court will not grant summary judgment on the basis that Midland Funding is not a "collection agency" under the WCAA.

//

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 17

**B. Good Faith Defense**

Midland Defendants argue that, even if Midland Funding were a "collection agency" operating without a license, Mr. Scott's WCPA claim fails as Midland Funding acted in good faith in complying with the WCAA licensing requirements. ECF No. 538 at 12.

"Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 155 (1997). In *Leingang*, the defendant acted in good faith as prior court decisions had held that the uninsured motorist exclusion acted upon by defendant "was clear and enforceable and not against public policy." *Id.* Further, the Insurance Commissioner had reviewed and approved of the uninsured motorist exclusion in health care service contracts. *Id.* at 156. The court held that, as defendant "was advancing an arguable interpretation of existing law," the defendant was entitled to a good faith defense. *Id.*

Other courts have found the good faith defense applicable in similar circumstances. *See Watkins v. Peterson Enterprises, Inc.*, 57 F. Supp. 2d 1102, 1111 (E.D. Wash. 1999) (finding the good faith defense applicable where the defendant's interpretation was not flatly inconsistent with the text of the statute, there were no Washington State appellate decisions indicating that the defendant's interpretation was incorrect, and state district courts had routinely approved the

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 18

1  defendant's interpretation). To take advantage of the good faith defense, the

2  defendant may have to rely on "an official interpretation of state law." *Campion v.*

3  *Credit Bureau Servs., Inc.*, CS-99-0199-EFS, 2000 WL 33255504, at *13 (E.D.

4  Wash. Sept. 20, 2000).

5          Midland Defendants argue that MCMI maintained procedures for

6  monitoring licensing requirements and for ensuring that Midland Defendants

7  complied with those licensing requirements. ECF No. 538 at 12–13. Further,

8  Midland Defendants note that they relied upon the Collection Agency Board,

9  which had adopted an interpretation of the WCAA finding that debt buyers were

10  not required to be licensed. *Id.* at 13; *see also* ECF No. 540 at 3 (noting the

11  Collection Agency Board's interpretation that debt buyers were not required to be

12  licensed under the WCAA). Finally, Midland Defendants argue that the good faith

13  defense applies as the Washington State Supreme Court found the definition of

14  "collection agency" to be ambiguous as to the WCAA's application to debt buyers.

15  ECF No. 576 at 7.

16          Mr. Scott argues that the good faith exception does not apply to acts that

17  have been declared *per se* unfair for the purpose of the WCPA. ECF No. 573 at 8.

18  Alternatively, Mr. Scott counters Midland Defendants' good faith defense by

19  noting that "[t]he Collection Agency Board's 2009 interpretation was non-binding

20  and non-precedential" and "Defendants had no basis to rely on the Collection

21  Agency Board's interpretation." ECF No. 575 at 3.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 19

1    Under RCW 19.16.440, the operation of a "collection agency" without a

2  license, in addition to the commission of an act enumerated in RCW 19.16.250, is

3  an "unfair act[] or practice[] or unfair method[] of competition . . . for the purpose

4  of the application of the Consumer Protection Act." RCW 19.16.440. In *Watkins*,

5  the court found that, as RCW 19.16.440 says nothing about deception, the statute

6  does not create a *per se* unfair or deceptive practice. *Watkins*, 57 F. Supp. 2d at

7  1111. The Court disagrees with *Watkins*' conclusion.

8    In *Hangman*, the Washington State Supreme Court stated that "[a] per se

9  unfair trade practice exists when a statute which has been declared by the

10  Legislature to constitute an unfair or deceptive practice in trade or commerce has

11  been violated." *Hangman*, 105 Wn.2d at 786. As examples, the court cited statutes

12  using language including "an unfair or deceptive act in trade or commerce" or

13  "unfair trade practice." *Id.* RCW 19.16.440 states that operating a collection

14  agency without a license is "declared to be unfair acts or practices or unfair

15  methods of competition in the conduct of trade or commerce." RCW 19.16.440.

16    The Court finds that the legislative decree finding the operation of a

17  "collection agency" without a license an "unfair act . . . for the purpose . . . of the

18  Consumer Protection Act" is sufficiently similar to the description of *per se* unfair

19  acts in *Hangman*. The Washington State Supreme Court has adopted a similar

20  interpretation. *See Panag*, 166 Wn.2d at 53 ("When a violation of debt collection

21  regulations occurs, it constitutes a per se violation of the CPA and [Federal Trade

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 20

Commission Act] under state and federal law, reflecting the public policy significance of this industry.").

As noted above, "[a]cts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang*, 131 Wn.2d at 155. However, the Washington legislature has, by statutory enactment, deemed the operation of a "collection agency" without a license to be a *per se* unfair act. RCW 19.16.440. Thus, even if a defendant "collection agency" acted in good faith, the "collection agency's" lack of a WCAA license is nevertheless an unfair act for the purpose of the WCPA. The Court concludes that, as pertains to the WCAA "collection agency" licensing requirement, Midland Defendants cannot utilize the good faith exception because Mr. Scott alleges  a *per se* unfair act.

## C. Injury to Business or Property

Midland Defendants argue that Mr. Scott has not suffered any "injury to business or property" as Midland Defendants have not collected the attorney's fee judgment, and any wage garnishment was collected solely on Mr. Scott's underlying debt. ECF No. 538 at 9–10; ECF No. 576 at 5–6. Mr. Scott argues that Midland Funding's failure to properly license under the WCAA renders any garnishment of wages illegal. ECF No. 573 at 12–14.

Judge Shea previously held that "[t]o the extent that Mr. Scott alleges an injury as a result of the garnished amount based solely on the underlying debt and

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 21

interest thereon, Mr. Scott fails to allege an injury to business or property." ECF No. 416 at 13. Judge Shea cited two decisions as persuasive authority, *Flores v. The Rawlings Co., LLC*, 117 Hawaii 153 (2008), and *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006). In *Flores*, the court found that although defendant's collection activities might have violated state statutes, the plaintiffs were not injured by paying the underlying debt because the debt was valid. *Flores*, 117 Hawaii at 157. In *Camacho*, the court determined that the plaintiff could not establish an injury from allegedly unfair collection practice where he conceded liability and owed the amounts that were collected. *Camacho*, 142 Cal. App. 4th at 1405.

Mr. Scott argues that the decisions cited by Judge Shea are distinguishable as the cases each involved voluntary payments on the underlying debt as opposed to forcible, illegal garnishment of wages. ECF No. 573 at 13. As discussed above, the Court has determined that a genuine issue of material fact exists concerning whether Midland Funding is a "collection agency" under the WCAA. If Midland Funding is a "collection agency," the WCAA requires that Midland Funding be licensed in order to enter judgments against debtors and issue writs of garnishment. Therefore, if Midland Funding is an unlicensed "collection agency" any garnishment of Mr. Scott's wages would have been illegal. As such, the Court finds that a genuine issue of material fact exists as to whether Mr. Scott suffered an injury to property. If Midland Funding illegally garnished Mr. Scott's wages, any

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 22

1  amount collected could amount to an "injury" as Midland Funding would have had

2  no right to utilize a writ of garnishment mechanism to collect the underlying debt,

3  even if that debt was not disputed. Further, Mr. Scott could have suffered other,

4  non-monetary injuries as a result of the illegal garnishment which may be

5  considered "injuries to business or property" under the WCPA.

6  **D. Conclusion**

7      For the reasons discussed above, the Court **DENIES** Midland Defendants'

8  motion for summary judgment on Mr. Scott's WCPA licensing cause of action.

9  **IV.    Federal Debt Collection Practices Act**

10     Midland Defendants argue that the First Amended Complaint fails to assert

11  an FDCPA claim related to WCAA "collection agency" licensing and, to the extent

12  such claims are raised, the cause of action should be dismissed as Midland

13  Defendants are entitled to the FDCPA bona fide error defense. ECF No. 538 at 2,

14  14. Midland Defendants are correct that Plaintiffs did not allege an FDCPA claim

15  related to licensing in the First Amended Complaint. *See* ECF No. 297 at 48–50.

16  However, Plaintiffs do raise an FDCPA claim related to licensing in the proposed

17  Second Amended Complaint. *See* ECF No. 472-1 at 83. As such, the Court

18  **DENIES WITH RIGHT TO RENEW** Midland Defendants' motion for summary

19  judgment on Plaintiffs' FDCPA licensing cause of action. Midland Defendants

20  may reassert the motion if and when the Second Amended Complaint becomes the

21  operative pleading in this matter.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 23

1

## CONCLUSION

2      Accordingly, **IT IS HEREBY ORDERED** that Midland Defendants'

3  Second Motion for Summary Judgment, **ECF No. 538**, is **GRANTED IN PART**

4  **and DENIED IN PART**.  Plaintiffs' WCAA cause of action is **dismissed with**

5  **prejudice**.  Mr. Scott may proceed with his WCPA licensing cause of action.

6  Midland Defendants may renew their motion concerning Plaintiffs' FDCPA

7  licensing cause of action if and when Plaintiffs' proposed Second Amended

8  Complaint becomes the operative pleading in this matter.

9      The District Court Executive is directed to enter this Order and provide

10 copies to counsel.

11     **DATED** this 2nd day of February, 2016.

12

13                              _s/ Rosanna Malouf Peterson_
                               ROSANNA MALOUF PETERSON
14                             United States District Judge

15

16

17

18

19

20

21

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT ~ 24